## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

ILLINOIS UNION INSURANCE COMPANY,   )
                                               )
               Plaintiff,              )
                                             )
      v.                            )     Case No. 1:23-cv-1054
                                             )
CLUB VALENCIA CONDOMINIUM         )
OWNERS ASSOCIATION, INC.,          )
                                             )
             Defendant.          )

## PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, Illinois Union Insurance Company ("Chubb" or "IUIC"), by and through its attorneys, and for its Complaint for Declaratory Judgment, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      IUIC is an insurance company incorporated in Illinois with its principal place of business in Pennsylvania.

2.      Club Valencia Condominium Association, Inc. ("Club Valencia") is a condominium association incorporated in Colorado with its principal place of business in Colorado.

3.      This matter involves a dispute over insurance coverage under an insurance policy covering Club Valencia's multi-unit condominium buildings in Denver, Colorado.

4.      Venue is proper in the United States District Court for the District of Colorado since the defendant is a Colorado citizen and the events giving rise to this cause of action occurred in Denver, Colorado.

5.      The amount in controversy exceeds $75,000, exclusive of interest.

6.     Since the amount in controversy exceeds $75,000, exclusive of interest, and the parties are citizens of different states, this court has diversity jurisdiction pursuant to 28 U.S.C. 1332.

### Factual Allegations Common to All Counts

**A.     The Insurance Policy**

7.     IUIC issued Commercial Property Insurance Policy No. D42258003 005 ("Policy") to Club Valencia.

8.     A true and correct copy of the Policy is attached as Exhibit "A."

9.     The Policy covers certain real property located 1300 South Parker Rd., Denver, Colorado, and is effective from November 1, 2022 to November 1, 2023, subject to all terms, conditions, limitations, and exclusions set forth in the Policy.

10.     The Policy covers direct risk of physical loss or damage to covered property, subject to all terms, conditions, limitations, and exclusions set forth in the Policy.

11.     The Policy includes the following Protective Safeguards Endorsement:

**PROTECTIVE SAFEGUARDS**

*        *        *

SCHEDULE

Describe Any "P-9":

Hard-wired smoke detectors in each unit

*        *        *

A. The following is added to the Commercial Property Conditions:

Protective Safeguards

As a condition of this insurance, you are required to:

1. Maintain the protective safeguards listed in the Schedule, and over which you have control, in complete working order;

2. Actively engage and maintain in the "on" position at all times any automatic fire alarm or other automatic system listed in the Schedule; and

3. Notify us if you know of any suspension of or impairment in any protective safeguard listed in the Schedule.

However, if part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

B. The following is added to the Exclusions section of:

Causes Of Loss – Basic Form

Causes Of Loss – Broad Form

Causes Of Loss – Special Form

Mortgageholders Errors And Omissions Coverage Form Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph A.

12.    The Policy contains the following Duties in the Event of Loss or Damage

provision:

3. Duties In The Event Of Loss Or Damage

a. You must see that the following are done in the event of loss or damage to Covered Property:

*        *        *

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

Also, if feasible, set the damaged property aside and in the best possible order for examination.

*        *        *

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

\*       \*       \*

(8) Cooperate with us in the investigation or settlement of the claim.

**B.**     **Club Valencia's Articles of Incorporation, Bylaws, Declarations, and Rules and Regulations**

13.     Exhibit "B" is a true and accurate copy of Club Valencia's Articles of Incorporation.

14.     Exhibit "C" is a true and accurate copy of Club Valencia's Declarations.

15.     Exhibit "D" is a true and accurate copy of Club Valencia's Bylaws.

16.     Exhibit "E" is a true and accurate copy of Club Valencia's Rules and Regulations.

17.     Club Valencia's Articles of Incorporation vest the condominium association with certain powers, including the following:

-     "To enforce the terms, covenants, restrictions, conditions, uses, limitations and obligations set forth in the Declaration and Bylaws of the Association, and to make and enforce rules and regulations as provided therein."
-     "To engage in activities which will actively foster promote, and advance the interests of all the Owners of Condominium Units including the interests of the Declarant during its marketing of the project and its ownership of Condominium Units."

18.     Club Valencia's Declarations further provide the condominium association with certain powers, providing, "The Association shall be granted all of the powers necessary to govern, manage, maintain, repair, administer and regulate the Project and to Perform all of the duties required of it."

19.     Club Valencia's Declarations set forth certain powers that the board may not exercise, including partitioning of units, abandonment of the condominium project, transfer of

common elements, and use of insurance proceeds for purposes other than repair of damaged

property.

20.     Club Valencia's Declarations also provide as follows:

The Owners shall have the irrevocable right, to be exercised by the Association's
Board of Managers or officers, or custodian, or Managing Agent, to have access
to each Unit from time to time during reasonable hours as may be necessary for
the maintenance, repair, or replacement of any of the common elements therein or
accessible therefrom, or at any hour for making emergency repairs, maintenance
or inspection therein necessary to prevent damage to the common elements or to
another Unit.

21.     Club Valencia's Declarations provide in part as follows with respect to

responsibility for items within condominium units:

An Owner, however, shall not be deemed to own the pipes , wires, conduits or
systems (which are general common elements and for brevity are referred to as
"utility facilities") running through his Unit which serve one or more Units except
as tenant in common with the other Owners.

22.     Club Valencia's Declarations further provide, "The Association shall have the

duty of maintaining and repairing all of the common elements within the Project, . . . ."

23.     Club Valencia's Declarations include restrictive covenants, including limitations

on nuisances, keeping pets without written permission, displaying advertising signs, "immoral,

improper, offensive or unlawful use", and acts that would result in cancelation of insurance or an

increase in premium.

24.     Club Valencia's Bylaws give its Board of Managers certain powers, providing in

part as follows:

2. Powers and Duties. The Board shall have the powers and duties necessary for the
administration of the affairs of the Association and for the operation and maintenance of
the condominium community according to the highest standards achievable, relative to
other condominium or townhome communities. Such powers and duties of the Board

shall include, but shall not be limited to, the following, all of which shall be done for and on behalf of the Owners of the Condominium Units.

(a) To administer and enforce the covenants, conditions, restrictions, easements, uses, limitations, obligations and all other provisions set forth in the Condominium Declaration submitting the property to the provisions of the Condominium Ownership Act of the State of Colorado, the By-Laws of the Association and supplements and amendments thereto.

(b) To establish, make and enforce compliance with such rules and regulations as may be necessary for the operation, rental, use and occupancy of all of the Condominium Units with the right to amend the same from time to time. A copy of such rules and regulations shall be delivered or mailed to each member upon the adoption thereof.

*    *    *

(q) In general, to carry on the administration of this Association and to do all of those things necessary and reasonable in order to carry out the governing and the operation of this Condominium Property.

25.    Club Valencia's Rules and Regulations set forth rules regarding use of individual units, including the following:

- Each owner/resident will keep their unit(s) in a good state of preservation and cleanliness and will prevent the accumulation of materials that would constitute a danger or act to permit the spread or encouragement of fire or other conditions constituting a danger or nuisance to the common elements or the other units by promoting the spread of vermin and odors.

- Do not flush anything of a clogging nature down any toilet, for example: cotton balls, paper towels, feminine napkins, tampons, diapers, etc.

- Do not dispose of grease down the drains. Store grease in a grease container and dispose of it in the garbage dumpsters. Owners/residents are responsible for keeping the drain pipes within their unit walls clear.

- Make sure the fireplace grate is to the back and the damper is open before lighting a fire. Do not use paper fire logs as they crack the mortar do to the high heat they produce. Owners/residents are responsible for knowing and complying with any governmental regulations regarding the use of the fireplaces including prohibitions against trash burning and "high pollution no burn days."

- Do not lower the unit thermostats to less than sixty (60) degrees or the water pipes may freeze and break.

- Nothing will be done or kept that will increase the rate of insurance of any of the buildings or contents thereof, without the prior consent of the Board of Managers.

- Owners/resident will comply with the rules and regulations contained in any fire and liability insurance policy on the property when the Association has duly informed them of such rules.

- Pets cannot be kept in a unit without written permission.

- Propane tanks over one pound may not be kept on balconies.

**C.    November 3, 2022 Fire**

26.    On November 3, 2022, a fire ignited in Building 1301, Unit 209 at the Club Valencia condominium complex ("November 3, 2022 Fire").

27.    The fire damaged Unit 209 and adjacent units and common areas in the building.

28.    After Club Valencia presented an insurance claim to Chubb for the November 3 Fire, Chubb retained independent adjuster Drew Gause and fire cause and origin investigator Todd Hedglin.

29.    Mr. Gause and Mr. Hedglin inspected the property on or around November 11, 2022.

30.    Given the number of units the fire affected, there were numerous parties and insurers with an interest in performing a joint cause and origin investigation.

31.    Mr. Hedglin did not complete his cause and origin investigation on November 11, 2022, opting to wait until he could return with other interested parties for a joint inspection.

32.    Mr. Gause and Mr. Hedglin planned to return to the property on November 29, 2022 for the joint inspection.

33.    Chubb, through Mr. Gause, provided notice to Club Valencia and/or its property manager, LCM Management, of the November 29 joint inspection.

34.    The unit of origin was substantially altered between the November 3, 2022 and November 29, 2022.

35.    Mr. Gause, Mr. Hedglin, and investigators for other interested parties went to the scene on November 29, 2022, but were initially denied access to Unit 209.

36.    Mr. Hedglin met with a representative of the owner of Unit 209, who agreed to allow Mr. Hedglin, Mr. Gause, and the other investigators to enter Unit 209.

37.    After approximately twenty minutes, however, the unit owner's representative ordered everyone to leave the scene.

38.    Mr. Hedglin was unable to complete a full cause and origin investigation because he was denied full access to the unit of origin and because the unit of origin was substantially altered before November 29, 2022.

39.    Mr. Hedglin was able to determine there were no hard-wired smoke detectors in the units at issue.

40.    Chubb sent requests for information to Club Valencia requesting, in part, the following:

- Provide any documentation of inspections of units to verify the presence, operation, or functionality of hard-wired smoke detectors.

- Provide any invoices or other records related to maintenance, repair, or installation of hard-wired smoke detectors in the units.

- Identify any units that did not have hard-wired smoke detectors as of the date of loss.

- Identify all steps the condominium association took to ensure the presence, operation, and functionality of hard-wired smoke detectors in the units.

41.    In response to Chubb's requests for information, Club Valencia provided no evidence that there were hard-wired smoke detectors in Unit 209 as of November 3, 2022.

41.    Exhibit "F" is a true and correct copy of

42.    In response to Chubb's requests for information, Club Valencia provided no evidence that any condominium units had hard-wired smoke detectors.

43.     In response to Chubb's requests for information, Club Valencia provided no evidence it made any effort to install or maintain hard-wired smoke detectors in the condominium units.

44.     Chubb denied Club Valencia's claim for insurance coverage for damage caused by the November 3, 2022 fire, citing the Policy's Protective Safeguards endorsement and Duties in The Event of Loss or Damage provision and reserving all other defenses at law and under the Policy.

**D.     February 1, 2023 Fire**

45.     On February 1, 2023, a fire started in Building 1306, Unit 181 ("February 1 Fire"), causing damage to the unit and adjacent property in the building.

46.     Club Valencia presented an insurance claim to Chubb for damage caused by the February 1 Fire.

47.     Chubb retained Mr. Gause and Mr. Hedglin to investigate the February 1 Fire.

48.     Mr. Hedglin confirmed that there were no hard-wired smoke detectors in Unit 181.

49.     Chubb denied Club Valencia's claim for damage caused by the February 1 Fire, citing the Policy's Protective Safeguards Endorsement and reserving all rights and defenses under the Policy and at law.

## COUNT I

### (Declaratory Judgment – November 3, 2022 Fire)

50.     Chubb restates all allegations set forth in paragraph 1 through 49 as if set forth fully herein.

51.     Club Valencia disputes Chubb's coverage position with respect to the November 3, 2022 Fire.

52.     A present and justiciable controversy exists between Chubb and Club Valencia as to liability to provide coverage for damage caused by the November 3, 2022 Fire.

53.     With respect to its claim for damages caused by the November 3, 2022 Fire, Club Valencia violated the Policy's Duties in the Event of Loss or Damage provision in one or more of the following ways:

(a) Failing to preserve the fire scene for examination by Chubb and its investigators;

(b) Failing to undertake reasonable efforts to fully respond to requests for information issued by Chubb;

(c) Failing to permit access to the unit of origin; and

(d) Otherwise failing to comply with the duties set forth in the Policy's Duties in The Event of Loss or Damage provision.

54.     Chubb's fire cause and origin investigator was materially prejudiced by Club Valencia's failure to comply with the Policy's Duties in The Event of Loss or Damage provision.

55.     As a result of Club Valencia's violation of the Policy's Duties in the Event of Loss or Damage provision, Chubb is not obligated to provide coverage for the November 3, 2022 Fire.

56.     Club Valencia failed to maintain hard-wired smoke detectors in its condominium units.

57.     Club Valencia had control over protective safeguards in its condominium units.

58.     Club Valencia failed to actively engage and maintain in the "on" position hard-wired smoke detectors in its condominium units.

59.    The presence of a hard-wired smoke detector materially decreases the risk of property damage and personal injury when installed in a condominium unit.

60.    Since Club Valencia failed to maintain protective safeguards as required under the Policy's Protective Safeguards endorsement, Chubb is not obligated to provide coverage for damage caused by the November 3, 2022 Fire.

WHEREFORE, Chubb requests that this Court enter declaratory judgment finding that Chubb has no duty to indemnify Club Valencia for damage caused by the November 3, 2022 Fire.

## COUNT II

### (Declaratory Judgment – February 1, 2023 Fire)

61.    Chubb restates all allegations set forth in paragraph 1 through 60 as if set forth fully herein.

62.    Club Valencia disputes Chubb's coverage position with respect to the February 1, 2023 Fire.

63.    A present and justiciable controversy exists between Chubb and Club Valencia as to liability to provide coverage for damage caused by the February 1, 2023 Fire.

64.    Club Valencia failed to maintain hard-wired smoke detectors in its condominium units.

65.    Club Valencia had control over any protective safeguards in its condominium units.

67.    Club Valencia failed to actively engage and maintain in the "on" position hard-wired smoke detectors in its condominium units.

68.    The presence of a hard-wired smoke detector materially decreases the risk of property damage and personal injury when installed in a condominium unit.

69.    Since Club Valencia failed to maintain protective safeguards as required under the Policy's Protective Safeguards endorsement, Chubb is not obligated to provide coverage for damage caused by the February 3, 2023 Fire.

WHEREFORE, Chubb requests that this Court enter declaratory judgment finding that Chubb has no duty to indemnify Club Valencia for damage caused by the February 3, 2023 Fire.

Respectfully submitted,

By:    /s/ Brian E. Devilling
Matthew S. Ponzi (IL Bar No. 6198984)
Brian E. Devilling (IL Bar No. 6277371)
Foran Glennon Palandech Ponzi & Rudloff PC
222 North LaSalle Street, Suite 1400
Chicago, IL 60601
mponzi@fgppr.com
bdevilling@fgppr.com

Attorneys for Plaintiff,
Illinois Union Insurance Company