IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01054-PAB-NRN

ILLINOIS UNION INSURANCE COMPANY,

Plaintiff,

v.

CLUB VALENCIA CONDOMINIUM OWNERS ASSOCIATION, INC.,

Defendant, Counterclaimant, Third-Party Plaintiff,

v.

LCM PROPERTY MANAGEMENT, INC.,
CHERRY CREEK INSURANCE AGENCY, INC. d/b/a CCIG, and
CRC INSURANCE SERVICES, LLC,

Third-Party Defendants.

---

**REPORT AND RECOMMENDATION ON PLAINTIFF/COUNTERDEFENDANT'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT (ECF No. 194)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court pursuant to an order by Chief Judge Philip A. Brimmer, ECF No. 195, referring Plaintiff/Counterdefendant Illinois Union Insurance Company's ("IUIC") Motion for Leave to File First Amended Complaint for Declaratory Judgment ("Motion"), filed June 23, 2025, ECF No. 194. IUIC seeks to amend its initial Complaint for Declaratory Judgment ("Complaint") to add three new grounds for relief related to alleged fraud and misrepresentation.

Defendant/Counterclaimant Club Valencia Condominium Owners Association, Inc. ("Club Valencia") filed its response on July 23, 2025. ECF No. 208. IUIC filed its reply on August 11, 2025. ECF No. 216. Club Valencia argues that IUIC has failed to demonstrate good cause for its amendments, and that they would cause undue delay, undue prejudice, and are futile. The Court heard argument on the Motion on September 11, 2025, ECF No. 220.

The Court has taken judicial notice of the Court's file, considered the applicable Federal Rules of Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court makes the following recommendation that the motion for leave to amend be **DENIED**.

I.   **BACKGROUND**[1]

   a. **Initial Complaint and Related Facts**[2]

This suit involves a dispute over insurance coverage under an insurance policy ("the Policy"[3]) that was sold by IUIC to Club Valencia, covering its multi-unit condominium buildings in Denver, Colorado.

On November 3, 2022, a fire ignited in Building 1300, Unit 209 at the Club Valecia condominium complex ("Fire One"). Club Valencia presented an insurance claim to IUIC for Fire One. IUIC subsequently retained an independent adjuster, Drew Gause, and fire cause and origin investigator, Todd Hedglin. After an inspection on

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.
[2] Unless otherwise stated, all factual allegations are taken from the initial Complaint, ECF No. 1.
[3] The Policy (No. D422580003 005) is attached to the initial Complaint as 'Exhibit A.' ECF No. 1-1.

2

November 29, 2022, Mr. Hedglin determined that there were no hard-wired smoke detectors in the individual units he assessed. On February 1, 2023, a second fire erupted in Building 1306, Unit 181 ("Fire Two"). Once again, after inspection, Mr. Hedglin found there were no hard-wired smoke detectors in Unit 181. IUIC subsequently denied Club Valencia's insurance claims for both fires for failure to install and maintain hard-wired smoke detectors in the individual condominium units.

Based on the above facts, IUIC filed its initial Complaint on April 26, 2023, seeking only declaratory judgment with respect to the insurance claims for Fire One and Fire Two. In its original complaint, IUIC denied liability claiming that Club Valencia (1) failed to preserve the fire scene for examination by IUIC and its investigators, (2) failed to undertake reasonable efforts to fully respond to requests for information issued by IUIC, (3) failed to permit access to the unit of origin, and (4) otherwise failed to comply with the duties set forth in the Policy. Specifically, IUIC alleges that Club Valencia failed to maintain hard-wired smoke detectors in the condominium units and keep them actively engaged in the "on" position. IUIC alleges that hard-wired smoke detectors "materially decrease[] the risk of property damage and personal injury," and that due to Club Valencia's failure to maintain these protective safeguards—as alleged required by the Policy—IUIC is not obligated to provide coverage for the damage caused by the two fires. IUIC thus seeks a declaration that IUIC has no duty to indemnify Club Valencia for the damage caused by Fire One or Two.

Club Valencia filed counterclaims seeking damages for breach of contract, bad faith breach of contract, and statutory claims pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 arising from IUIC's unreasonable delay and/or denial of a proper claim

3

for covered benefits. Club Valencia seeks actual and consequential damages in the amounts of $12 million and $4 million for Fire One and Fire Two, respectively. Additionally, pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116, Club Valencia seeks exemplary damages in the amounts of $36 million and $12 million for Fire One and Fire Two, respectively. ECF No. 86.

    **b. Asbestos Testing**

After Fire One, Club Valencia retained Ethos Environmental ("Ethos") to determine whether asbestos was released in the fire. Ethos conducted a limited asbestos inspection and submitted its findings in a report dated November 14, 2022. *See* ECF No. 194-2. Ethos deemed part of the building, namely Quadrant A2, a major spill area and recommended that building management immediately contract with an abatement contractor to contain and stabilize the affected quadrant. After Fire Two, Club Valencia retained Foothills Environmental ("Foothills") to conduct another asbestos test. According to its report, Foothills performed a spill delineation on March 3, 2025 and May 11, 2025. *See* ECF No. 194-3. Foothills likewise found evidence of asbestos contamination on several floors and designated certain areas of the building as major spill areas and recommended decontamination procedures. *Id.* at 2.

In September 2023, Club Valencia retained William McLoughlin as its public adjuster. Mr. McLoughlin decided to retain a third company, Elevation Environmental Services ("Elevation"), to conduct asbestos testing. This testing was carried out by Elevation's Jonathan Milazzo in October of 2023. ECF No. 194 at 3. IUIC alleges that Mr. Milazzo's test results came back dramatically higher than the test results of Ethos and Foothills. *Id.* There was no apparent explanation for the varying test results at the

time. Based on the results from Elevation, Mr. Mcloughlin prepared a "Building Damage Estimates" report for both Fire One and Fire Two on behalf of Club Valencia. Mr. Mcloughlin estimated the cost of building repairs for damage caused by Fire One to be $18,493,910.81, and $18,071,744.25 for Fire Two. *See* ECF Nos. 194-6, 194-7. The unexplained discrepancy in the asbestos test results is the basis for the instant Motion.

### c.  Proposed Amended Complaint and Related Facts

In their proposed First Amended Complaint, IUIC seeks to add three new grounds for declaratory judgment that it has no duty to indemnify Club Valencia for damage caused by the two fires. Under Count III, IUIC alleges a violation of the "Concealment, Fraud, or Misrepresentation" provision of the Policy. IUIC for the first time argues that the Policy as a whole is *void* as a result of this violation. *See* ECF No. 194-1 at 16. Under Count IV, they allege a violation of the "Duty to Protect Property from Further Damage" provision. *Id.* In their third new ground for relief, Count V, IUIC claims that pursuant to the "Dishonest Acts Exclusion" provision,"[4] Club Valencia's insurance claims are excluded from any coverage under the Policy. *Id.* at 17.

The asserted factual bases for these new additional grounds for relief are that certain asbestos containment barriers were *intentionally* removed from the containment zones prior to the testing conducted by Elevation in October 2023 to further spread asbestos, supposedly so that Club Valencia could fraudulently increase their insurance claims. Specifically, IUIC alleges that the evening prior to Mr. Milazzo's testing, Mr. Mcloughlin and Club Valencia board member Alan Kyte entered the containment zone and removed containment barriers intended to stop further spread of asbestos within

---

[4] *See* ECF No. 1-1 at 31.

5

the buildings. IUIC claims that the containment barriers were intentionally removed "for the purposes of facilitating further spread of asbestos throughout the building" in order to increase their claimed damages." ECF No. 194-1, ¶¶ 81–82. IUIC additionally claims that the doors to the individual condominium units within the containment zones were left open, furthering the spread of asbestos. *Id.* ¶ 83. IUIC states that in the report prepared by Elevation, the levels of asbestos in some areas were "more than thirty times what identical testing in the same condominium units by Ethos and Foothills showed." *Id.* ¶ 88. The support for IUIC's new factual allegations is based almost exclusively on the testimony of Club Valencia resident and former facilities manager Zach Scott from a deposition given on May 22, 2025. IUIC says that prior to this deposition, there was no explanation for "the dramatic increase in test result levels from Foothills' and Ethos' initial testing to Elevation's subsequent testing," and there was "nothing in the record remotely suggesting that Mr. McLoughlin or Mr. Kyte tore down containment barriers the night before Elevation's testing." ECF No. 194 at 6–8. IUIC further argues that because the factual basis for the amendment "was unknown until recent weeks," there is no undue prejudice, undue delay, dilatory motive, or bad faith in seeking to amend. *Id.* at 2.

   **d.  Procedural History**

Pursuant to an initial scheduling conference held on August 22, 2023 before Magistrate Judge Scott T. Varholak, ECF No. 28, the following case deadlines were set: the deadline for joinder of parties and amendment of pleadings was November 23, 2023, the discovery cut-off was May 22, 2024, and dispositive motions were due on

6

June 3, 2024. This initial scheduling order was subsequently modified on seven occasions.[5]

By order dated May 21, 2025, the discovery cut-off was extended a final time to June 13, 2025, for the limited purposes of conducting depositions for five witnesses and issuing twelve subpoenas and receiving responses to those subpoenas. ECF No. 187. The deadline for dispositive motions was extended to June 27, 2025, ECF No. 161, and the deadline to amend pleadings was extended to April 12, 2024, ECF No. 71. Club Valencia moved for partial summary judgment on May 28, 2025, ECF No. 188, and IUIC filed the present Motion on June 23, 2025.

II.  **LEGAL STANDARD**

IUIC requests to amend the Complaint after the deadline for amendment set forth in the scheduling order. When a party seeks to amend pleadings after the deadline set in the scheduling order, the Court's consideration is subject to a two-prong analysis. First, the party must establish good cause under Federal Rule of Civil Procedure 16(b)(4). *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Second, if the party has established good cause, the Court turns to whether amendment is proper under Federal Rule of Civil Procedure 15(a). *Id.* at 1242; *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch*, 771 F.3d at 1240 (citing *Pumpco*, 204 F.R.D. at

---

[5] See ECF Nos. 71, 128, 131, 145, 161, 168, and 187.

7

668). This burden is satisfied, for example, when a party learns of new information in a deposition or that the governing law has changed. *Id.* "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

If good cause to amend the scheduling order exists, the Court then turns to Rule 15(a) which states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The standard under Rule 15(a) is "more lenient" than that under Rule 16(b). *Pumpco*, 204 F.R.D. at 668. However, the Court may exercise its discretion to deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendments, or futility of the amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. . . . The relevant standard in determining whether claims are futile is the same standard that is applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Dorough v. Am. Family Mut. Ins. Co.*, No. 15-cv-02388-MSK-KMT, 2016 WL 1426968, at *2 (D. Colo. Apr. 11, 2016). Whether to allow amendment is within the trial court's discretion. *Burks v. Okla. Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996). The party contesting the motion to amend has the burden of proving that the amendment should be refused on one of these bases. *Acker v. Burlington N. & Santa Fe R. Co.*, 215 F.R.D. 645, 654 (D. Kan. 2003).

III. ANALYSIS

    a. Rule 16

The Court must first determine whether IUIC has shown good cause to modify the scheduling order. "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Colo. Visionary Acad.*, 194 F.R.D. at 687 (internal quotation and citation omitted).

The deadline for seeking to amend pleadings in this case was April 12, 2024. ECF No. 71. IUIC filed its motion to amend on June 23, 2025—over 14 months after the deadline had passed and after the close of discovery. IUIC primarily relies on new information gleaned from the deposition testimony of Mr. Scott on May 22, 2025. This deposition was conducted not by IUIC, but by a third-party in a related state court case. Mr. Scott testified that Mr. Kyte told him that he and Mr. Mcloughlin had removed the barriers the night before Mr. Milazzo's testing. *See* ECF No. 194-10. IUIC also relies on the deposition testimony of former Club Valencia board president Jeurgen Waldvogel, who testified that Mr. Scott had relayed to him what Mr. Kyte told Mr. Scott. ECF No. 194 at 7. Mr. Waldvogel also testified that he believed the containment barriers were intentionally removed to facilitate the spread of asbestos. *Id.* Mr. Waldvogel was deposed on June 10, 2025. *See* ECF No. 216-1.

Although a party may satisfy the good cause requirement under Rule 16 if a plaintiff learns *new* information during discovery, *Gorsuch*, 771 F.3d at 1240, IUIC was well aware of the significant discrepancy between the asbestos reports prepared by Ethos and Foothills, on one hand, and Elevation. It is unclear to the Court why IUIC

9

never bothered to depose Mr. Scott, an independent contractor and maintenance man who worked for Club Valencia, during the two years this case has been pending. Mr. Scott was included in Club Valencia's September 12, 2023 initial disclosures as a witness who may have relevant information. *See* ECF No. 194-9. At oral argument, the Court posed this question to counsel for IUIC, who responded that IUIC did not think Mr. Scott would have any important information. The Court expressed skepticism at the idea that the building maintenance man would not have information relevant to the asbestos containment procedures being undertaken in the building. Similarly, IUIC offers no explanation for why they waited until May 2025 to depose Mr. Milazzo, the Elevation employee who conducted the third of the asbestos tests in October 2023, which forms the crux of Club Valencia's claim for increased damages and, in turn, IUIC's Motion. Furthermore, on April 21, 2025, prior to the deposition of Mr. Scott, IUIC had ample opportunity to, and did in fact, question Mr. Mcloughlin about doors to individual units being left open, the kind of containment barriers that were or were not in place, and access to the containment zones. *See* ECF No. 194-5.

      Where IUIC failed to conduct timely depositions of four pertinent witnesses that they had knowledge of, the Court cannot find that IUIC acted with appropriate diligence in discovering the underlying conduct related to the three additional grounds for relief. Nothing prevented IUIC from discovering the facts upon which the proposed amendments are based within the timeframe set by the scheduling order, or some reasonable time thereafter. Accordingly, the Court finds that IUIC has failed to make a showing of good cause under Rule 16.

### b. Rule 15

Even assuming that IUIC was diligent and that the discovery of the new information from Mr. Scott's deposition testimony was sufficient to show good cause, IUIC must also satisfy Rule 15. As noted above, under Fed. R. Civ. P. 15(a)(2), in the absence of reasons such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility, leave to amend should be "freely given." *See Traenkner v. Capalbo*, No. 15-cv-00743-WYD-KMT, (D. Colo. Feb. 8, 2016).

The Court finds that the new allegations that Club Valencia's supposed fraud voids the entire Policy, would constitute a drastic alteration of the case. *Cf. Traenkner*, 2016 WL 471385, at *2 (finding no undue prejudice where the amendments did not add new claims but only augmented existing claims with more factual allegations); *see also R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751–52 (10th Cir. 1975) (finding no prejudice when "[t]he amendments did not propose substantially different issues"). The case originally was about whether Club Valencia was required to maintain hard-wired smoke alarms and whether it adequately cooperated with the investigation. IUIC's new allegations—that Club Valencia personnel actively sabotaged the fire scene to spread asbestos throughout the facility and increase the claimed damages (while bordering on the implausible[6])—would open multiple different evidentiary cans of worms in this

---

[6] The notion that individuals associated with Club Valencia went into the containment zone, at risk to their own health, and *intentionally* removed plastic barriers to further the spread of asbestos strikes the Court as dubious. When asked how IUIC would go about proving intent, IUIC acknowledged that they were making an inferential leap in bringing allegations of *purposeful* removal of barriers. The accusation that the barriers were removed *in order to* fraudulently inflate Club Valencia's insurance claims rests solely on Mr. Waldvogel's personal belief and double-hearsay testimony of what

11

lawsuit, including, among other things, the supposed intent of the individuals involved in allegedly removing the barriers and the science behind the spread of asbestos at a fire scene.

Discovery would have to be reopened and significantly expanded, resulting in significant delays. Club Valencia argues, and the Court agrees, that allegations that the removal of some plastic barriers caused the level of asbestos to increase by as much as *thirty* times overnight would necessitate additional expert testimony to address causation issues related to the asbestos migration. Club Valencia may also wish to conduct additional depositions of Mr. Waldvogel, Mr. Scott, and the agents who conducted the prior asbestos testing.

Lastly, as Club Valencia points out in its response, this case is over two years old, and over 160 tenants have been prevented from living in their condominium units. Club Valencia laments that it "cannot afford to rebuild its units without the fire insurance benefits it paid for or at least obtain a resolution of this case if it is forced to look to other alternatives." Under these circumstances, the Court finds that the additional delays, if IUIC's Motion were granted, would cause significant prejudice to Club Valencia. *See Traenkner*, 2016 WL 471385, at *2 (opining that prejudice is typically found when the amendment "unfairly affects the defendants in terms of preparing their defense to the amendment.") (citing *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006)) (internal quotations omitted). Accordingly, the Court finds that Club Valencia has met its burden under Rule 15.

---

Mr. Scott said Mr. Kyte told him. Nowhere is it alleged that anyone actually witnessed the removal of the barriers.

In summary, IUIC was not diligent where it waited nearly two years to depose three pertinent witnesses and never bothered to depose the fourth, Mr. Scott. IUIC is a large insurance company that issued a policy of insurance covering a multi-million dollar condominium complex. The fires at issue occurred in November of 2022 and February of 2023. This lawsuit was filed in April of 2023. If IUIC had additional bases for denying coverage, the company should have discovered and asserted those bases well before June of 2025—before discovery in this lawsuit was closed, before expert reports were issued, and before the summary judgment deadline, especially in a case where the initial deadlines were already extended *seven* times.

Allowing IUIC's amendments at this late stage would substantially prejudice the insured and the legal process, which has dragged on for a long time already. At some point, the parties must abide by and be able to rely on the deadlines that are set. A "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Washington v. Arapahoe Cnty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441 (D. Colo. 2000) (internal quotations and citations omitted). Accordingly, the Court finds that IUIC's proposed amendments fail under both Rule 15 and Rule 16.

IV.   **RECOMMENDATION**

In light of the foregoing, it is hereby **RECOMMENDED** that IUIC's Motion for Leave to File First Amended Complaint for Declaratory Judgment, ECF No. 194, be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.***, 183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse***, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated at Denver, Colorado this 14th Day of October 2025

*/s/ N. Reid Neureiter*
_____
N. Reid Neureiter
United States Magistrate Judge