IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 23-cv-01054-PAB-NRN

ILLINOIS UNION INSURANCE COMPANY,

    Plaintiff, Counter Defendant,

v.

CLUB VALENCIA CONDOMINIUM OWNERS ASSOCIATION, INC.,

    Defendant, Counterclaimant, Third-Party Plaintiff,

v.

LCM PROPERTY MANAGEMENT, INC.,
CHERRY CREEK INSURANCE AGENCY, INC., d/b/a CCIG, and
CRC INSURANCE SERVICES, LLC,

    Third-Party Defendants.

## ORDER

This matter comes before the Court on Club Valencia Condominium Owners Association, Inc.'s Motion for Partial Summary Judgment Pursuant to Rule 56 [Docket No. 188] and Plaintiff/Counter-Defendant's Motion for Summary Judgment and Statement of Undisputed Material Facts in Support of Motion for Summary Judgment [Docket No. 198]. Plaintiff/counter-defendant Illinois Union Insurance Company ("IUIC") and defendant/counter-claimant Club Valencia Condominium Owners Association, Inc. ("Club Valencia") filed responses to the motions for summary judgment. Docket Nos. 199, 213. IUIC and Club Valencia filed replies in support of their respective motions for

summary judgment. Docket Nos. 219, 204. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. UNDISPUTED FACTS[1]

Club Valencia is the owners' association for the Club Valencia Condominiums at 1300 S. Parker Rd., Denver, Colorado (the "Insured Premises"). Docket No. 188 at 2, ¶ 1. The Insured Premises is a 3-story 329-unit condominium complex with a clubhouse and office. *Id.*, ¶ 2. IUIC issued Commercial Property Insurance Policy No. D42258003 005 (the "Policy") to Club Valencia. *Id.*, ¶ 4; Docket No. 198 at 1, ¶ 2. The Policy covers the Insured Premises and was effective from November 1, 2022 to November 1, 2023. Docket No. 188 at 2, ¶ 4; Docket No. 198 at 1, ¶ 3. The Policy covers direct risk of physical loss or damage to covered property, subject to terms, conditions, limitations, and exclusions set forth in the policy. Docket No. 198 at 2, ¶ 4. The Policy includes the following protective safeguards endorsement:

> **PROTECTIVE SAFEGUARDS**
>
> * * *
>
> SCHEDULE
>
> Describe Any "P-9":
>
> Hard-wired smoke detectors in each unit
>
> * * *
>
> A. The following is added to the Commercial Property Conditions:
>
> Protective Safeguards
>
> As a condition of this insurance, you are required to:
>
> 1. Maintain the protective safeguards listed in the Schedule, and over which you have control, in complete working order;

---

[1] The following facts are undisputed unless otherwise noted.

> 2. Actively engage and maintain in the "on" position at all times any automatic fire alarm or other automatic system listed in the Schedule; and
>
> 3. Notify us if you know of any suspension of or impairment in any protective safeguard listed in the Schedule.
>
> However, if part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.
>
> B. The following is added to the Exclusions section of:
>
> Causes Of Loss – Basic Form
>
> Causes Of Loss – Broad Form
>
> Causes Of Loss – Special Form
>
> Mortgageholders Errors And Omissions Coverage Form Standard Property Policy
>
> We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph A.
>
> C. The protective safeguards to which this endorsement applies are identified by the following symbols:
>
> . . .
>
> "P-9", the protective system described in the Schedule.

*Id.* at 2-3, ¶ 5; Docket No. 198-1 at 75.[2]

The Policy describes an automatic fire alarm as an alarm, protecting the entire building, that is (a) connected to a central station; or (b) reporting to a public or private fire alarm station. Docket No. 188-6 at 75-76; Docket No. 198-1 at 75-76. The only

---

[2] While the parties do not quote all parts of the Policy in their undisputed facts, they do reference the Policy and do not dispute its authenticity. Docket No. 188 at 2, ¶ 4; Docket No. 198 at 1-3, ¶¶ 2, 5. Thus, the Court treats the contents of the entire Policy as undisputed.

other automatic systems listed in the Policy's protective safeguards endorsement are automatic sprinkler systems and automatic commercial cooking exhaust and extinguishing systems. *Id.* The protective safeguards endorsement does not require the policy holder to have any smoke detectors that are connected to a central station or that report to a public or private fire alarm station. Docket No. 188 at 3, ¶ 17.

IUIC is part of the Westchester group of insurance companies. *Id.* at 2, ¶ 6. Club Valencia had an insurer-insured relationship going back to at least 2014 with the Chubb companies, including Westchester and IUIC. *Id.*, ¶ 7. IUIC insured Club Valencia in 2016-17, 2017-18, 2019-20, 2020-21, 2021-22, and 2022-23. Docket No. 198 at 3, ¶ 6. Each policy contained a substantially identical protective safeguards endorsement. *Id.*, ¶ 7.

On or about November 3, 2022, a fire occurred in Unit 209 at the Insured Premises. *Id.* at 2, ¶ 8; Docket No. 198 at 4, ¶ 17. On January 11, 2023, IUIC denied coverage for the 2022 fire based on an alleged lack of protective safeguards, i.e., hardwired smoke detectors in the condominium units, and an alleged failure to cooperate after the loss. Docket No. 188 at 3, ¶ 11. IUIC did not immediately terminate the Policy after denying coverage for the 2022 fire. *Id.*, ¶ 14. On or about February 1, 2023, a second fire occurred at the Insured Premises in Unit 181. *Id.*, ¶ 15; Docket No. 198 at 7, ¶ 36. On or about March 15, 2023, IUIC denied Club Valencia's claim for the 2023 fire based on the same alleged lack of protective safeguards that formed the basis for denial of benefits for the 2022 fire. Docket No. 188 at 3, ¶ 16. An inspection report revealed that the common areas had hardwired smoke detectors, while the individual

4

condominium units had non-hardwired battery operated units.[3]  Docket No. 198 at 6, ¶ 29.

A fire occurred in Unit 139 at Club Valencia on January 27, 2017.  Docket No. 188 at 4, ¶ 20.  The Westchester policy in place at the time of the 2017 fire contained a hardwired smoke detector protective safeguard endorsement.  *Id.*, ¶ 22.  Westchester paid the claim for the 2017 fire under the Westchester policy in effect at the time.  *Id.*, ¶ 25.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  A movant who bears the burden at trial must submit evidence to establish the essential

---

[3] IUIC cites to an exhibit which it claims is the deposition of Club Valencia's board president.  Docket No. 198 at 6, ¶ 29.  Club Valencia disputes the fact, stating that the cited exhibit is not a deposition.  Docket No. 213 at 4, ¶ 29.  The cited exhibit is not a deposition transcript, but is rather an inspection report.  *See* Docket No. 198-21.  Nevertheless, the exhibit supports the asserted fact, so the Court deems it admitted.  *See id.*

elements of its claim.  *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*  However, where, as here, there are cross motions for summary judgment, the reasonable inferences drawn from affidavits, attached exhibits, and depositions are rendered in the light most favorable to the non-prevailing party.  *Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004).  Furthermore, "[w]hen the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to

6

material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks and citation omitted).

Under Colorado law, "[t]he interpretation of an insurance policy is a matter of law."[4] *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002) (citation omitted). Colorado's doctrine of reasonable expectations provides that insurers are obligated to "clearly and adequately convey coverage-limiting provisions to insureds." *Bailey v. Lincoln General Ins. Co.*, 255 P.3d 1039, 1048 (Colo. 2011). The doctrine allows for "the reasonable expectations of insureds [to] succeed[ ] over exclusionary policy language in two main situations: (1) where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue; and (2) where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable person would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain otherwise." *Id.* at 1048-49. "In construing a policy, words should be given their plain meaning according to common usage . . . and strained constructions should be avoided." *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990). "If, based on how an ordinary, objectively reasonable insured would read the whole policy, the question of whether certain coverage exists is susceptible to more than one reasonable interpretation . . . then the coverage provisions are ambiguous, to be construed against

---

[4] The parties' arguments assume that Colorado law applies. *See* Docket No. 188 at 5 (discussing the interpretation of insurance contracts under Colorado law); Docket No. 198 at 11 (same). The Court will therefore proceed under the same assumption. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) (citation omitted) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

the insurer as the drafter of the policy." *Bailey*, 255 P.3d at 1051 (internal quotations and citation omitted).

### III. ANALYSIS

On April 26, 2023, IUIC filed this case, seeking a declaratory judgment that it has no duty to indemnify Club Valencia for damage caused by the 2022 and 2023 fires. Docket No. 1 at 9-12, ¶¶ 50-69. In its answer, Club Valencia includes counterclaims for breach of contract, for statutory bad faith pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 1116, for common law bad faith breach of insurance contract, and for declaratory judgment. Docket No. 86 at 48-52, ¶¶ 131-156.

IUIC seeks summary judgment on all claims. *See generally* Docket No. 198. It argues that Club Valencia is barred from coverage because Club Valencia did not adhere to the conditions in the protective safeguards endorsement: maintaining hardwired smoke detectors in condominium units over which it has control and actively engaging and maintaining in the "on" position at all times hardwired smoke detectors in condominium units. *Id.* at 11-12. IUIC argues that Club Valencia's duty to maintain hardwired smoke detectors in all units means it must have hardwired smoke detectors installed in each unit. *Id.* at 16-17. Additionally, IUIC argues that Club Valencia has control over smoke detectors in each unit. *Id.* at 14-16. IUIC argues that Club Valencia's lack of hardwired smoke detectors also means Club Valencia violated its duty to actively engage and maintain in the "on" position hardwired smoke detectors in condominium units. *Id.* at 11-12, 14. Finally, IUIC argues that Club Valencia's bad faith claim fails as a matter of law because there is no valid claim of coverage and because, even if there was a valid claim of coverage, IUIC's position is reasonable because it

8

based its denial on a legitimate legal dispute regarding interpretation of the Policy.  *Id.* at 17-19.

Club Valencia seeks partial summary judgment that the protective safeguard endorsement in the Policy does not bar fire insurance coverage for the 2022 and 2023 fires.  Docket No. 188 at 2.  Club Valencia claims that the reference in the protective safeguards endorsement to hardwired smoke detectors does not require Club Valencia to install hardwired smoke detectors in individual units because Club Valencia does not have "control" over individual units in the condominium complex.  *Id.* at 7-12.  Club Valencia also argues that it was inappropriate for IUIC to deny coverage by asserting that Club Valencia did not actively engage in the "on" position any automatic fire alarm or other automatic system listed in the Schedule because the Schedule did not list any automatic fire alarm or other automatic system.[5]  *Id.* at 12.

### A. Interpretation of "and Over Which You Have Control"

The protective safeguards endorsement states that, "[a]s a condition of this insurance, you are required to: 1. Maintain the protective safeguards listed in the Schedule, and over which you have control, in complete working order."  Docket No. 198 at 2, ¶ 5.  The only protective safeguard listed in the Schedule is "[h]ard-wired smoke detectors in each unit."  Docket No. 198-1 at 75.

Club Valencia argues that it does not have "control" over the individual condominium units—which are privately owned—and therefore does not have an obligation to maintain hardwired smoke detectors within them.  Docket No. 188 at 7-8.

---

[5] Club Valencia raises alternative arguments that its interpretation of the Policy should control because it was deceived into believing it had coverage and that it is entitled to coverage because IUIC's interpretation is contrary to public policy.  *Id.* at 13-20.  The Court does not reach these arguments.

9

IUIC argues that, even if Club Valencia does not own the individual units, it still has the ability to control what each condominium owner is required to install. Docket No. 198 at 14-15. IUIC cites Club Valencia's Articles of Incorporation in support of the proposition that Club Valencia had "the power to exercise restraining or directing influence over something." *Id.* at 15. However, if Club Valencia had such control over each condominium unit, there would be no need to specify that Club Valencia only has to maintain the protective safeguards "over which you have control." Thus, IUIC's "control" theory renders the phrase "and over which you have control" superfluous. Colorado law provides that constructions which render phrases superfluous should be avoided. *See Northglenn Gunther Toody's, LLC v. HQ8-10410-10450 Melody Lane, LLC*, No. 16-cv-2427-WJM-KLM, 2016 WL 6569099, at *3 (D. Colo. Nov. 4, 2016) ("Colorado courts strive to avoid any interpretation that would render contractual language meaningless or redundant."); *Dep't of Revenue v. Agilent Techs., Inc.*, 441 P.3d 1012, 1016 (Colo. 2019) ("We must avoid constructions that would render any words or phrases superfluous."). Thus, the Court rejects IUIC's expansive definition of "control" and instead finds that, in the context of its use within the policy provision, "control" means "to have responsibility for." [6]

The word "and" supports this reading of "control." The protective safeguards endorsement states that "you are required to . . . [m]aintain the protective safeguards

---

[6] Because the Court finds that Club Valencia does not have an obligation to maintain hardwired smoke detectors in privately owned units, it need not determine the proper interpretation of the word "maintain." *See Morse v. Frederick*, 551 U.S. 393, 431 (2007) ("the cardinal principle of judicial restraint is that if it is not necessary to decide more, it is necessary not to decide more.") (Breyer, J., concurring in the judgment in part and dissenting in part) (citation and internal quotations omitted).

listed in the Schedule, **and** over which you have control, in complete working order." Docket No. 198 at 2, ¶ 5 (emphasis added). The protective safeguards endorsement states that Club Valencia must maintain hardwired smoke detectors, but only those over which it has control. In this regard, the word "and" acts as a qualifier to Club Valencia's duty to maintain hardwired smoke detectors. Such a qualification, that Club Valencia's maintenance duties are limited to only those smoke detectors it controls, is consistent with the property being a condominium complex. Club Valencia does not control, i.e. own, the individual units and the items within them.

This interpretation of the contested language is also supported by the phrase "have control." If IUIC were correct that Club Valencia has control over all smoke detectors, not only would the phrase "and over which you have control" be unnecessary, but it would also be unnecessary to use the term "have control." By stating "have control," the words imply that there are smoke detectors in the insured premises over which Club Valencia does not have control. Thus, the plain meaning of the phrase "and over which you have control" shows that IUIC's interpretation is incorrect. Rather, the language is consistent with Club Valencia having control over certain smoke detectors, such as smoke detectors in the common areas, and not other smoke detectors, such as smoke detectors in individually owned condominium units. Notably, according to IUIC's statement of undisputed facts, the common areas had hardwired smoke detectors and individual units had non-hardwired smoke detectors.[7] *Id.* at 6, ¶ 29.

---

[7] Club Valencia disputes this fact, Docket No. 213 at 4, ¶ 29, on the grounds that the cited exhibit is not a deposition as claimed, but rather an inspection report. The exhibit nevertheless supports the asserted fact. *See generally* Docket No. 198-21.

### B. Interpretation of "Automatic Fire Alarm"

In the alternative, IUIC argues that, even if Club Valencia did not have control over smoke detectors in the privately owned units, it still failed to adhere to the second requirement in the protective safeguards endorsement: "Actively engage and maintain in the 'on' position at all times any automatic fire alarm or other automatic system listed in the Schedule." Docket No. 199 at 8-9. As noted earlier, hardwired smoke detectors are the only item listed in the Schedule. Docket No. 188-6 at 75; Docket No. 198-1 at 75. IUIC argues that Club Valencia's alleged failure to require hardwired smoke detectors in the condominium units means that it failed to satisfy the second condition.[8] Docket No. 188 at 11-12. The Court disagrees. The term "automatic fire alarm" is expressly defined in the protective safeguards endorsement as an "alarm, protecting the entire building, that is: a. Connected to a central station; or b. Reporting to a public or private fire alarm station." Docket No. 188-6 at 75; Docket No. 198-1 at 75. And it is undisputed that the Policy does not require any smoke detectors that are connected to a central station or that report to a public or private fire alarm station. Docket No. 188 at 3, ¶ 17; Docket No. 199 at 4, ¶ 17. Thus, the hardwired smoke detectors would not be classified as automatic fire alarms, and a failure to have them would not implicate this provision. Nor do hardwired smoke detectors qualify as an "other automatic system." The only other automatic systems defined in the protective safeguards endorsement is

---

[8] In its brief, IUIC claims that the protective safeguards endorsement imposes the condition that Club Valencia "actively engage and maintain in the 'on' position at all times *hard-wired smoke detectors in condominium units*." Docket No. 198 at 11 (emphasis added). However, in its statement of material facts, it states—and Club Valencia does not dispute—that the protective safeguards endorsement imposes the condition that Club Valencia "[a]ctively engage and maintain in the 'on' position at all times *any automatic fire alarm or other automatic system listed in the Schedule*." *Id.* at 2, ¶ 5 (emphasis added).

12

an automatic sprinkler system and an automatic commercial cooking exhaust and extinguishing system.  Docket No. 188-6 at 75-76; Docket No. 198-1 at 75-76.  The hardwired smoke detectors do not fit into either of these categories.[9]  Moreover, hardwired smoke detectors are explicitly defined as "the protective system described in the Schedule," which is a separate and distinct definition from that of automatic fire alarm or any other automatic system.  Docket No. 188-6 at 76; Docket No. 198-1 at 76.

Accordingly, coverage under the Policy is not barred by Club Valencia's alleged failure to adhere to the requirements listed in the protective safeguards endorsement, and the Court will grant Club Valencia's motion for partial summary judgment on this issue.[10]

### C. Bad Faith

IUIC argues that it is entitled to summary judgment on Club Valencia's statutory bad faith claim and its common law bad faith claim.  Docket No. 198 at 17.  Colo. Rev. Stat. § 10-3-115 states that "[a] person engaged in the business of insurance shall not

---

[9] An automatic sprinkler system is defined as "any automatic fire protective or extinguishing system, including connected: (1) Sprinklers and discharge nozzles; (2) Ducts, pipes, valves and fittings; (3) Tanks, their component parts and supports; and (4) Pumps and private fire protection mains."  Docket No. 188-6 at 75; Docket No. 198-1 at 75.  An automatic commercial cooking exhaust and extinguishing system is defined as a system "installed on cooking appliances and having the following components: a. Hood; b. Grease removal device; c. Duct System; and d. Wet chemical fire extinguishing equipment."  Docket No. 188-6 at 75; Docket No. 198-1 at 75.  Hardwired smoke detectors have none of these features.

[10] Because the Court will grant summary judgment on these grounds, it need not consider Club Valencia's other arguments that (1) summary judgment is warranted because IUIC deceived Club Valencia into believing it is entitled to coverage, and (2) summary judgment is warranted because IUIC's interpretation of the Policy is contrary to public policy.  See Seay v. Campbell, 130 F. App'x 268, 272 (10th Cir. 2005) (refusing to analyze other potential grounds for granting summary judgment after already finding summary judgment warranted); Boone v. MVM, Inc., No. 05-cv-02504-EWN-CBS, 2008 WL 450206, at *11 (D. Colo Feb. 15, 2008) (same).

unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). IUIC argues that these claims fail as a matter of law because they presuppose that Club Valencia has a valid insurance claim. Docket No. 198 at 17. However, as explained above, the protective safeguards endorsement does not bar coverage for the 2022 and 2023 fires. Thus, the predicate of IUIC's argument is incorrect.

      IUIC argues that, even if Club Valencia has a valid coverage claim, it is still entitled to summary judgment on Club Valencia's bad faith claims. *Id.* at 18. Pursuant to § 10-3-1115, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). An insurer's conduct is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). The determination of whether an insurer has breached its duties to the insured is one of reasonableness under the circumstances. *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008). In Colorado, acting "without a reasonable basis" has been construed to mean pursuing a groundless position that is not supported by credible evidence. *Cooper v. Shelter Gen. Ins. Co.*, 653 F. Supp. 3d 873, 878 (D. Colo. 2023) (quoting *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4326269, at *5 (D. Colo. Sept. 23, 2021)). The question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim. *Estate of Morris*, 192 P.3d at 523. The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards. *Schultz v. GEICO Cas. Co.,* 429 P.3d 844, 847 (Colo. 2018).

Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury. *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law. *Estate of Morris*, 192 P.3d at 524.

To prevail on a claim for bad faith delay or denial of insurance benefits under Colorado common law, a plaintiff must establish that her insurer (1) acted unreasonably under the circumstances; and (2) knew of, or had reckless disregard for, the unreasonableness of its actions. *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004). "The only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." *Cooper*, 653 F. Supp. 3d at 878 (alterations omitted) (quoting *Williams v. Owners Insurance Co.*, 621 F. App'x 914, 919 (10th Cir. 2015) (unpublished)). "By contrast, to prove a first-party claim of common law bad faith, a plaintiff must show not only that the insurer's conduct in processing or denying a valid claim was unreasonable but also that the insurer knew its conduct was unreasonable or recklessly disregarded the unreasonableness of its conduct." *Id.* (citing *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1275–76 (Colo. 1985)). "Accordingly, a claim of common law bad faith imposes a more exacting standard of proof than a statutory claim." *Id.* (citation omitted)); *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011) (the "burden of proving th[e] statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing").

IUIC argues that Club Valencia cannot show that it acted without a reasonable basis because unreasonableness is not present as a matter of law when there is no controlling precedent resolving the coverage dispute.  Docket No. 198 at 18-19.  While IUIC provides caselaw in support of this proposition, that caselaw involves Oklahoma law.  *Id.* at 19; *see also Flores v. Monumental Life Ins. Co.*, 620 F.3d 1248, 1255-56 (10th Cir. 2010) (supporting IUIC's proposition under Oklahoma law); *Bituminous Cas. Corp. v. Pollard*, 508 F. App'x 780, 791-92 (10th Cir. 2013) (unpublished) (same).

Under Colorado law, "if a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably."  *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012) (citation omitted).  However, "fair debatability is not a threshold inquiry that is outcome determinative as a matter of law." *Id.* at 759-60 (citation omitted).  Thus, the fact that there is no controlling precedent weighs in favor of IUIC not acting in bad faith, but it is not determinative.  *See Etherton v. Owners Inc. Co.*, 829 F.3d 1209, 1227 (10th Cir. 2016) ("under Colorado law, fair debatability can be a relevant but not necessarily a determinative factor as to whether the insurer acted reasonably.").  Accordingly, whether IUIC acted reasonably is a question of fact for a jury, precluding summary judgment on this issue.[11]

## IV. CONCLUSION

Therefore, it is

---

[11] IUIC's other arguments for summary judgment revolve around its stance that the protective safeguards endorsement bars Club Valencia from coverage.  Docket No. 198 at 11-17.  Because that is not the case, those arguments fail.

**ORDERED** that Club Valencia Condominium Owners Association, Inc.'s Motion for Partial Summary Judgment Pursuant to Rule 56 [Docket No. 188] is **GRANTED**. It is further

**ORDERED** that Plaintiff/Counter-Defendant's Motion for Summary Judgment and Statement of Undisputed Material Facts in Support of Motion for Summary Judgment [Docket No. 198] is **DENIED**.

DATED March 10, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge