**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| ILLINOIS UNION INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:23-cv-1054-PAB- |
| v. | ) NRN |
| | ) |
| CLUB VALENCIA CONDOMINIUM OWNERS | ) Judge Phillip A. Brimmer |
| ASSOCIATION, | ) |
| | ) Magistrate Judge N. Reid Neureiter |
| Defendant/Counterclaimant, | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LCM PROPERTY MANAGEMENT, INC., | ) |
| CHERRY CREEK INSURANCE AGENCY, | ) |
| INC., *d/b/a* CCIG, and CRC INSURANCE | ) |
| SERVICES, LLC., | ) |
| | ) |
| Third-Party Defendants. | ) |

**ILLINOIS UNION INSURANCE COMPANY'S MOTION TO AMEND THE
SCHEDULING ORDER AND CONFIRM THE TIMELINESS OF MR. DAVISCOURT'S
<u>SUPPLEMENTAL REBUTTAL EXPERT REPORT</u>**

Plaintiff/Counter-Defendant Illinois Union Insurance Company ("IUIC"), pursuant to

Federal Rules of Civil Procedure 16(b)(4) and 26(e), and in accordance with the Court's direction

at the May 12, 2026 Final Pretrial Conference (Dkt. 241), respectfully submits this Motion to

confirm that the supplemental rebuttal expert report of Nick Daviscourt was timely disclosed and

amend the existing Scheduling Order (Dkt. 28) to authorize the supplemental disclosure and to set

a deadline for Club Valencia, if it so chooses, to re-depose Mr. Daviscourt regarding his

supplemental expert report.  In support, IUIC states as follows:

1

**Statement of Conferral**

Undersigned counsel for IUIC conferred with counsel for Club Valencia regarding the relief requested in this Motion. IUIC asked Club Valencia to identify the specific prejudice it contends results from the disclosure of Mr. Daviscourt's supplemental expert report, and to explain why an additional deposition of Mr. Daviscourt—which IUIC does not oppose—would not cure any such prejudice. Club Valencia declined to articulate the substance of its position during IUIC's telephonic meet and confer efforts, and made clear that it would only reveal them via written motion practice. So here we are. Club Valencia opposes the relief requested.

## I.     INTRODUCTION

This motion concerns a single supplemental expert report that was disclosed a full year before pretrial disclosures are due, and nearly thirteen months before trial. IUIC timely served the original rebuttal report of its asbestos expert, Nick Daviscourt, on the March 31, 2025, deadline set in the Scheduling Order. (Dkt. 165) But the Scheduling Order left fact discovery open for nearly eight more weeks, until May 23, 2025. (Dkt. 161) One day before the close of fact discovery—on May 22, 2025—Club Valencia's own former facilities manager, Zach Scott, testified at deposition and confirmed a key factual premise that Mr. Daviscourt's timely report could only infer from visual observations: that asbestos containment barriers had been hung, and were then torn down, the night before Club Valencia sent in a new company to re-test its building for asbestos and found dramatically elevated asbestos results on which the bulk of its claim depends.

Mr. Daviscourt did exactly what Rule 26(e) contemplates: he reviewed the new deposition testimony and prepared a supplemental report updating the bases for his opinions. IUIC disclosed

2

that report on April 2, 2026—and under the Court's subsequently entered trial-setting order, Rule 26(a)(3) pretrial disclosures are not due until April 2, 2027, with trial set for April 27, 2027. (Dkt. 243) The supplement was therefore timely under Rule 26(e)(2) by an entire year. IUIC has offered to produce Mr. Daviscourt for an additional deposition; Club Valencia, which still has eleven months in which to take it before trial begins, simply refuses, and insists on motion practice instead.

The relief IUIC seeks is narrow and the law is clear at three independent levels. First, the supplemental report is timely under Rule 26(e)(2), which permits—and may require—supplementation of expert disclosures up to the time Rule 26(a)(3) pretrial disclosures are due. Second, even if leave to amend the Scheduling Order were required, the discovery of new, material information after a disclosure deadline is the Tenth Circuit's textbook example of "good cause" to amend a scheduling order under Rule 16(b)(4). Third, in any event, excluding the report would be a "drastic sanction" that none of the governing factors support, particularly where any conceivable prejudice is fully curable by a deposition IUIC has already offered.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  The underlying damages dispute and the competing asbestos testing.

This matter arises from two fires at the Club Valencia condominium complex, on November 3, 2022 (the "November 2022 Fire") and February 1, 2023 (the "February 2023 Fire"). (*See* Answer and Counterclaims, Dkt. 14, ¶¶11, 22). IUIC denied Club Valencia's claim under a Protective Safeguards Endorsement based on the absence of hard-wired smoke detectors in the

3

condominium units. (*Id.* ¶¶17, 25). In addition to direct fire damage, Club Valencia claims that asbestos fibers spread throughout the building.

Initial testing by Ethos Environmental ("Ethos") and Foothills Environmental ("Foothills") showed moderately elevated asbestos levels in isolated areas where the fires occurred. (*See* Ethos Environmental Report, Dkt. 194-2; and Foothills Report, Dkt. 194-3).

Based on the scope of asbestos contamination identified by Ethos Environmental and Foothills Environmental, the Colorado Department of Public Health and Environment ("CDPHE") ordered that Club Valencia establish a containment area in the buildings. (*See* Deposition of Jonathan Milazzo, Dkt. 194-4 at 20:20-23). Once the containment area was established, no one was authorized to enter it without permission from the Colorado Department of Public Health and Environment. (*See id.* at 84:10-15).

Club Valencia then retained William McLoughlin as its public adjuster. (*See id.* at 16:2-5). Despite the completed Ethos and Foothills testing, Mr. McLoughlin hired a new firm, Elevation Environmental ("Elevation"), to re-test the corridors and units. (*See id.* 19:8-11). Elevation's testing showed dramatically higher asbestos levels throughout the building, for example:

| Unit No. | Ethos/Foothills Result | Elevation Result |
|---|---|---|
| 274 | 22,400 s/cm2 (Foothills) | 4,290,000 s/cm2 19,800,000 s/cm2 |
| 297 | Below threshold (Foothills) | 1,1800,000 s/cm2 3,000,000 s/cm2 |
| 290 | Below threshold (Foothills) | 1,970,000 s/cm2 2,850,000 s/cm2 |
| 182 | Below threshold (Foothills) | 6,920 s/cm2 502,000 |
| 110 | None detected (Ethos) | 8,900 s/cm2 12,900 s/cm2 |

4

| 112 | None Detected (Ethos) | 26,300,000 s/cm2 1,530,000 s/cm2 |
| 116 | None Detected (Ethos) | 249,000 s/cm2 3,180,000 s/cm2 |

(*See* Dkts. 194-2, 194-3, and 194-4 at 79:24-81:23). Elevation had no explanation why its test results were so much higher, but admitted that the building itself did not have an unusually high number of asbestos-containing components. (*See* Dkt. 194-4 at 46:10-14).

On January 31, 2025, Club Valencia disclosed Brian Haden as one of its experts to testify that "holes created for utilities allowed for the travel of smoke, soot, airborne ACM [asbestos-containing material] to travel both vertically and horizontally within wall and ceiling cavities" and that the "extent of fire, smoke, soot and air-borne asbestos damage is largely due, [*sic*] most of the unit doors being forced open by the fire department, penetrations within the wall and ceiling cavities." (*See* Haden Report for the February 2023 Fire, attached as Exhibit 1, at pp. 16,19).

**B. The Scheduling Order set rebuttal expert disclosures before the close of fact discovery.**

Following several modifications, the operative pretrial schedule set the deadline for rebuttal expert disclosures at March 31, 2025 (Dkt. 165), while leaving the overall fact-discovery cut-off at May 23, 2025 (Dkt. 161). The Scheduling Order thus required the parties to disclose rebuttal expert opinions roughly eight weeks *before* fact discovery closed. By design, then, the Scheduling Order contemplated that fact witnesses could be deposed after expert reports were served, and that those depositions might bear on the experts' disclosed opinions—precisely the situation presented here.

5

**C. As required by the Scheduling Order, Mr. Daviscourt's original rebuttal expert report was timely disclosed two months before fact discovery closed.**

IUIC retained Mr. Daviscourt as a testifying expert to rebut Club Valencia's asbestos-contamination opinions. In February 2025, Mr. Daviscourt and his team at QUEST Environmental ("QUEST") performed site inspections and asbestos surface sampling in Club Valencia's building. On March 31, 2025, IUIC timely served Mr. Daviscourt's original rebuttal report, a copy of which is attached as Exhibit 2 ("Daviscourt Report").

In his original expert report, Mr. Daviscourt observed that, as of February 2025, "there does not appear to have been containment enacted for the second fire event," and that, "[b]ased on the change in condition in several units, the presence of temporary ducting typically associated with spill response/abatement activities, etc., these quadrants [of the building] appear to have been accessed and disturbed after the fires." (Ex. 2, Daviscourt Report, at 2-3) The report further noted that "[w]hy the containment, if one did in fact exist, was removed is not known," and that "[a]ny, and all, actions in the structure after the fires occurred have the potential to have influenced the conditions and contamination dynamics within the structure, especially mechanical agitation, materials removal, [and] attempted cleanup activities." (*Id.* at 3) Citing Colorado Regulation 8, Part B, the report explained that spill response "must be completed and cleared by a certified AMS prior to release for abatement or re-occupancy," and that "[t]his set sequence cannot be deviated from." (*Id.*)

The report concluded, in part, that the observed conditions—including a lack of debris, an absence of flooring in stairways and common hallways that had been present in 2022, the removal of significant drywall and popcorn texture, and temporary negative-pressure ducting—"suggests

6

that partial response to the spill may have taken place," that it was "doubtful (based on the evidence available)" that those removal actions complied with Colorado Regulation 8, Part B, and that such activities "may have contributed to asbestos contamination in the structure." (*Id.* at 18).

### D. The May 22, 2025 deposition of Club Valencia maintenance manager Zach Scott confirmed Mr. Daviscourt's visual and inferential conclusions that containment barriers were removed.

On May 22, 2025—one day before the close of fact discovery—Club Valencia resident and former facilities manager Zach Scott testified at deposition about the very facts and unknowns Mr. Daviscourt's report had identified. Mr. Scott testified that asbestos containment barriers did exist, and that they were removed by Club Valencia board member Alan Kyte and its public adjuster, Mr. McLoughlin, the night before Club Valencia's retained expert tested for asbestos inside the building:

> **Q.** So to break that down, at one point, the containment area for Fire 2, you said it was free of asbestos?
>
> **A.** A vast majority of the Fire 2 section, that -- that whole quarter of the building that was closed, when our test results came back, it had showed that the -- the asbestos spill itself was well contained within that whole Fire 2 section to just a small part of it. And at one point, the barriers that I had hung were removed. And then the next thing I knew was that whole area was a spill.
>
> **Q.** Were those barriers removed before your departure from working with Club Valencia in November 2023?
>
> **A.** They were.
>
> **Q.** Did you ever receive a justification of why that occurred?
>
> **A.** Bill McLoughlin tore those down in there with Allen Kyte one night directly before he had his testers come in to test that part of the building.
>
> **Q.** And how did you confirm that Bill McLoughlin and Allen Kyte had performed this action?
>
> **A.** Allen told me they did. I wound up having to go in there the following day after Bill's testers weren't in there and I saw that they weren't there anymore . . . . And Allen had told me that he and Bill were in there before that and they removed them, or that Bill

had removed them. He had claimed that they weren't going to do anything anyway, but the test results proved otherwise.

(*See* Deposition of Zach Scott, Dkt. 194-10, at 141:13-142:18)

**E. Mr. Daviscourt reviewed the deposition transcript while summary judgment was pending, and his supplemental report was timely disclosed shortly after summary judgment was denied.**

Cross-motions for summary judgment were filed in June 2025, and the Court entered its order on those motions on March 10, 2026. (Dkt. 230) While those case-dispositive motions were pending, Mr. Daviscourt reviewed Mr. Scott's deposition transcript and exhibits and prepared a supplemental report dated March 11, 2026, attached hereto as Exhibit 3. ("Daviscourt Supplemental Report"). In it, Mr. Daviscourt explained that "Mr. Scott's deposition clarifies certain important occurrences that transpired on site in relation to the first and second fire events," such that "some of the previously unknown (to QUEST) or possible[] contributing/causal elements referenced in the initial release of this report are now clarified in a manner that necessitated an amendment to this report" including that "the actions of Alan Kyte and Bill McLoughlin in allegedly removing Zach's engineering controls/barriers" were actions without "reasonable explanation or legitimate purpose, that , more likely than not, distributed asbestos fibers throughout the two quadrants prior to Elevation's sampling." (Ex. 3, Daviscourt Supplemental Report, at 4-5, 8).

IUIC disclosed the supplemental report to Club Valencia on April 2, 2026.[1] (*See* 4/2/26 Email from Chris Snow, attached as Exhibit 4). Approximately five hours later, Club Valencia

---

[1]On March 12, 2026, IUIC's counsel received the supplemental report from Allison Owens, one of Mr. Daviscourt's colleagues at QUEST, together with a note that "Nick is no longer with QUEST due to relocating with his family out of the country," and that QUEST did "not have his contact information." Counsel for IUIC worked to re-establish contact with Mr. Daviscourt to confirm that he would continue to serve as IUIC's testifying expert. On April 2, 2026, before that

filed a motion requesting a pretrial conference and a trial date. (*See* Dkt. 231; 4/2/26 ECF Notice

re: Dkt. 231, attached hereto as Exhibit 5). On April 16, 2026, Club Valencia objected to what it

called the "untimely and prejudicial disclosure of new expert opinions." (*See* 4/16/26 Email from

Tom Wager, previously attached hereto in Exhibit 4). On April 23, 2026, Magistrate Judge

Neureiter set a Final Pretrial Conference for May 12, 2026. (Dkt. 237). At that conference, Club

Valencia maintained its objection, and the Court directed IUIC to file a formal motion to amend

the Scheduling Order by May 29, 2026. (Dkt. 241). Also on May 12, 2026, Judge Brimmer entered

an Order Setting Case for Trial, which set trial for April 27, 2027, the Trial Preparation Conference

for April 9, 2027, and the parties' witness and exhibit lists—i.e., the Rule 26(a)(3) disclosures—

for April 2, 2027. (Dkt. 243).

## III.    ARGUMENT

### A.  The supplemental report was timely disclosed under Rule 26(e)(2), an entire year before Rule 26(a)(3) disclosures are due.

Under Federal Rule of Civil Procedure 26(e), "supplemental disclosures" for retained

experts "are permitted, and indeed may be required." *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1332

(10th Cir. 2004) (citing Fed. R. Civ. P. 26(e)). A party "is under a continuing duty to supplement

the expert report if there are additions or changes to what has been previously disclosed." *Jacobsen*

---

contact was re-established, IUIC disclosed the underlying supplemental report to Club Valencia, with a note explaining the circumstances and that an updated, formal Rule 26(a)(2) supplemental disclosure would follow upon confirmation. (*See* Ex. 4) Counsel for IUIC re-established contact with Mr. Daviscourt on May 7, 2026, and served a formal supplemental Rule 26 disclosure on Club Valencia that same day, along with a copy of the supplemental report previously shared on April 2, 2026. (*See* May 7, 2026 Email and attachments to Stuart Anderson, attached hereto as Exhibit 6).

*v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002) (citing Fed. R. Civ. P. 26(a)(2)(C), 26(e)(1)). The continuing duty to supplement "extends both to information included in the report and to information given during the expert's deposition," and "[a]ny additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2); *see also Miller*, 356 F.3d at 1332 (supplemental expert disclosures "are to be disclosed by the time pretrial disclosures are due under Rule 26(a)(3)").

The deadline to file Rule 26(a)(3) pretrial disclosures also fixes the outer deadline to make supplemental expert disclosures.[2] Here, that deadline is April 2, 2027. (*See* Dkt. 243) (requiring witness and exhibit lists to be filed 7 days before the Trial Preparation Conference). When IUIC disclosed Mr. Daviscourt's supplemental report on April 2, 2026 (*see* Ex. 4), this case had no trial date and no Rule 26(a)(3) deadline at all; the Scheduling Order then in effect set neither a deadline for Rule 26(a)(3) disclosures, nor a separate deadline for supplementing retained-expert reports after the close of fact discovery. (*See* Scheduling Order, Dkt. 28; and most recent amendments thereto for expert disclosures at Dkts. 161, 165, and 168). The supplemental report was therefore disclosed a full year before the governing deadline. By any measure, it was timely.

That conclusion also follows directly from the structure of the Scheduling Order. Because rebuttal expert disclosures were due before the close of fact discovery, that sequence necessarily contemplated that later-taken fact depositions could reveal new evidence that prompts (or requires)

---

[2]In general, under Rule 26(a)(3)(A), each party must file certain information about the non-impeachment evidence it may present at trial, including the names and contact information for the witnesses it expects to present and those it may call if the need arises, the witnesses the party expects to present by deposition, and a list of exhibits. Under subsection (B), unless the court orders otherwise, those disclosures must be filed at least 30 days before trial, and they trigger deadlines for certain objections. See Fed. R. Civ. P. 26(a)(3)(A)–(B).

supplemental expert disclosure. That is exactly what happened: fact discovery continued after Mr. Daviscourt's report, and it produced new evidence—Mr. Scott's testimony—with a direct bearing on his already-disclosed opinions. In the absence of any deadline to supplement expert reports in the Scheduling Order, Rule 26(e)(2) sets the deadline to make such supplemental disclosure the same date that Rule 26(a)(3) pretrial disclosures are due. Thus, to the extent supplementation was *required* under Rule 26(e) based on Mr. Scott's deposition that occurred one day before the close of fact discovery,[3] the disclosure of Mr. Daviscourt's supplemental report was also timely under Rule 26(e). *See, e.g.*, *Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC*, 730 F.3d 67, 75-76 (1st Cir. 2013) (corrected expert disclosures were "timely and contemplated by Rule 26(e)(2)" when they were disclosed before Rule 26(a)(3) pretrial disclosures were due).

Accordingly, the Court should confirm that Mr. Daviscourt's supplemental report was timely disclosed under Rule 26(e) and amend the Scheduling Order to set a reasonable deadline for Club Valencia to re-depose Mr. Daviscourt regarding the supplemental report. There is no possible prejudice to Club Valencia as the trial is still eleven months away.

**B. Good cause exists under Rule 16(b)(4) to amend the Scheduling Order because Mr. Daviscourt learned new information through ongoing discovery after his original rebuttal report was disclosed.**

If the Court concludes that supplementation was neither required nor independently timely under Rule 26(e)(2), and that IUIC must show "good cause" to modify the Scheduling Order under

---

[3]IUIC does not concede that any or all of the changes in the supplemental report requires supplementation under Rule 26(e). If supplementation is not required under Rule 26(e), then Club Valencia's objection to the disclosure as untimely is moot. The point here being simply that if supplementation is required under Rule 26(e), then it was timely made under Rule 26(e)(2) because it occurred an entire year before Rule 26(a)(3) disclosures must be filed.

11

Rule 16(b)(4), that standard is readily met. Rule 16(b)(4) permits modification of a scheduling order "only for good cause and with the judge's consent," and the Tenth Circuit has held that the good-cause requirement "may be satisfied, for example, if a [party] learns new information through discovery." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). The inquiry focuses on the diligence of the party seeking the modification. *Id.* at 1241.

This is the paradigm case that exemplifies when good cause exists. IUIC timely served Mr. Daviscourt's report on the March 31, 2025, deadline. The deposition that supplied new evidence did not occur until May 22, 2025, and IUIC could not have anticipated or addressed Mr. Scott's testimony in a report it was required to serve nearly two months earlier. The case then sat in a summary-judgment posture, with no trial date and no Rule 26(a)(3) deadline, from June 2025 until the Court's March 10, 2026 order. IUIC obtained Mr. Daviscourt's supplemental report the day after that order and disclosed it promptly. IUIC could not have been expected to anticipate that subsequent  deposition testimony would reveal new facts that require amendment to the original report. *See 103 Investors I, L.P. v. Square D Co.*, 372 F.3d 1213, 1217 (10th Cir. 2004) (A party "could not have been expected to file a rebuttal expert report prior to the report it sought to rebut.")

Nor does the existence of the Scheduling Order change this. The Tenth Circuit has long recognized that, "while the pretrial order defines a lawsuit's boundaries in the trial court and on appeal, total inflexibility is undesirable." *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997) (quotation omitted). Indeed, in *103 Investors*, the court held it was an abuse of discretion for a district court to refuse to consider a late rebuttal report on the ground that doing so would modify the pretrial order. 372 F.3d at 1217. Because IUIC acted diligently and disclosed the

12

supplement long before any pretrial deadline and upon learning new information, good cause exists to amend the Scheduling Order.

### C. Excluding the supplemental report would be a drastic penalty that the governing factors do not support.

Club Valencia may argue that Rule 26(a)(2)(D) requires expert disclosures "at the times and in the sequence that the court orders," such that no change to Mr. Daviscourt's original report is permissible after the original disclosure deadline absent amendment of the Scheduling Order. But Rule 26(a)(2)(E) expressly provides that "parties must supplement" their expert disclosures "when required under Rule 26(e)," which is exactly what happened here. In any event, the exclusion of evidence for a Rule 26 violation is "a drastic sanction." *Summers*, 132 F.3d at 604.

A district court may permit new evidence where the violation was substantially justified or harmless, and "need not make explicit findings concerning the existence of a substantial justification or the harmlessness" in its order. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999); *see also Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 728 (7th Cir. 1999). A district court's decision is reviewed for abuse of discretion, and four factors are considered: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Jacobsen*, 287 F.3d at 953. Each factor favors allowing Mr. Daviscourt's supplemental opinions.

First, there is no surprise or prejudice. The supplemental report does not introduce a new theory. As noted above, it incorporates deposition testimony from Club Valencia's own former facilities manager that confirms the very conditions Mr. Daviscourt's original (and timely) report

had already described. Club Valencia cannot be surprised by testimony its own witness gave that corroborates and confirms Mr. Daviscourt's previously-disclosed opinions.

Second, there is no prejudice. IUIC disclosed the report right after the summary judgment order and has offered to make Mr. Daviscourt available for an additional deposition limited to the supplemental report, and Club Valencia has eleven months before trial in which to take it. Mr. Daviscourt was disclosed as a rebuttal expert to Club Valencia's own experts, so a further deposition of Mr. Daviscourt—not the reopening of broader discovery—is the most that needs to happen to cure any prejudice.

Third, there will be no disruption to trial. Trial is set for April 27, 2027—eleven months out—and Rule 26(a)(3) disclosures are not due until April 2, 2027. A deposition taken within that window cannot disrupt the trial setting. *See, e.g.*, *Summers*, 132 F.3d at 605 (request for new scheduling order filed eighty days before trial would not have disrupted trial).

Fourth, there is no bad faith or willfulness. IUIC served the supplemental report on time and promptly once the deposition testimony existed and the case returned to a trial track, and immediately offered Club Valencia a deposition to address any concern. On these facts—where a textbook example of good cause exists to allow supplemental expert disclosure—exclusion is not warranted and would arguably be an abuse of discretion.

## IV.    CONCLUSION

For the foregoing reasons, IUIC respectfully requests that the Court enter an Order: (1) confirming that Mr. Daviscourt's supplemental report was timely disclosed to Club Valencia under Fed.R.Civ.P. 26(e); (2) to the extent the Court determines that any amendment to the Scheduling Order (Dkt. 28) is necessary, amending the Scheduling Order to permit the disclosure of Mr.

Daviscourt's supplemental report; and (3) amending the Scheduling Order to set a reasonable deadline by which Club Valencia may re-depose Mr. Daviscourt regarding the supplemental report, should it elect to do so. IUIC further requests such other, further, or different relief as the Court deems just and proper.

Dated: May 29, 2026                              Respectfully submitted,

                                                 */s:/ Christopher M. Snow*

                                                 Matthew S. Ponzi, Esq.
                                                 Christopher M. Snow, Esq.
                                                 Foran Glennon Palandech Ponzi & Rudloff PC
                                                 222 North LaSalle Street, Suite 1400
                                                 Chicago, Illinois 60601
                                                 (312) 863-5000
                                                 e-mail:  mponzi@fgppr.com
                                                 e-mail:  csnow@fgppr.com
                                                 *Attorneys for Plaintiff/Counter-Defendant, Illinois*
                                                 *Union Insurance Company*

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record to their CM/ECF-registered email addresses:

M. Stuart Anderson
Thomas H. Wagner
ANDERSON LAW GROUP
Stuart@anderson-lg.com
Tom@anderson-lg.com

*Attorneys for Defendant, Counter Defendant,*
*Third-Party Plaintiff, Club Valencia*
*Condominium Owners Association, Inc.*

*/s:/  Christopher M. Snow*
Christopher M. Snow