**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO**

Civil Action No.: 1:23-cv-1054-PAB-NRN

ILLINOIS UNION INSURANCE COMPANY,

      Plaintiff,

v.

CLUB VALENCIA CONDOMINIUM
OWNERS ASSOCIATION, INC.

      Defendant, Counterclaimant,
      Third-Party Plaintiff.

v.

CHERRY CREEK INSURANCE AGENCY,
INC. D/B/A CCIG, AND CRC INSURANCE
SERVICES, LLC, LCM PROPERTY
MANAGEMENT, INC.

      Third-Party Defendants

---

## RESPONSE IN OPPOSITION TO MOTION TO AMEND SCHEDULING ORDER

---

Defendant/Counterclaimant Club Valencia Condominium Owners Association, Inc.

("Club Valencia COA"), through counsel, submits the following brief in opposition to the

Motion to Amend Scheduling Order (Doc. 244) (the "Motion to Amend") filed by

Plaintiff/Counterclaim Defendant Illinois Union Insurance Company ("IUIC"):

### INTRODUCTION

More than one year after discovery closed, nine months after the dispositive motion

deadline, and seven months after the Court denied a similar motion to amend, IUIC again

1

moves to amend the scheduling order. This time, IUIC moves to allow the introduction of new opinions contained in "supplemental" report by IUIC's expert, Nick Daviscourt (the "Untimely Daviscourt Report"). The new Motion to Amend should, once again, be denied because it is untimely and unfairly prejudicial to Club Valencia COA.

IUIC's new Motion to Amend is simply an attempt to circumvent the Court's prior order denying IUIC's Motion for Leave to File First Amended Complaint for Declaratory Judgment (Docs. 221 & 222) (the "Motion for Leave"). That previous Motion for Leave requested leave to amend the scheduling order based on the exact same allegations that underlie the new Motion to Amend, *i.e.*, false allegations about asbestos containment barriers. In denying the Motion for Leave, the Court correctly held that those allegations were or should have been known by IUIC long before the relevant deadlines. The Court previously concluded that 1) IUIC failed to act diligently in discovering the allegations that IUIC now claims form the basis for the Untimely Daviscourt Report and 2) that Club Valencia COA would be prejudiced by inserting new theories that IUIC seeks to insert once again by way of the Untimely Daviscourt Report. The Court should confirm its prior analysis and reject IUIC's Motion to Amend. Indeed, if IUIC's Motion for Leave was untimely in June of 2025, the Motion to Amend, filed nearly one year later, is most certainly overdue.

IUIC did not disclose the Untimely Daviscourt Report until nearly one year after it should have been disclosed under the scheduling order. More importantly, IUIC knew or should have known of the allegations that it asserts form the basis for the Untimely Report by no later than May 2025, but IUIC did not disclose the Untimely Report until April 2,

2026, nearly eleven months later. The Untimely Daviscourt Report cannot, therefore, be considered a proper supplement under Fed. R. Civ. P. 26(e). IUIC showed zero diligence in discovering the relevant factual allegations, and in preparing the Untimely Daviscourt Report. Thus, IUIC cannot meet its burden to show good cause to amend the scheduling order. IUIC has once again failed to carry its burden, so the Motion to Amend should be denied.

## FACTUAL BACKGROUND

This case arises from an insurance coverage dispute. Two fires caused millions of dollars of damage to the Club Valencia Condominium Complex on November 3, 2022, and February 1, 2023. The fires left many residents homeless, and Club Valencia COA promptly filed claims for insurance benefits with its insurer, IUIC.

IUIC denied Club Valencia COA's insurance claims for both fires. IUIC principally asserted that Club Valencia COA did not comply with a Protective Safeguard Endorsement in the insurance policy concerning smoke detectors. After denying coverage for the second fire, IUIC filed this lawsuit on April 26, 2023, seeking a declaration that it had no duty to insure Club Valencia COA for the damage caused by the fires. (Doc. 1.)

Club Valencia COA filed counterclaims against IUIC and third-party claims. After the close of discovery, Club Valencia COA and IUIC filed motions for summary judgment on May 28, 2025 and July 1, 2025, respectively. (Docs. 188 & 198.) In a consolidated order issued March 10, 2026, Judge Brimmer held that the Protective Safeguard Endorsement did not block insurance coverage here. (Doc. 230.) Thus, the disputed

3

issues between Club Valencia COA and IUIC were narrowed considerably by the Court's ruling, but the question of whether IUIC acted in bad faith and the calculation of Club Valencia COA's damages, including damages caused by asbestos contamination, remain for trial. A jury trial is set for early 2027.

**PROCEDURAL HISTORY**

I.      **The Deadline for Expert Disclosures Passed More than One Year Before Disclosure of the Untimely Daviscourt Report**

A large portion of Club Valencia COA's damages arise from the need to remediate asbestos contamination caused by the fires and fire suppression activities. Shortly after the November 3, 2022 fire, Club Valencia COA retained Ethos Environmental LLC ("Ethos") to conduct an asbestos inspection. Mr. Daviscourt, Ethos's founder and owner, signed a report dated November 14, 2022, identifying asbestos contamination in numerous units and common areas at Club Valencia. (Doc. 194-2.) Club Valenica COA retained Foothills Environmental, Inc. ("Foothills") to perform asbestos testing after the second fire. Foothills conducted site visits and then issued a report dated May 22, 2023. (Doc. 194-3.) Foothills also found asbestos contamination on multiple floors of the complex. Notably, the Colorado Department of Public Health and Environment classified the asbestos contamination as a "major spill," requiring considerable remediation.

IUIC and Club Valencia COA retained litigation experts to opine on the scope of asbestos contamination and the cost of remediation. Club Valencia COA timely disclosed the initial reports of its asbestos contamination expert, Jonathon Milazzo and damages expert, Brian Haden, on January 31, 2025, on the deadline for expert disclosures under

4

the scheduling order. (*See* **Ex. A**, Expert Disclosures; **Ex. B**, Milazzo Major Spill Contamination Report; **Ex. C**, Haden Report Fire 1; **Ex. D**, Haden Report Fire 2.)

Mr. Milazzo conducted site inspections and took samples at Club Valencia. He concludes that more than 160 units were uninhabitable due to asbestos contamination. He also opined that the nature of asbestos contamination would require removal of walls and ceilings to properly remediate. (*See* **Ex. B**, Milazzo Report, p.4.)

Mr. Haden concludes that the total replacement cost value for damages caused by the November 3, 2022 fire was $15,633,066.19, and the total replacement cost value for damages caused by the February 1, 2023 fire was $15,154,746.45. (**Ex. C**, Haden Report Fire 1, p.19; **Ex. D**, Haden Report Fire 2, p.17.) Mr. Haden calculates the actual cash values to be slightly less, at $14,592,021.10 for the first fire and $14,141,439.91 for the second fire. (**Ex. C**, Haden Report Fire 1, p.19; **Ex. D**, Haden Report Fire 2, p.17.)

IUIC retained Mr. Daviscourt in this litigation to opine on asbestos contamination. IUIC's decision to hire Mr. Daviscourt is disturbing, since Mr. Daviscourt had been retained by Club Valencia COA to analyze the same issues IUIC asked him to analyze. Notably, Mr. Daviscourt was no longer working for Ethos when he was hired by IUIC. Instead, he had sold that company and was employed by Quest Environmental ("Quest"). Quest paid Mr. Daviscourt $155,000 to purchase Ethos. (**Ex. E**, Daviscourt Deposition, 18:23-24:23.)

IUIC disclosed a rebuttal report from Mr. Daviscourt on March 31, 2025. Mr. Daviscourt states in his report that "there does not appear to have been containment enacted for the second fire event," and "[b]ased on the change in condition in several

5

units, the presence of temporary ducting typically associated with spill response/abatement activities, etc., these quadrants appear to have been accessed and disturbed after the fires." (Doc. 244-2, pp.2-3.) Mr. Daviscourt also questions if containment barriers had been removed and, critically, he opines that actions such as removal of containment barriers after the fires might alter the scope of contamination. (Doc. 244-2, p.3.) Despite speculating on the possibility that removal of barriers might contribute to a broader scope of contamination, neither IUIC nor Mr. Daviscourt sought any additional discovery to sus out Mr. Daviscourt's speculation. Instead, IUIC knowingly let the discovery deadline expire without inquiring further on the matter.

Club Valencia COA also learned during Mr. Daviscourt's April 24, 2025 deposition that his rebuttal report was conspicuous for what it did not disclose.

- Mr. Daviscourt tried to alter asbestos lab reports: When asked about a note in lab reports stating that Mr. Daviscourt relied on the wrong collection media (his colleague had collected samples using alcohol swabs instead of "clean room wipes," which were specified by ASTM 6480), Mr. Daviscourt acknowledged that he called the lab in question, EMSL, and attempted to get EMSL to remove its non-compliance note from the lab reports. Lab personnel refused to alter their conclusion, which was that Mr. Daviscourt's colleague had used non-compliant swab media. (**Ex. E**, Daviscourt Deposition, 143:20-144:21; 150:19-151:10 (acknowledging that he contacted EMSL, asked about inclusion of the note, and that the lab had refused to change its report).)

- The Daviscourt Buyout: In another omission from his report, Mr. Daviscourt failed to disclose that he was personally paid $155,000 in connection with the sale of Ethos, which happened at the time that he switched from working with Club Valencia COA to working for IUIC. (**Ex. E**, Daviscourt Deposition, 18:23-24:23.)

## II.   IUIC Discloses the Untimely Daviscourt Report Under Unusual Circumstances

More than one year after he issued his rebuttal report, IUIC provided Club Valencia COA with a copy of the Untimely Daviscourt Report. The crux of the Untimely Daviscourt

Report is Mr. Daviscourt's opinion that a deposition of a former Club Valencia COA maintenance worker, Zach Scott, which occurred May 22, 2025, "clarifies certain important occurrences" after the fires, and that alleged removal of containment barriers at the condo complex "more likely than not, distributed asbestos fibers throughout the two quadrants [of the building] prior to" sampling by Club Valencia COA's asbestos expert, Mr. Milazzo. (Doc. 244-3, Untimely Daviscourt Report, p.4-5 & 8.)

More particularly, Mr. Daviscourt asserts that he learned from Mr. Scott's deposition that William McLoughin, Club Valencia COA's public adjuster, and/or Alan Kyte, Club Valencia COA's former board president, removed asbestos containment barriers after the fires occurred. It must be noted that Mr. Scott **never** stated in his deposition that he actually observed Messrs. McLoughlin or Kyte remove containment barriers. But setting aside the veracity of Mr. Scott's assertions, the more important aspect of Mr. Scott's deposition is the fact that counsel for IUIC attended Mr. Scott's deposition and that it occurred on May 22, 2025, nearly one year before disclosure of the Untimely Daviscourt Report.

The context in which IUIC disclosed the Untimely Daviscourt Report also requires explanation. While that report is dated March 11, 2026, IUIC only provided Club Valencia COA counsel with a copy on April 2, 2026, nearly a month after the report was supposedly signed. (**Ex. F**, April 2, 2026 Email from C. Snow.) IUIC has never explained why it waited almost a month after the date of the report to provide it to Club Valencia COA.

Club Valencia COA's counsel objected to the late report, but instead of promptly filing a motion to amend, IUIC waited another month before issuing a Fed. R. Civ. P.

26(a)(2) disclosure on May 5, 2026. (*See* **Ex. G**, May 5, 2026 Email from C. Snow.) IUIC's May 5, 2026 disclosure endorsed Mr. Daviscourt's colleague, Allison Manzanares. (*See* **Ex. G**, May 5, 2026 Email from C. Snow.) Two days later, on May 7, 2026, IUIC issued another Fed. R. Civ. P. 26(a)(2) disclosure. But this time, IUIC re-endorsed Mr. Daviscourt. (*See* Doc. 244-6, May 7, 2026 Email from C. Snow.) In other words, IUIC did not formally endorse the Untimely Daviscourt Report until May 7, 2026, almost one year after the Scott deposition and discovery cut-off, and IUIC did not file the Motion to Amend until May 29, 2026, *more* than a year after the discovery cut-off.

IUIC's explanation for the delay in the disclosure of the Untimely Daviscourt Report also requires examination. IUIC's Motion to Amend states that Allison Owens (fka Manzanares), provided IUIC's counsel with a copy of the Untimely Daviscourt Report on March 12, 2026, along with a note stating that Mr. Daviscourt had left Quest and was relocating out of the country. (Doc. 244, p.8 n.1.) IUIC's counsel informed Club Valencia COA's counsel about Mr. Daviscourt's supposed relocation in the April 2, 2026 email conveying a copy of the Untimely Daviscourt Report. (Doc. 244-4, C. Snow email.)

Due to Mr. Daviscourt's supposed move out of the country, Club Valencia COA's counsel expressed concern about the parties' ability to secure Mr. Daviscourt's attendance at trial. But shortly after a telephone conversation between counsel in which counsel for Club Valencia COA stated that it would object to the endorsement of a new testifying expert, IUIC apparently found Mr. Daviscourt, and withdrew its endorsement of Ms. Owens (Manzanares). IUIC then endorsed Mr. Daviscourt again. (Doc. 244-6.)

## ARGUMENT

### I.     Rule 26(e) Does Not Excuse IUIC's Untimely Disclosure

### A.     Rule 26(e) Only Applies When New Information Becomes Available

IUIC asserts that it has a duty to supplement expert reports under Fed. R. Civ. P. 26(e), so the Untimely Daviscourt Report should be considered timely. IUIC is incorrect.

Under Fed. R. Civ. P. 26(e), parties must supplement "information included in [an expert's] report and . . . information given during the expert's deposition . . . ***if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing***." Fed. R. Civ. P. 26(e)(1)(A) and (e)(2) (emphasis added); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002) ("A party is under a continuing duty to supplement the expert report if there are additions or changes to what has been previously disclosed.").

Rule 26(e) is not, however, "intended to provide an extension of the expert designation and report production deadlines." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (citing *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir.1998)). "Rule 26(e) does not permit parties to file supplemental reports whenever they believe such reports would be 'desirable' or 'necessary' to their case." *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify

opinions previously given." *Beller v. United States,* 221 F.R.D. 689, 95 (D.N.M. 2003) (brackets in original).

Supplementation under Fed. R. Civ. P. 26(e) refers only to "correcting inaccuracies, or filling the interstices of an incomplete report ***based on information that was not available at the time of the initial disclosure.***" *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998) (quoted in *Cook*) (emphasis added). "A supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)." *Cook*, 580 F. Supp. 2d at 1169. IUIC's alleged supplement does not comply with these principles.

## B. The Untimely Daviscourt Report is Not Based on New Information

In this case, IUIC seeks what Fed. R. Civ. P. 26(e) does not permit, *i.e.*, to bolster Mr. Daviscourt's opinions with information that was already available. The Untimely Daviscourt Report does not correct inaccuracies in Mr. Daviscourt's earlier opinions. And Mr. Daviscourt does not fill in gaps with information that was not available when he issued his March 31, 2025 report. Rather, IUIC attempts to use the Untimely Daviscourt Report to circumvent the Court's denial of IUIC's previous Motion for Leave, which sought to add claims based on Mr. Scott's allegations against Messrs. McLoughlin and Kyte.

Indeed, as was the case with IUIC's previous Motion for Leave, IUIC attempts to excuse its belated expert disclosure by asserting that Mr. Daviscourt could not have issued his Untimely Report until the deposition of Mr. Scott. IUIC is simply incorrect. As the Court stated in the Recommendation to deny IUIC's Motion for Leave, "IUIC was well

aware of the significant discrepancy between the asbestos reports prepared by Ethos and Foothills, on one hand, and Elevation" prior to the deadline for Mr. Daviscourt to issue his original rebuttal report. (Doc. 221, p.9.)

Club Valencia COA listed Mr. Scott in Club Valencia COA's Initial Disclosures in September 2023. And despite having known in September 2023 that Mr. Scott may possess discoverable information, IUIC never requested to take his deposition.[1] Mr. Daviscourt also knew about Mr. Scott's role in the asbestos containment because of their previous interactions when Mr. Daviscourt was working on behalf of Club Valencia COA. In fact, it was Mr. Scott, the maintenance contractor for Club Valencia COA, who had retained Mr. Daviscourt to assess asbestos contamination after the first fire. (Doc. 194-2, Ethos Report, pp.1-2). In Mr. Daviscourt's deposition, he also acknowledged that he spoke with Mr. Scott about the second fire and that he "took Zach out for pizza on occasion . . . ." (**Ex. E,** Daviscourt Deposition, p.85:18-86:17.) IUIC does not explain why it did not depose Mr. Scott in this action, even though IUIC and Mr. Daviscourt knew about Mr. Scott's role in responding to the fires long before May 2025.

IUIC deposed Messrs. McLoughlin and Kyte, who were designated by Club Valencia COA in response to IUIC's Fed. R. Civ. P. 30(b)(6) notice. IUIC could have deposed them again individually to cover topics outside of the Fed. R. Civ. P. 30(b)(6) depositions, including work or activities in the containment zones. IUIC does not say why it failed to depose Messrs. McLoughlin and Kyte about the allegations that Mr. Scott made

---

[1] The deposition of Mr. Scott occurred in a related state-court lawsuit.

in his deposition. IUIC also could have asked Mr. Milazzo about containment barriers in his deposition, which was held in May 2025, but IUIC neglected to do so.

As the Court held when it denied the Motion for Leave, IUIC could easily have learned of an alleged increase in the scope of asbestos contamination prior to Mr. Scott's deposition because IUIC actually asked Mr. McLoughlin about the topic in Mr. McLoughlin's deposition on April 21, 2025. IUIC's counsel asked Mr. McLoughlin about asbestos contamination spread due to building conditions, containment barriers, CDPHE requirements, and interior barriers such as doors in the hallways being left open (*See* Doc. 208-3, 30(b)(6) deposition of McLoughlin, pp. 33:20-40:22, pp. 44:16-49:16, pp. 54:15-57:1). These topics are similar to the "new" information in Mr. Scott's deposition that IUIC asserts excuses its untimely expert disclosure, but IUIC failed to inquire further in Mr. McLoughlin's deposition and Mr. McLoughlin has since passed away, making a new deposition of him impossible.

Put simply, information about the alleged removal of containment barriers was available to IUIC at the time that Mr. Daviscourt issued his March 31, 2025 report, or shortly thereafter, and long before April 2, 2026. Thus, Mr. Scott's deposition cannot form the basis for IUIC's belated disclosure of the Untimely Daviscourt Report.

Moreover, even if IUIC was correct that Mr. Scott's deposition was necessary, IUIC does not say why it waited almost one year *after* Mr. Scott's deposition to issue the Untimely Daviscourt Report. IUIC contends that it could wait until the deadline for Fed. R. Civ. P. 26(a)(3) disclosures to issue a supplement, but IUIC's interpretation of the Fed. R. Civ. P. 26(e) "would be the antithesis of the full expert disclosure requirements stated

12

in Rule 26(a)." *See Cook*, 580 F. Supp. 2d at 1169. IUIC's interpretation of Fed. R. Civ. P. 26(e) negates the entire purpose of having expert disclosure deadlines. IUIC cannot be allowed to sit idly by for a year after it supposedly discovers "new" information.

Accordingly, the Untimely Daviscourt Report is not a proper supplementation under Fed. R. Civ. P. 26(e).

## II.    IUIC Has Not Shown Good Cause

Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). One basis for modification of the schedule is the discovery of new information. *See Gorsuch, Ltd., B.C. v. Wells Fargo Bank, N.A.*, 771 F.3d 1230, 1240 (10th Cir. 2014). If, however, a party knows of information and simply fails to raise an issue, or if the party seeking to modify the schedule fails to act with diligence, a motion to amend should be denied. *Id.*

Here, for the reasons noted above, IUIC knew or should have known about the alleged issues with the containment barriers well before April 2026. Indeed, the Court already explained that IUIC lacked diligence in filing the Motion for Leave and the analysis of IUIC's untimely expert disclosures is no different.[2] To paraphrase what the Court previously stated: "Nothing prevented IUIC from discovering the facts upon which the proposed [expert disclosure] are based within the timeframe set by the scheduling order, or some reasonable time thereafter." (Doc. 221, p. 10.) Thus, IUIC has again failed to demonstrate good cause modify the scheduling order.

---

[2] Pursuant to Fed. R Civ. P. 10, Club Valencia COA adopts by reference the arguments made in its opposition to the Motion for Leave as if set forth herein. (Doc. 208.)

**III.     IUIC's Untimely Disclosure Would Unfairly Prejudice Club Valencia COA**

Finally, the Court should also consider the unfair prejudice that Club Valencia COA would suffer if IUIC is allowed to use the Untimely Daviscourt Report. If disclosure is allowed, the scope of this case will change radically. As the Court previously noted,

> The case originally was about whether Club Valencia was required to maintain hard-wired smoke alarms and whether it adequately cooperated with the investigation. IUIC's new allegations—that Club Valencia personnel actively sabotaged the fire scene to spread asbestos throughout the facility and increase the claimed damages (while bordering on the implausible)— would open multiple different evidentiary cans of worms in this lawsuit, including, among other things, the supposed intent of the individuals involved in allegedly removing the barriers and the science behind the spread of asbestos at a fire scene. (Doc. 221, pp.11-12 (footnote omitted).)

Discovery has been closed for a year, and the Court has ruled on the parties' motions for summary judgment. If IUIC is allowed to inject Mr. Daviscourt's new opinions into this case, Club Valencia COA will, among other things, be compelled to reopen discovery and conduct a new deposition of Mr. Daviscourt, and depositions of Ms. Owens and Mr. Woellner of Quest, and a deposition of Mr. Scott (who was deposed in a separate case by a different party). Those depositions will likely generate additional written discovery or depositions. And as noted above, Mr. McLoughlin has passed away, so he is unable to address the false accusations against him at another deposition or at trial.

Given the considerable expansion of the issues that the Untimely Daviscourt Report would force into this case, Club Valencia COA would also need to file an additional dispositive motion and an F.R.E. 702 motion to address the new Daviscourt opinions. Additional motions might delay the trial, which would further delay justice for the hundreds of Club Valencia residents that have already waited years to have their case heard.

14

In addition, Club Valencia COA has made litigation decisions in reliance upon the conclusion of discovery, including settlements with third-party defendants and parties in other cases. There are a number of additional claims related to post-litigation bad faith conduct and other matters that Club Valencia COA considered, but did not pursue due to the desire for finality and to ensure the earliest trial date possible.

Over 160 owners at Club Valencia have been forced out of their units for over three years because of IUIC's refusal to pay any benefits, even after the Court's summary judgment ruling removed the Protective Safeguard Endorsement from this case. Accordingly, there is no set of circumstances under which the prejudice to Club Valencia COA could be properly mitigated.

## CONCLUSION

IUIC should not be permitted to avoid the denial of its previous Motion for Leave by repackaging the same issues in the Untimely Daviscourt Report. IUIC's Motion to Amend should, therefore, be denied.

Dated: June 19, 2026.

ANDERSON LAW GROUP

*/s/Thomas H. Wagner*
M. Stuart Anderson
Thomas H. Wagner
Anderson Law Group
7385 W. Highway 50
Salida, CO  81201
Telephone: (719) 539-7003
Stuart@anderson-lg.com
Tom@anderson-lg.com
*Counsel for Defendant/Counterclaimant*

## CERTIFICATE OF SERVICE

I certify that on June 19, 2026, I filed a copy of the foregoing via CM/ECF, which will deliver electronic notice of the filing to the following:

All counsel of record.

/s/Thomas H. Wagner