## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

ILLINOIS UNION INSURANCE COMPANY, )
)
      Plaintiff, )
)  Civil Action No. 1:23-cv-1054-PAB-
v. )  NRN
)
CLUB VALENCIA CONDOMINIUM OWNERS )  Chief Judge Phillip A. Brimmer
ASSOCIATION, )
)  Magistrate Judge N. Reid Neureiter
      Defendant/Counterclaimant, )
      Third-Party Plaintiff, )
)
v. )
)
LCM PROPERTY MANAGEMENT, INC., )
CHERRY CREEK INSURANCE AGENCY, )
INC., *d/b/a* CCIG, and CRC INSURANCE )
SERVICES, LLC., )
)
      Third-Party Defendants. )

**IUIC'S REPLY TO CLUB VALENCIA'S RESPONSE IN OPPOSITION TO MOTION TO
AMEND SCHEDULING ORDER (DKT. 246)**

Club Valencia's Opposition (Dkt. 246) does not identify any supplemental-report deadline

IUIC missed. It does not dispute what Rule 26(e)(2) says: additions or changes to a retained

expert's report must be disclosed by the time Rule 26(a)(3) disclosures are due. It does not dispute

that those disclosures are due April 2, 2027. It does not dispute that IUIC disclosed Mr.

Daviscourt's Supplemental Report on April 2, 2026—a full year early. And it does not dispute that

IUIC offered the ordinary cure for any claimed prejudice: a limited deposition of Mr. Daviscourt.

Instead, Club Valencia asks the Court to punish IUIC for not deposing Mr. Scott before the

deadline to amend the pleadings—a deadline that governs pleadings, not proof. And Club Valencia

1

sets that trap with dates it controlled. It did not disclose its asbestos-scope theory until January 31, 2025. It never identified Mr. Scott in sworn discovery responses as someone who inspected, mitigated, or repaired any damage—much less installed containment barriers. The Rules require diligence, not clairvoyance. IUIC was diligent: once Club Valencia disclosed its theory, Mr. Daviscourt flagged the missing containment, which IUIC pursued with fact discovery open.

The rest of the Opposition argues against itself. Club Valencia says Mr. Scott's testimony—that he installed asbestos containment barriers that were removed before Club Valencia's asbestos testing—was so obvious from a generic 2023 disclosure identifying him as a "maintenance worker" who may know about "the claims and defenses in this action"  that IUIC should have deposed him years ago. But in the same breath, Club Valencia says Mr. Scott's testimony is so surprising and prejudicial that Club Valencia itself needs to depose Scott, its own witness and former employee, and re-examine other witnesses from its own witness list about whether Scott is telling the truth. The prejudice Club Valencia describes is a credibility dispute among its own witnesses. And although Club Valencia's requested relief is exclusion of the Supplemental Report, it never makes the required Rule 37 showing. There's no missed rule or order, no concrete prejudice, no inability to cure, no trial disruption, and no bad faith.

## I.    The Supplement Was a Year Early, Not a Year Late.

Club Valencia says Rule 26(e) cannot "provide an extension" of expert deadlines and that IUIC "sat idly by for a year." (Dkt. 246 at 9, 12-13.) But it never identifies the supplemental-report deadline IUIC missed. Rule 26(e)(2) requires additions or changes to a retained expert's report by the time Rule 26(a)(3) pretrial disclosures are due. Here, that deadline is April 2, 2027, and IUIC

2

disclosed the supplement on April 2, 2026. (*See* Dkt. 244 at 8, 11.) IUIC did not extend any deadline by complying with its duty to supplement.

The March 31, 2025 date Club Valencia invokes was the rebuttal-report deadline. IUIC met that deadline too. (Dkt. 244 at 6.) Club Valencia's argument means rewriting the rebuttal deadline into an unstated cutoff for later-discovered facts. But the Scheduling Order set rebuttal reports before the close of fact discovery. (*Id.* at 5.) A rebuttal deadline that precedes the fact-discovery cutoff cannot silently bar facts discovered during the remaining fact-discovery period.

The *Cook*, *Metro Ford*, and *Minebea* cases Club Valencia cites condemn a different maneuver: fake supplements used to serve late reports and endless bolstering. This is neither. There's one supplement, to close a factual gap, based on a deposition after the original report was served. The supplement was timely under Rule 26(e)(1) too: Club Valencia had it a year before pretrial disclosures and trial, before Rule 702 motions, and with an offered deposition cure. The formal disclosure followed once IUIC confirmed Mr. Daviscourt remained available.

## II. The Supplement Doesn't Add New Opinions, It Fills a Factual Gap Daviscourt's Original Report Flagged as Unknown.

Club Valencia says the supplement improperly "bolster[s]" and "strengthen[s]" Mr. Daviscourt's opinions. (*Id.* at 10.) But the same authority Club Valencia invokes permits supplementation that "fill[s] the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (citation omitted). Mr. Daviscourt's original report already flagged the containment question at the core of his causation opinion. After his February 2025 inspection, he observed that containment documented in 2023 was "not observed to be in place in 2025"; that "[w]hy the containment … was removed is not known"; and that post-fire "activities … may have

contributed to asbestos contamination in the structure." (Dkt. 244-2 at 2-3, 18.) That theory was not invented after discovery closed. It came out of Daviscourt's inspection and comparison of earlier photographs to the property's 2025 condition. (**See Ex. 1, Daviscourt Dep. 95:3-8; 103:1-4.**) The opinion—that post-fire disturbance of containment may have affected the asbestos scope Club Valencia attributes to the fires—was disclosed on March 31, 2025. What remained unknown were certain predicate facts, including whether barriers had been removed before or after Club Valencia's testing.

Then Mr. Scott testified. He said he "hung up containment barriers … to divide the spill," that early testing showed the Fire 2 section "clear of asbestos … because of those containment barriers," and that the barriers were removed "directly before" Club Valencia's testers came in—after which "that whole area was a spill." (Dkt. 194-10 at 140:24–142:7.) That testimony did not exist when Mr. Daviscourt served his original report. Rule 26(e) permits—indeed, may require—supplementation when a party learns its disclosure was materially "incomplete." *Miller v. Pfizer*, Inc., 356 F.3d 1326, 1332 (10th Cir. 2004).

Club Valencia answers with the Court's prior statement that IUIC "was well aware of the significant discrepancy" between the asbestos reports. (Dkt. 246 at 10–11) (citing Dkt. 221 at 9). The discrepancy is not a fact IUIC sat on. Knowing the readings conflicted is not knowing why—and Mr. Daviscourt's timely report took the why as far as the physical evidence went: containment documented in 2023 was gone, but when and why it "was removed is not known." (Dkt. 244-2 at 2-3.) The answer arrived two months later, when Mr. Scott testified to facts Club Valencia's sworn interrogatory answers never disclosed. The supplement adds no new subject matter and no new theory. It supplies the facts the original report marked as unknown.

**III.    Club Valencia Starts the Diligence Clock Before Its Own Damages Theory Existed.**

Club Valencia says IUIC "showed zero diligence," and that because IUIC "lacked diligence" in seeking leave to amend the pleadings, "the analysis . . . is no different" here. (Dkt. 246 at 3, 13.) The analysis is different, because the clocks are different. The Recommendation denying leave to amend the pleadings (Dkt. 221) measured diligence against the April 12, 2024 Scheduling Order deadline to amend the pleadings (*id.* at 10)—a deadline that governs what a party may plead, not the rebuttal evidence it may develop. Diligence for a rebuttal supplement runs from the moment there was something to rebut: January 31, 2025, when Club Valencia first disclosed its asbestos-scope theory. From that date onward, the record shows nothing but diligence.

*First*, before January 31, 2025, Club Valencia's own interrogatory answers kept the theory out of reach. It objected that IUIC's damages interrogatories "call[ed] for expert information," represented that "a comprehensive damage report(s) will be made by [its] experts," and promised that "[a]ll damages will be quantified and disclosed in Defendant's expert reports." Resp. to Rogs. 3, 10. Once the theory arrived, Mr. Daviscourt identified the missing-containment issue in his March 31, 2025 rebuttal report — on deadline, and the genesis of IUIC's follow-up discovery. (Dkt. 244-2 at 2-3, 18.)

*Second*, Club Valencia's generic disclosure of Mr. Scott did not identify the facts it now says IUIC should have discovered earlier. Club Valencia listed him only as "a maintenance worker at the subject real property" who "may have relevant information related to the claims and defenses in this action." (Dkt. 194-9, Defs.' Initial Disclosures, ¶ 23.) When IUIC then asked who inspected the damage, mitigated the damage, or repaired the damage, Club Valencia identified its adjuster Mr. McLoughlin, Mr. Milazzo, the fire district, and Ethos—but not Mr. Scott. (**Ex. 2, Def. Resp.**

**to Rogs. Nos. 9, 11**.) Nothing suggested, much less overtly disclosed, that Mr. Scott installed asbestos containment barriers or performed any other work to mitigate asbestos damage in the building. Club Valencia's entire argument depends on treating Mr. Scott's mitigation work as obvious to IUIC even though Club Valencia itself never identified it when asked who performed any mitigation work.

*Third*, IUIC *did* seek Mr. Scott's deposition. It formally cross-noticed his deposition in this case to follow his deposition in a related state court action. (**Ex 3, 5/21/25 Devilling-Anderson Email.**) Club Valencia's counsel acknowledged the cross-notice: "I think you should proceed tomorrow with the federal case depo for Mr. Scott. You have cross noticed it separate from the state case." (**Ex. 4**, **5/22/25 9:17 am Devilling-Anderson Email.**) IUIC's counsel appeared at the May 22, 2025 deposition, and so did Club Valencia's counsel. (Dkt. 194-10 at 2, 4.) IUIC only withdrew its separate deposition notice afterward, because counsel had "covered pretty much everything with the state court deposition." (**Ex. 5, 5/22/25 4:45 pm Devilling-Anderson Email.**) The Supplemental Report rests on testimony IUIC sought, noticed, and obtained after the original report was disclosed, which is textbook good cause for amending a scheduling order deadline. *Gorsuch, Ltd., B.C. v. Wells Fargo Bank, N.A.*, 771 F.3d 1230, 1240 (10th Cir. 2014). Declining to make Mr. Scott repeat himself at deposition under this case caption was efficiency in practice.

*Fourth*, Club Valencia says IUIC "neglected" to ask Mr. Milazzo "about containment barriers in his deposition." (Dkt. 246 at 12.) IUIC *did* ask. One week after Mr. Scott testified, IUIC examined Mr. Milazzo—Club Valencia's own asbestos expert—about the barriers: whether anyone removed them before his testing, whether anyone was authorized to, whether Messrs. McLoughlin or Kyte entered the containment, and whether their removing barriers would have

been proper. (Dkt. 194-4, Milazzo Dep. 82:14–86:10.) Mr. Milazzo knew of no removal—"not to my knowledge was anybody removing containment barriers"—though "a majority" of unit doors stood open and he did not know why. (*Id.* at 83:20-24, 85:1-2). That examination is diligence: IUIC obtained Mr. Scott's testimony on May 22 and pursued it Mr. Milazzo on May 29, while discovery was open. And Mr. Milazzo's answer set against Mr. Scott's testimony is the witness conflict—among Club Valencia's own witnesses—that the Supplemental Report addresses.

**IV.    IUIC Needs No Amended Pleading, and No Permission, to Rebut Club Valencia's Causation or Damages Proof.**

Club Valencia says the supplement "circumvent[s]" the order denying IUIC leave to amend. (Dkt 246 at 10.) It does not. The prior motion asked whether IUIC could add new affirmative, intent-based grounds for declaratory relief after the pleading-amendment deadline—a Rule 15 and 16 question on claims IUIC would bear the burden to prove. This motion asks whether IUIC's already-disclosed rebuttal expert may supplement the basis for his causation opinions—a Rule 26(e) question directed at causation and damages, which Club Valencia must prove.

The prior order addressed proposed claims of concealment, breach of the duty to protect property, and the dishonest-acts exclusion. (*See* Dkt. 221 at 5.) Those claims depended on allegations that barriers were "intentionally removed" to spread asbestos and increase the claim, and the Court denied amendment because that theory would inject "sabotage[]," fraud, and "the supposed intent of the individuals involved." (*Id*. at 5, 11–12.)  The supplement does none of that. It seeks no declaration, invokes no exclusion, and does not turn on intent, motive, fraud, or *why* the barriers were removed. It merely supplements Mr. Daviscourt's disclosed causation opinion with Mr. Scott's newly discovered testimony that the barriers were removed before Club Valencia's asbestos testing, which "more likely than not[] distributed asbestos fibers throughout

7

the two quadrants prior to [its expert's] sampling." (Dkt. 244-3 at 7-8.) That is rebuttal to Club Valencia's theory that the fires drove asbestos into the walls and ceilings of 165 units.

Club Valencia bears the burden to prove the fires caused the claimed asbestos damage. *Gilmore v. Owners Ins. Co.*, No. 24-cv-02669-PAB-KAS, 2026 WL 809525, at *4-5 (D. Colo. Mar. 24, 2026) (Brimmer, J.). IUIC needs no amended pleading to contest that proof because a contention that negates an element of the opponent's claim is not an affirmative defense; it is rebuttal. *A1 Garage Door Serv., L.L.C. v. West,* 21-CV-01821-PAB-NRN*, 2022 WL 952874,* at *2 (D. Colo. Mar. 30, 2022) (Brimmer, J.) ("A defense which demonstrates that plaintiff has not met its burden of proof as to an element plaintiff is required to prove is not an affirmative defense.") (brackets and citation omitted). Club Valencia agrees its "damages, including damages caused by asbestos contamination, remain[] for trial." (Dkt. 246 at 4.) The prior order did not—and could not— convert the April 12, 2024 pleading-amendment deadline into a cutoff for rebutting a damages theory Club Valencia did not disclose until January 31, 2025. A pleading deadline is not a discovery deadline, and an order denying leave to amend the pleadings to add affirmative defenses or claims is not a gag order on the evidence IUIC may use to rebut Club Valencia's damages.

## V.    The Cure Is the Deposition IUIC Already Offered, Not Exclusion and Not a Second Discovery Period.

Club Valencia has not moved under Rule 37 and has not identified any rule or order IUIC violated. Even if its opposition is treated as a request to exclude, the *Woodworker's* factors— prejudice or surprise, ability to cure, trial disruption, and bad faith—do not support exclusion. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Club Valencia alleges no bad faith, no genuine surprise, and no trial disruption. It offers only conclusory prejudice from IUIC's discovery that Club Valencia's own former employee had

information about containment barriers that Club Valencia's interrogatory responses never disclosed. Its remaining assertions—settlements made and claims foregone in reliance on closed discovery—are never connected to the supplement; Club Valencia does not say how a rebuttal causation opinion would have changed any of those choices.

Club Valencia never explains what the prejudice is—only that it exists. The only new factual material in the Supplemental Report is Mr. Scott's testimony about the physical sequence of the containment barriers. The cure for that is a limited deposition of Mr. Daviscourt, which IUIC offered. (Dkt. 244 at 14.) Trial is set for April 27, 2027; Rule 26(a)(3) disclosures are not due until April 2, 2027; and Rule 702 motions are not yet due. (*See* Dkt. 243.) A limited expert deposition disrupts nothing. *See HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1204 (10th Cir. 2017) (curability and absence of trial disruption weigh against exclusion).

Club Valencia's demand to depose Ms. Owens and Mr. Woellner has nothing to do with Mr. Scott's testimony. Ms. Owens (f/k/a Manzanares) was identified and even signed Mr. Daviscourt's original report as the QUEST inspector who performed the February 2025 settled-dust sampling and co-signed the report. (Dkt. 244-2 at 3-4, 27.) Club Valencia had that report on March 31, 2025, with weeks of fact discovery remaining. If it wanted to depose Ms. Owens about sampling methodology, it could have done so then. Mr. Scott's later testimony about containment barriers does not make her deposition newly necessary. Club Valencia's grievances with Mr. Daviscourt are even older still, involving business-transaction issues probed at his April 2025 deposition, unrelated to Scott's testimony.

And the other witnesses Club Valencia wants to depose are its own. Scott is Club Valencia's own former employee, who testified under oath at a deposition IUIC cross-noticed and

both sides' counsel attended. Club Valencia cannot call his knowledge obvious enough to defeat IUIC's diligence but surprising enough to require reopened discovery. Mr. Kyte is Club Valencia's own board member. (Dkt. 194-9 at ¶15.) And Club Valencia concedes IUIC asked Mr. McLoughlin (its public adjuster) about containment barriers while he was available. (Dkt. 246 at 12.) Mr. McLoughlin's later death does not make any prejudice incurable, because the supplement does not turn on his intent, motive, or subjective explanation; it concerns the physical sequence of barrier removal and its effect on the test results supporting Club Valencia's alleged asbestos damage from the fires.

Finally, the "cans of worms" Club Valencia invokes belonged to a different motion. The Court used that phrase when addressing IUIC's request to amend the pleadings to add intent-based affirmative claims and additional affirmative defenses. (Dkt. 221 at 11–12.) The Supplemental Report adds no claim, no fraud theory, no exclusion, no intent issue. Club Valencia parades its own stale discovery choices as freshly minted "prejudice," hoping the Court will take the label at face value. If any further inquiry is warranted, the remedy is the limited deposition of Mr. Daviscourt that IUIC already offered—not exclusion, and not a second discovery period so Club Valencia can depose its own witnesses.

Dated: July 6, 2026

Respectfully submitted,

_/s/ Christopher M. Snow_

Matthew S. Ponzi (mponzi@fgppr.com)
Christopher M. Snow (csnow@fgppr.com)
Foran Glennon Palandech Ponzi & Rudloff PC
222 North LaSalle Street, Suite 1400
Chicago, Illinois 60601
(312) 863-5000
_Attorneys for Illinois Union Insurance Company_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 6, 2026, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

<u>/s/ *Christopher M. Snow*</u>
Christopher M. Snow