**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| ILLINOIS UNION INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:23-cv-1054-PAB- |
| v. ) | NRN |
| ) | |
| CLUB VALENCIA CONDOMINIUM OWNERS ) | Judge Phillip A. Brimmer |
| ASSOCIATION, ) | |
| ) | Magistrate Judge N. Reid Neureiter |
| Defendant/Counterclaimant, ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LCM PROPERTY MANAGEMENT, INC., ) | |
| CHERRY CREEK INSURANCE AGENCY, ) | |
| INC., *d/b/a* CCIG, and CRC INSURANCE ) | |
| SERVICES, LLC., ) | |
| ) | |
| Third-Party Defendants. ) | |

**PLAINTIFF ILLINOIS UNION INSURANCE COMPANY'S
MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 10, 2026 ORDER
<u>ON CROSS MOTIONS FOR SUMMARY JUDGMENT [Dkt. 230]</u>**

NOW COMES Plaintiff/Counter-Defendant, Illinois Union Insurance Company

("IUIC"), by and through its attorneys, and for its Motion For Reconsideration Of The Court's

March 10, 2026 Order On Cross Motions For Summary Judgment [Dkt. 230], states as follows:

**Certification Pursuant to D.C.COLO.LCivR. 7.1(b):** Undersigned conferred with counsel

for Club Valencia Condominium Owners Association ("Club Valencia") regarding the relief

requested herein. This Motion is opposed. *See also* Club Valencia's Motion to Set Pretrial

1

Conference and Trial, Dkt. 231, at pg. 4("[T]he Court's reasoning and analysis of the protective

safeguard issue [in its Order On Cross Motions For Summary Judgment, Dkt. 230] was sound.")

## I.    INTRODUCTION

On March 10, 2026, the Court denied IUIC's Motion for Summary Judgment and granted

Club Valencia's cross-motion for Partial Summary Judgment. (Order, Dkt. 230.) The undisputed

facts are that Club Valencia purchased a policy from IUIC with a Protective Safeguard

Endorsement ("PSE") stating, in pertinent part, that "as a condition of this insurance, you [i.e.,

Club Valencia] are required to: 1. Maintain the protective safeguards listed in the [PSE's]

Schedule, and over which you have control, in complete working order" (*id.* at 2-3) (hereinafter,

the "**PSE's Condition**"); (2) the PSE's Schedule required "hard-wired smoke detectors **in each**

**unit**" (*id.* at 2, emphasis ours); and (3) there were no "hard-wired smoke detectors in each unit."

(*Id.* at 4-5.) The Order ruled that Club Valencia's duties under the PSE's Condition are triggered

when Club Valencia has "control" over a required safeguard, but that Club Valencia does not have

any "control" over any hardwired in-unit smoke detectors because that would render the phrase

"and over which you have control" superfluous. (Order, Dkt. 230 at 10-11.) Reconsideration is

appropriate under Federal Rule of Civil Procedure 54(b) because the Order's interpretation of the

PSE's Condition runs afoul of three canons of construction, each of which warrants

reconsideration.

**First**, the Order misapplies and violates the canon against surplusage. The Order

misapplies the canon because the Order recognizes that the phrase "and over which you have

control" is the only language in the entire Policy that "acts as a qualifier to Club Valencia's duty

2

to maintain hardwired smoke detectors." (Order, Dkt. 230, at 11.) A unique phrase, with a unique contractual purpose, that is not redundant of any other contract language, is the very antithesis of contractual surplusage. The phrase "and over which you have control" has meaning when "control" factually exists, because that means Club Valencia *does* have a duty to maintain a required safeguard as a condition of its insurance coverage. And it has meaning when "control" does not factually exist, because that means Club Valencia *does not* have such a duty. It is not surplusage.

Ironically, the Order actually creates, rather than avoids, surplusage. The Order holds that "control" *must exist* to trigger Club Valencia's duty to maintain a required safeguard (Order, Dkt. 230 at 11), yet simultaneously holds that such "control" *can never exist* because that would render the phrase "and over which you have control" superfluous. (*Id.* at 10.) Under this circular reasoning, the PSE's Condition is rendered superfluous and can never be applied because the Order treats the "control" needed to trigger Club Valencia's duties as a legal impossibility instead of a threshold factual prerequisite.

**Second**, the Order rewrites the contract, which Colorado law does not allow. Not only does the Order effectively eliminate the PSE's Condition from the Policy, but it also treats "control" over property as synonymous with "ownership" of property. (*See* Order, Dkt. 230 at 11) ("Club Valencia does not control, *i.e.*, own, the individual units and the items within them.") The Policy, however, treats "control" and "ownership" of property as distinct concepts and expressly contemplates that Club Valencia can have "control" over property that it does not also own.

**Third**, the Order runs afoul of the four corners rule. Under Colorado law, in the absence of an ambiguity that appears on the face of a contract, courts "will not look beyond the four corners

3

of the agreement to determine the meaning intended by the parties." *Am. Family Mut. Ins. Co. v. Hansen*, 2016 CO 46, ¶ 24, 375 P.3d 115, 120–21 (Colo. 2016). The Order does not identify any ambiguity in the language of the PSE's Condition but relies on assumptions about extrinsic facts to determine what the phrase "and over which you have control" was intended to mean. (*See* Order, Dkt. 230 at 11) ("By stating 'have control,' the words imply that there are smoke detectors in the insured premises over which Club Valencia does not have control. Thus … IUIC's interpretation is incorrect.") The Order therefore assumes—with no support in the record—that the meaning of the phrase "and over which you have control" is the contractual expression of an unproven extrinsic fact: that Club Valencia lacks "control" over in-unit smoke detectors. Colorado law does not allow courts to consider extrinsic facts—whether assumed or proven with evidence—to interpret unambiguous contract terms.

Accordingly, IUIC respectfully requests that the Court reconsider and vacate its Order and enter summary judgment in IUIC's favor on all claims and counterclaims because it is undisputed that Club Valencia did not satisfy the condition precedent to coverage for either fire loss.

## II.   LEGAL STANDARD

A district court "always has the inherent power to reconsider its interlocutory rulings, and we encourage a court to do so where error is apparent." *Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239, 1243 (10th Cir. 2007) (citation omitted). "A denial of summary judgment is a quintessential interlocutory order with no preclusive effect on the parties in *any* future proceedings." *In re C & M Properties, L.L.C.*, 563 F.3d 1156, 1166 (10th Cir. 2009) (emphasis in original) (citation omitted). A motion to reconsider a partial summary judgment ruling is also considered "an interlocutory motion invoking the district court's general discretionary authority to

review and revise interlocutory rulings prior to entry of final judgment." *Wagoner v. Wagoner,* 938 F.2d 1120, 1122 n.1 (10th Cir. 1991). In such a case, the district court is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b)." *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1224 n.2 (10th Cir. 2008). As this Court has previously written, "the basic assessment" across all motions for reconsideration "tends to be the same: courts consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error." *Green v. Fishbone Safety Sols., Ltd.*, 303 F. Supp. 3d 1086, 1091–92 (D. Colo. 2018). IUIC respectfully submits that the contractual interpretation set forth in the Order is clearly erroneous under existing law and exceeds the boundaries of the interpretive canon against surplusage.

The Tenth Circuit reviews a "district court's decision denying a motion for reconsideration for abuse of discretion." *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1235 (10th Cir. 2001). "Under an abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. That is to say, we will not alter a trial court's decision unless it can be shown that the court's decision was an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1024 (10th Cir. 2018), *as revised* (Apr. 13, 2018) (internal quotation marks and citations omitted).

III.     **ARGUMENT**

        **A. The Order's interpretation of the phrase "and over which you have control" is based on a fundamental misapplication of the canon against surplusage.**

Respectfully, the Order misapplies the canon against surplusage. The canon against surplusage merely prevents one provision of a contract from being interpreted in a way that robs *a different* provision *in the same document* of any meaning. *See, e.g.*, *BonBeck Parker, LLC v. Travelers Indem. Co. of Am.*, 14 F.4th 1169, 1179 (10th Cir. 2021) (Colorado law) ("The flaw in Travelers' argument about the meaning of the appraisal provision's *last sentence* is that it can't be reconciled with the plain language of *the first sentence*. When interpreting the appraisal provision, *we must give effect to both sentences* 'so that n[either] will be rendered meaningless.'") (quoting *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 307 (Colo. 2003) (brackets added by court) (emphasis added). Stated differently, the canon expresses the idea that "[c]ourts should interpret contracts *so that different words* are not superfluous." *W. Union Co. v. Ace Am. Ins. Co.*, 623 F. Supp. 3d 1153, 1159 (D. Colo. 2022) (citations omitted). Unique contract language, with a unique contractual purpose, that is not redundant of any other contract language, is the very antithesis of language that's "duplicative, nugatory, and of no effect—i.e., surplusage." *Navajo Nation v. Dalley*, 896 F.3d 1196, 1215 (10th Cir. 2018).

Here, the Order recognized that the phrase "and over which you have control" has its own unique and non-redundant contractual purpose: it "acts as a qualifier to Club Valencia's duty to maintain" a required safeguard. (Order, Dkt. 230 at 11.) The Order does not identify any other contractual language rendered meaningless or redundant by this interpretation.

Moreover, the phrase "and over which you have control" has *contractual* meaning. When Club Valencia *does have* "control" over a required safeguard, the contractual qualifier is satisfied, thus triggering Club Valencia's duty to maintain that safeguard. When Club Valencia *does not* have such "control," the contractual qualifier is not satisfied, and no duties are triggered as to that

safeguard. Contrary to the finding of surplusage set forth in the Order, the phrase "and over which you have control" clearly *does have* a contractual meaning and purpose when such "control" exists—the existence of such "control" *is what triggers* Club Valencia's duty to maintain a safeguard in complete working order. The question is thus a factual one: did Club Valencia have control over hard-wired smoke detectors in each unit? The Order's conclusion that the "control" qualifier is *contractually* meaningless when "control" *factually* exists is, respectfully, a *non sequitur*—when "control" *factually* exists, that directly means Club Valencia has a *contractual* duty to maintain the safeguards it controls in complete working order as a condition of its insurance coverage.

**B. The Order's interpretation of the phrase "and over which you have control" ironically violates the canon against surplusage.**

In an ironic twist, the Order creates contractual surplusage instead of avoiding it. As explained below, the Order ultimately renders the PSE's Condition meaningless—including the phrase "and over which you have control."

On the one hand, the Order recognizes that "control" over a required safeguard is precisely what triggers Club Valencia's duty to maintain such safeguards in complete working order under the PSE's Condition. (Order, Dkt. 230 at 11) (The PSE's Condition "states that Club Valencia must maintain hardwired smoke detectors [in each unit], but only those over which it has control. In this regard, the word 'and' acts as a qualifier to Club Valencia's duty to maintain hardwired smoke detectors [in each unit].") On the other hand, the Order also concludes that the very existence of the "control" *required to trigger* the PSE's Condition would simultaneously render the phrase "and over which you have control" superfluous, and on that basis concludes that Club Valencia does not have the requisite "control." (*Id.* at 10.)

7

But those two propositions are mutually repugnant. If "control" *must exist* for the PSE's Condition to be triggered (as the Order ruled), but "control" *cannot exist* as a matter of contract interpretation (as the Order also ruled), then the duties imposed by the PSE's Condition can never be triggered or enforced, which means the PSE's Condition is itself contractually meaningless.

This result is exactly what the canon against surplusage forbids. *BonBeck Parker, LLC*, 14 F.4th at 1179. The Order invokes the canon against surplusage for the ostensible purpose of saving the phrase "and over which you have control" from surplusage. But the Order ultimately produces the exact opposite result, nullifying the entirety of the PSE's Condition, "control" qualifier and all. Under the Order's reasoning, Club Valencia's duties under the PSE's Condition can never be triggered and can never be breached. The PSE's Condition is a contractually nullity that may as well be deleted from the Policy because it serves no purpose under the Order.

The Order's nullification of the PSE's Condition is also evident when burdens of proof are considered. As the party asserting a breach-of-contract counterclaim, Club Valencia must prove, as a *prima facie* element of its own case, its own "performance … or some justification for nonperformance." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted).[1] Under the Order's own construction, the PSE's Condition imposes a duty on Club Valencia to maintain the smoke detectors "it controls." (Order, Dkt. 230 at 11.) Thus, whether Club Valencia performed that duty is a burden that falls on Club Valencia to prove. *Diodosio*, 841 P.2d at 1058–59. But the Order does not require any such proof and, in fact, negates it entirely. Under the Order's reasoning, Club Valencia is never required to prove that it maintained any safeguards in complete working order, because the phrase "and over which you have control" would be superfluous if Club Valencia had the "control" required to trigger its duty in the first

place. Under the Order, the PSE's Condition imposes upon Club Valencia no contractual duty, no legal burden of proof, and no consequences for noncompliance whatsoever. The Order renders the PSE's Condition a superfluous nullity.

The Order also creates surplusage by equating "ownership" with "control." The Order states that "control" means "to have responsibility for" (Dkt. 230 at 10), but also that "control" *over* property means "ownership" *of* property. (*Id.* at 11) ("Club Valencia does not control, i.e., own, the individual units and the items within them.") Conflating "control" with "ownership," however, also runs afoul of the canon against surplusage. The Policy expressly distinguishes ownership from control and also contemplates that Club Valencia can have control over property it does not own. For example, the Policy contains an exclusion for loss or damage caused by or resulting from "steam turbines owned or leased by you, or operated under your control." (Dkt. 198-1, pg. 29.) If "control" and "ownership" meant the same thing, the Policy would not treat them differently in other provisions. "Control" over property does not mean the same thing as "owned" property.[1]  Reading "control" over property to mean the same thing as "owned" property eliminates any distinction between the words, which creates even more surplusage in the Policy.

### C. The Order is a judicial rewrite of the Policy, which Colorado law does not authorize.

Under Colorado law, a court cannot "rewrite an unambiguous policy nor force a strained construction in order to interpret it against the insurer." *Auto-Owners Ins. Co. v. Csaszar*, 893 F.3d 729, 734 (10th Cir. 2018) (Colorado law) (internal quotations and citation omitted). "[I]f the

---

[1] The principal definition of "own" or "owned" as a transitive verb means "to have or hold as property : possess."  *See* https://www.merriam-webster.com/dictionary/owned.  The principal definition of "control" as a transitive verb means "to exercise restraining or directing influence over : regulate" See https://www.merriam-webster.com/dictionary/control.

disputed language's meaning is unambiguous—not 'susceptible ... to more than one reasonable interpretation'—we must give effect to that meaning." *BonBeck Parker, LLC*, 14 F.4th at 1176 (citation omitted). "Courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). Here, the Order rewrites the Policy in two ways. First, the Order effectively deletes the PSE's Condition from the Policy thereby impermissibly expanding coverage. Second, the Order equates "control" over property with "ownership" of property, thus negating the Policy's express distinction between the two.

### D. The Order improperly relies on unsupported assumptions about extrinsic facts to interpret unambiguous contract language.

Under Colorado law, "[t]he primary goal of contract interpretation is to determine and give effect to the intent of the parties. Interpretation of a written contract and the determination of whether a provision in the contract is ambiguous are questions of law." *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1144 (10th Cir. 2023) (Colorado law) (internal quotations and citations omitted). In the absence of any ambiguity, it is improper to consider extrinsic evidence to interpret the intent of a contractual provision. *Am. Family Mut. Ins. Co. v. Hansen*, 2016 CO 46, ¶ 24, 375 P.3d 115, 120–21 (Colo. 2016) ("A contractual term is ambiguous if it is susceptible on its face to more than one reasonable interpretation. Absent such ambiguity, we will not look beyond the four corners of the agreement to determine the meaning intended by the parties. … an ambiguity must appear in the four corners of the document *before* extrinsic evidence can be considered … we do not use extraneous evidence to prove intent where no ambiguity exists.") (emphasis in original) (internal quotations and citations omitted); *see also McAuliffe*, 69 F.4th at 1144 ("The intent of the parties

10

is to be determined from the contract language itself. When a document is unambiguous, it cannot be varied by extrinsic evidence.") (internal quotations and citations omitted).

These rules fix the analytical sequence, and it runs in one direction: contract text → meaning (drawn from the four corners) → application of that meaning to the extrinsic facts. Only *after* the court determines what the contract *means* does the separate, factual question of performance arise. *See Lake Durango Water Co. v. Pub. Utils. Comm'n*, 67 P.3d 12, 21 (Colo. 2003), *as modified on denial of reh'g* (Apr. 28, 2003) ("Once the terms of the agreement have been identified, the fact finder must determine whether the party accused of breaching has performed its obligations under the contract. Whether a party has performed its obligations under a contract or breached is a question of fact.") (citation omitted).

Here, the Order did not find the phrase "and over which you have control" ambiguous. To the contrary, the Order's interpretation of the *contractual meaning* of the PSE's Condition is seemingly straightforward: it imposes a qualified duty on Club Valencia to maintain "hard wired smoke detectors in each unit" in complete working order, with the qualification being that the maintenance duty is "limited to only those smoke detectors it controls," and the word "control" means "to have responsibility for." (Order, Dkt. 230 at 10–11.) Under that interpretation, whether Club Valencia has control over a required safeguard becomes a relevant and material *fact* that determines the extent of its duty—a question to be resolved, like any performance question, by applying the interpreted language to the extrinsic facts. *See Lake Durango*, 67 P.3d at 21.

But the Order never reached that factual question. Instead, it assumed the answer. Reasoning that the phrase "and over which you have control" would be rendered meaningless unless Club Valencia lacks "control" over the required safeguards, the Order concluded that the

11

words "imply that there are smoke detectors in the insured premises over which Club Valencia does not have control," and that this factual implication "shows that IUIC's interpretation is incorrect." (Order, Dkt. 230 at 11.) Thus, the Order makes an unsupported assumption about an extrinsic fact—that Club Valencia does *not* have "control" over the required safeguards— and then cites that factual assumption to reject IUIC's contractual interpretation as invalid. That is precisely what the four-corners rule forbids: the Order improperly "look[s] beyond the four corners of the agreement to determine the meaning intended by the parties." *Hansen*, 375 P.3d at 121.

Moreover, the Order's reasoning is circular. The Order's conclusion that Club Valencia does not have "control" over any required safeguards is baked into the assumption that the phrase "and over which you have control" would be meaningless if Club Valencia had any "control" over any required safeguards. In short, rather than first determining the meaning of the phrase "and over which you have control" from the four corners of the Policy, and only then applying that meaning to the extrinsic facts (the Condominium Declarations and By-Laws), the Order assumes that certain extrinsic facts must be true (i.e., that Club Valencia lacks control over required safeguards) in order to give meaning to the phrase "and over which you have control." (Order, Dkt. 230 at 10.) The Order is determining what unambiguous contractual language means via circular logic that relies upon considerations of implied "facts" that only exist outside the four corners of the Policy. *Hansen* forbids exactly that. 375 P.3d at 120-21.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above and for those set forth in IUIC's Motion for Summary Judgment, Reply in Support of IUIC's Motion for Summary Judgment, and IUIC's Opposition to

12

Club Valencia's Motion for Summary Judgment, IUIC requests that the Court grant summary

judgment in favor of IUIC and against Club Valencia on all claims and counterclaims.

Dated: July 17, 2026                          Respectfully submitted,

                                              /s:/ Christopher M. Snow
                                              ──────────────────────────────
                                              Matthew S. Ponzi
                                              Christopher M. Snow
                                              Foran Glennon Palandech Ponzi & Rudloff PC
                                              222 North LaSalle Street, Suite 1400
                                              Chicago, Illinois 60601
                                              (312) 863-5000
                                              e-mail:  mponzi@fgppr.com
                                              e-mail:  csnow@fgppr.com
                                              *Attorneys for Plaintiff, Illinois Union Insurance
                                              Company*


## CERTIFICATE OF SERVICE

        I hereby certify that on July 17, 2026, I electronically filed the foregoing with the Clerk of
Court using the CM/ECF system, which will send notification of such filing to the following
counsel of record to their CM/ECF-registered email addresses:

M. Stuart Anderson
Thomas H. Wagner
ANDERSON LAW GROUP
Stuart@anderson-lg.com
Tom@anderson-lg.com

*Attorneys for Defendant, Counter Defendant,
Third-Party Plaintiff, Club Valencia
Condominium Owners Association, Inc.*


                                              /s:/  Christopher M. Snow
                                              ──────────────────────────────
                                              Christopher M. Snow