**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO**

Civil Action No.: 1:23-cv-1054-PAB-NRN

ILLINOIS UNION INSURANCE COMPANY,

      Plaintiff,

v.

CLUB VALENCIA CONDOMINIUM
OWNERS ASSOCIATION, INC.

      Defendant, Counterclaimant, Third-
      Party Plaintiff.

v.

CHERRY CREEK INSURANCE AGENCY, INC.
D/B/A CCIG, AND CRC INSURANCE
SERVICES, LLC, LCM PROPERTY
MANAGEMENT, INC.

      Third-Party Defendants

---

**CLUB VALENCIA CONDOMINIUM OWNERS ASSOCIATION, INC.'S RESPONSE IN OPPOSITION TO ILLINOIS UNION INSURANCE COMPANY'S MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 10, 2026 ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [DOC. 252]**

---

Defendant/Counterclaimant Club Valencia Condominium Owners Association, Inc. ("Club Valencia"), by and through its counsel, Anderson Law Group, respectfully submits this Response in Opposition to Plaintiff/Counter-Defendant Illinois Union Insurance Company's ("IUIC") Motion for Reconsideration of the Court's March 10, 2026 Order on Cross-Motions for Summary Judgment [Doc. 252] (the "Motion" or "Motion for Reconsideration"), and states as follows:

1

# I. INTRODUCTION

IUIC's Motion for Reconsideration should be denied because it is a motion for reconsideration in name only. IUIC identifies no intervening change in the law since the Court issued its March 10, 2026 Order. IUIC presents no new evidence. It points to no fact or authority the Court overlooked when granting partial summary judgment in favor of Club Valencia and denying summary judgment in favor of IUIC. Instead, IUIC merely re-argues, almost verbatim, the same contract-interpretation position the Court already considered and rejected: that the words "and over which you have control" impose a duty on Club Valencia to install and maintain hard-wired smoke detectors inside privately owned residential units. The Court correctly held that they do not and IUIC's Motion for Reconsideration is "not appropriate to revisit issues already addressed . . . ." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).

Nor can IUIC make new arguments in a motion for reconsideration. That is because, "[a]bsent extraordinary circumstances, not present here, the basis for the second motion must not have been available at the time the first motion was filed." Id. The basis for IUIC's Motion for Reconsideration was present before and IUIC identifies no "extraordinary circumstances" to justify a rehash of the Court's prior ruling.

IUIC's central premise in the Motion for Reconsideration, i.e., that the Court held Club Valencia can "never" have "control" over any safeguard, thereby nullifying the Protective Safeguards Endorsement ("PSE"), is a misread of the Court's Order. The Court held no such thing. Rather, the Order expressly recognizes that Club Valencia does control certain safeguards (the hard-wired smoke detectors in the common areas) and does not control others (the detectors inside privately owned units). [Doc. 230 at 11.] Far from rendering the "control" qualifier in the PSE

meaningless, as IUIC asserts, the Order gives the PSE precisely the effect its plain language requires.

Each of IUIC's three "canons of construction" arguments fail for the same reason because each argument depends on the same mischaracterization of the Order. First, the Order does not misapply or violate the canon against surplusage. IUIC's reading of the PSE (that the association controls every detector in every unit) is the reading that would drain "and over which you have control" of any effect. Second, the Order did not "rewrite" the Policy or equate "control" with "ownership." The Court adopted the definition of "to have responsibility for" and applied it to undisputed facts. And third, the Order does not offend the four-corners rule. The Court construed the Policy's plain language and applied a settled meaning of plain language to an undisputed factual record. The Court followed exactly the sequence that IUIC says the law requires.

Finally, IUIC ignores that the Order rests on grounds that IUIC's Motion for Reconsideration never addresses. The Court separately and independently held that hard-wired smoke detectors are not an "automatic fire alarm" or "other automatic system," so Club Valencia's alleged failure to have them cannot implicate the PSE's second condition. [Doc. 230 at 12–13.] And the Court denied IUIC summary judgment on Club Valencia's bad-faith counterclaims because the unreasonableness of IUIC's conduct is a jury question on this record. [Doc. 230 at 14–16.] IUIC's Motion challenges neither ruling.

IUIC's Motion for Reconsideration should, therefore, be denied.

## II.     LEGAL STANDARD

IUIC correctly acknowledges that a motion to reconsider an interlocutory order invokes the Court's discretionary authority under Fed. R. Civ. P. 54(b). In dealing with such motions, "the basic assessment tends to be the same: courts consider whether new evidence or legal authority

has emerged or whether the prior ruling was clearly in error." [Doc. 252 at 4–5 (quoting Green v. Fishbone Safety Sols., Ltd., 303 F. Supp. 3d 1086, 1091–92 (D. Colo. 2018)).] That standard defeats the Motion on its face.

Whatever the procedural label, reconsideration is an extraordinary remedy. "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Servants of Paraclete, 204 F.3d at 1012. A motion for reconsideration is not a second opportunity for the losing party to rehash arguments already rejected or to dress up a position that previously failed. Such motions are properly denied where the movant merely reasserts arguments, relies on authorities that were available at the time of the original briefing, or simply expresses disagreement with the Court's reasoning. Id. To justify relief from an interlocutory order on a motion for reconsideration, "a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc., 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000). "A motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." Id.

The other basis IUIC invokes in its Motion, "clear error," is no less demanding. It is not enough that IUIC disagrees with the Court's interpretation or believes a different reading is available. Id. Reconsideration on clear-error grounds requires that the challenged ruling be clearly wrong, not merely debatable. As shown below, the Court's application of Colorado's rules of contract construction, including the anti-surplusage canon invoked by the Court in its Order, is the antithesis of clear error.

## III. ARGUMENT

### A. *The Motion for Reconsideration is a procedurally improper attempt to relitigate a decided issue.*

The threshold problem with IUIC's Motion is that IUIC asks the Court to do what a reconsideration motion cannot do: reexamine a fully briefed, fully argued contract interpretation dispute simply because IUIC remains convinced it was right.

IUIC does not identify any intervening change in the controlling law of contract interpretation. Every authority it cites in the Motion for Reconsideration, including BonBeck, Cyprus Amax, Hansen, McAuliffe, Csaszar, Diodosio, Lake Durango, and the anti-surplusage cases, predates the March 10 Order. All of these cases were available to IUIC when it briefed the cross-motions. IUIC also does not identify any new evidence it might have obtained after March 10, 2026. The summary-judgment record is closed and unchanged. What IUIC offers instead is a more strained and confusing version of the identical arguments it already made, i.e., that "control" over the in-unit detectors exists as a matter of contract, so the PSE's condition bars coverage. The Court considered that argument and rejected it. [Doc. 230 at 9–11.] And IUIC's attempt to repackage its prior argument under the guise of "canons of construction" does not clear the high bar needed to obtain reconsideration. Nat'l Bus. Brokers, 115 F. Supp. 2d at 1256 (motion for reconsideration is not a vehicle for parties who want to rehash old arguments).[1]

The timing of IUIC's Motion confirms this point. IUIC filed its Motion for Reconsideration more than four months after the March 10, 2026 Order without identifying any development in the

---

[1] IUIC did not use the term "canon against surplusage" in its summary judgment briefing, but it did argue that the interpretation urged by Club Valencia and adopted by the Court would render the PSE "meaningless." [Doc. 219 at 2.] IUIC has merely changed the label on its existing arguments under the guise of asking for reconsideration, but the argument is the same.

law that post-dates the ruling. There is no correction of a clear error the Court might need to fix; it is a do-over of a lost argument. On that basis alone, the Motion should be denied.

**B.** ***The Motion for Reconsideration rests on a false premise: the Order did not hold that "control" can never exist, and it did not nullify the PSE.***

Every merits argument in the Motion for Reconsideration turns on a crucial mischaracterization of the Court's March 10, 2026 Order. IUIC incorrectly contends the Court held Club Valencia can "never" have the "control" needed to trigger the PSE's condition. The Order says no such thing.

What the Order actually says is narrow and specific. The Court explains that Club Valencia does not have "control" over detectors located inside privately owned condominium units. [Doc. 230 at 10–11.] The Order was explicit that the opposite is true for other safeguards. The Policy's language "is consistent with Club Valencia having control over certain smoke detectors, such as smoke detectors in the common areas, and not over other smoke detectors, such as smoke detectors in individually owned condominium units." [Doc. 230 at 11.] And the Order notes the undisputed fact that "the common areas had hardwired smoke detectors and individual units had non-hardwired smoke detectors." [Doc. 230 at 11 (citing Dkt. 198 at 6, ¶ 29).]

The Court's holding does the opposite of nullifying the PSE. It gives the "control" qualifier exactly the work its plain language assigns it. IUIC's "circular reasoning" and "mutually repugnant" arguments (Mot. at 7–8) dissolve once the Order is read accurately. The idea that "control can exist (over common-area safeguards)" and "control does not extend to privately owned unit interiors" is not contradictory. These two concepts are the ordinary, coherent result of applying a qualifier that, by its terms, distinguishes between safeguards the insured it does control and safeguards it does not.

**C.** ***The Order correctly applies the canon against surplusage, and IUIC's reading of the Policy would, in fact, create surplusage.***

IUIC's lead argument, that the Order "misapplies" the canon against surplusage, attacks a holding the Court never made. The Court did not find that phrase to be surplusage as IUIC now suggests in the Motion for Reconsideration. Rather, the Court applied the canon against surplusage to reject IUIC's interpretation of the policy because IUIC's reading of the policy which would render the key phrase superfluous.

IUIC's summary-judgment theory was that Club Valencia "has control over smoke detectors in each unit," including the privately owned units, because Club Valencia purportedly could dictate what each owner installs. [Doc. 230 at 10; Doc. 198 at 14–16.] The Court correctly recognized the fatal flaw in that theory: "if Club Valencia had such control over each condominium unit, there would be no need to specify that Club Valencia only has to maintain the protective safeguards 'over which you have control.'" [Doc. 230 at 10.] In other words, if the association controlled every detector everywhere, as IUIC contends, the qualifier "and over which you have control" would be unnecessary to achieve the same result. The qualifier would be textbook example of "surplusage," and Colorado law forbids interpretations of contracts that include it. [Doc. 230 at 10 (citing Dep't of Revenue v. Agilent Techs., Inc., 441 P.3d 1012, 1016 (Colo. 2019), and Northglenn Gunther Toody's, LLC v. HQ8-10410-10450 Melody Lane, LLC, 2016 WL 6569099, at *3 (D. Colo. Nov. 4, 2016)).] The Court applied the canon exactly as it is meant to be applied by declining to adopt an interpretation of the Policy that drains words of any effect.

The Order's further textual point reinforces this. As the Court explained, the words "have control . . . impl[ies] that there are smoke detectors in the insured premises over which Club Valencia does not have control." [Doc. 230 at 11.] IUIC has never explained—not on summary judgment and not now—what "and over which you have control" would exclude if, as IUIC insists,

the association controls all detectors in all 329 units. That cannot be the meaning of the Policy, because under IUIC's reading, the phrase would exclude nothing. IUIC, not the Court, is reading words out of the Policy.

IUIC's "burden of proof" gloss (Mot. at 8–9) does not rescue its position. IUIC contends the Order relieves Club Valencia of proving performance under W. Distrib. Co. v. Diodosio, 841 P.2d 1053 (Colo. 1992). Not so. The Order holds only that Club Valencia has no duty as to safeguards it does not control. The Order does not negate any element of performance. Instead, the Court correctly identifies the scope of the duty before asking whether it was performed.

**D.      *The Order did not "rewrite" the Policy or equate "control" with "ownership."***

IUIC next argues the Order impermissibly rewrites the Policy by (1) "deleting" the PSE's condition and (2) treating "control" as synonymous with "ownership." Both contentions fail.

First, the Order deletes nothing. Declining to extend a coverage-forfeiting condition to property that the insured neither owns nor is responsible for is not an expansion of coverage; it is the ordinary, required task of giving exclusionary language its plain meaning. Bailey v. Lincoln Gen. Ins. Co., 255 P.3d 1039, 1051 (Colo. 2011); Cyprus Amax Mins. Co. v. Lexington Ins. Co., 74 P.3d 294, 299 (Colo. 2003).

Second, the Order does not hold that "control" means "ownership." Indeed, the Order defines "control" as meaning "to have responsibility for." [Doc. 230 at 10.] On this point, IUIC's argument hinges entirely on a single incidental statement in the Court's Order, "Club Valencia does not control, i.e., own, the individual units and the items within them." [Doc. 230 at 11.] But when read in context of the Order, that statement is obviously intended as a factual explanation of the specific setting of a condominium complex. The Court notes that Club Valencia does not own, and is not responsible for, the interiors of privately owned homes because that is an inherent aspect of a condominium, and there is not dispute that the Club Valencia complex is a condominium

8

complex. The Court's statement is not a definition of "control," and it cannot be, because the Order expressly adopted "to have responsibility for" as the operative meaning.

A movant cannot manufacture "clear error" by elevating one contextual, nonessential explanatory phrase over the Order's stated holding. When IUIC accuses the Court of redefining the word "control" in its insurance contract, it engages in a classic strawman scenario. IUIC assigns positions to the Court's Order that the Court never intended nor assigned, and then IUIC asserts that the positions it has fabricated must be reconsidered. The Court should decline to do so.

Moreover, IUIC did not include any definition of "control" in its insurance policy. Yet, in its Motion for Reconsideration, IUIC once again asks the Court to ignore the ordinary and plain meaning of the word "control" in its insurance policy and to instead assign the word "control" a strained, technical, and self-serving definition. If IUIC wanted "control" to have the technical and overly broad definition that IUIC is insisting on now, so that it could duck the insurance coverage it sold to Club Valencia for years, then IUIC should have drafted its Policy with the strained, technical, and overly broad definition of "control" it now asks the Court to judicially insert in the Policy.

In any event, the coverage outcome is identical under the Court's plain language definition of control or IUIC's preferred definition of "control," which would be "to exercise restraining or directing influence over." [Doc. 252 at 9 n.1.] Under Club Valencia's Declarations, the Association's access and rights to enter privately owned residences is limited and the control of and responsibility for in-unit smoke detectors is squarely in the hands of the private unit owners. Club Valencia does not "direct or restrain" what exists inside private homes in any sense that would give Club Valencia the ability to "control" the hard wiring of them.

IUIC's steam-turbine example proves Club Valencia's point, not IUIC's. The Policy's exclusion for "steam turbines owned or leased by you, or operated under your control" shows that the Policy knows exactly how to reach non-owned property that the insured actually operates. The in-unit detectors are not "operated under [Club Valencia's] control"; they are inside private residences and operated by unit owners (or their tenants and guests). If anything, IUIC's use of "operated under your control" elsewhere in the Policy confirms that "control" in the PSE requires actual operational responsibility for the smoke detectors, precisely the type of responsibility that Club Valencia lacks over the interior of privately owned units.

**E.** ***The Order does not violate the four-corners rule; it applies unambiguous language to undisputed facts.***

IUIC next argues that the Order used "unsupported assumptions about extrinsic facts" to interpret unambiguous language, in violation of the four-corners rule. IUIC's argument begs the question and conflates two distinct things that IUIC's cited authorities keep separate: (1) using extrinsic evidence to interpret unambiguous language (forbidden), and (2) applying unambiguous language to undisputed facts (required). Here, the Court did the latter, exactly as required by Colorado law.

The Court's interpretive inference about the meaning of "control" flows entirely from within the four corners of the Policy, not outside them. The Court reasoned that the words "have control" necessarily "imply that there are smoke detectors in the insured premises over which Club Valencia does not have control." [Doc. 230 at 11.] This is a textual construction of the Policy, which is removed from the analysis of any extrinsic facts, such as the existence or nonexistence of smoke detectors at the complex. The Court would have reached the same textual analysis regardless of the factual record because the analysis is based solely on the words used in the Policy. The Court read the qualifier in light of its own terms and in the context of the Policy as a whole.

Recognizing that a limiting phrase implies a category of things to be excluded is not the consideration of "extrinsic evidence," it is the textual analysis of an insurance contract Colorado law commands. Am. Family Mut. Ins. Co. v. Hansen, 2016 CO 46, ¶ 24, 375 P.3d 115, 120–21 (Colo. 2016). IUIC can only find error in the Court's Order because IUIC uses its own conclusion as the premise for its argument. IUIC presupposes that the Court relied on extrinsic facts to reach its interpretation of the Policy, but the Court's Order expressly contradicts IUIC's position.

Critically, IUIC's own Motion concedes two premises that require its denial. First, IUIC agrees the Order's interpretation is "seemingly straightforward," i.e., unambiguous. And second, IUIC agrees that the question of whether Club Valencia "has control over a required safeguard becomes a relevant and material fact." [Doc. 252 at 11.] Exactly so. On the record before the Court, it was undisputed that Club Valencia does not own the private units; the units had battery-operated detectors; and the common areas had hard-wired detectors. [Doc. 198 at 6, ¶ 29.] The Court applied its "straightforward" interpretation of the Policy to these undisputed facts in rendering partial summary judgment in favor of Club Valencia and against IUIC. This is the essence of the summary judgment process. Lake Durango Water Co. v. Pub. Utils. Comm'n, 67 P.3d 12, 21 (Colo. 2003), The Court did exactly what the law requires it to do.

Contrary to IUIC's assertion, there also is no circularity in the Court's reasoning. The Court first construed the text of the Policy to define the scope of Club Valencia's duty vis-à-vis safeguards at the complex. The Court then evaluated the undisputed factual record the determine if Club Valencia's duty extended to in-unit smoke detectors. Those are two distinct steps, and the Court undertook them in the precise order that IUIC endorses: "contract text → meaning (drawn from the four corners) → application of that meaning to the extrinsic facts." [Doc. 252 at 10.] The Order followed that sequence faithfully.

*F.      IUIC's request for relief is overly broad.*

IUIC's Motion for Reconsideration not only requests that the Court reverse itself by denying Club Valencia's Motion for Partial Summary Judgment on the interpretation of "over which you have control," but also that "the Court grant summary judgment in favor of IUIC and against Club Valencia on all claims and counterclaims." [Doc. 242 at 13.] IUIC, however, raises no argument to reverse the Court's holding on issues other than the interpretation of "over which you have control." Thus, there is no basis for the Court to reverse its separate holdings that 1) Club Valencia's alleged failure to have hard-wired smoke detectors does not implicate the PSE's second condition, i.e., "[a]ctively engage and maintain in the 'on' position at all times any automatic fire alarm or other automatic system listed in the Schedule," and 2) that whether IUIC acted reasonably "is a question of fact for a jury." [Doc. 230 at 16.]

A reconsideration motion that leaves independent, dispositive grounds unchallenged cannot deliver vacatur and judgment for the movant. For this reason, too, IUIC's Motion should be denied.

## IV.      CONCLUSION

IUIC's Motion presents no new law, no new evidence, and no clear error. IUIC instead re-argues a contract-interpretation dispute the Court has already resolved against it. The PSE's "control" qualifier is not surplusage under the Court's construction; it is surplusage only under IUIC's construction. The Order does not equate control with ownership, does not rewrite the Policy, and does not stray beyond the Policy's four corners. For the foregoing reasons, Club Valencia respectfully requests that the Court deny IUIC's Motion for Reconsideration in its entirety, together with such further relief as the Court deems just and proper.

Dated: July 31, 2026

Respectfully submitted,

ANDERSON LAW GROUP

/s/ M. Stuart Anderson
M. Stuart Anderson
Thomas H. Wagner
ANDERSON LAW GROUP
7385 W. US Hwy 50
Salida, Colorado 81201
E-mail: Stuart@anderson-lg.com
E-mail: Tom@anderson-lg.com

*Attorneys for Defendant/Counterclaimant/
Third-Party Plaintiff Club Valencia
Condominium Owners Association, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on July 31, 2026, I filed a copy of the foregoing via CM/ECF, which will deliver electronic notice of the filing to the following:

All counsel of record.

/s/ M. Stuart Anderson