IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01054-PAB-NRN

ILLINOIS UNION INSURANCE COMPANY,

Plaintiff,

v.

CLUB VALENCIA CONDOMINIUM OWNERS ASSOCIATION, INC.,

Defendant, Counterclaimant, Third-Party Plaintiff,

v.

LCM PROPERTY MANAGEMENT, INC.,
CHERRY CREEK INSURANCE AGENCY, INC. d/b/a CCIG, and
CRC INSURANCE SERVICES, LLC,

Third-Party Defendants.

---

**ORDER ON MOTION TO AMEND THE SCHEDULING ORDER AND CONFIRM THE TIMELINESS OF MR. DAVISCOURT'S SUPPLEMENTAL REBUTTAL EXPERT REPORT (ECF No. 244)**

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter comes before the Court on Plaintiff Illinois Union Insurance Company's (the "Insurer") Motion to Amend the Scheduling Order and Confirm the Timeliness of Mr. Daviscourt's Supplemental Rebuttal Expert Report (the "Motion"), ECF No. 244. The Motion was filed May 29, 2026. Defendant Club Valencia Condominium Owners Association, Inc. (the "Association") filed a response on June 19, 2026, ECF No. 246. The Insurer filed its reply on July 6, 2026, ECF No. 247. The Court heard oral argument on July 22, 2026. ECF No. 253.

## I. BACKGROUND[1]

### a. Procedural History

This is a declaratory judgment lawsuit brought by the Insurer against the Association after two separate fires at a multi-unit condominium complex.

The Insurer denied the Association's insurance claims for both fires after its adjuster determined that there had been a failure to install and maintain hard-wired smoke detectors in the individual condominium units. In its original complaint, the Insurer denied liability, claiming that the Association (1) failed to preserve the fire scene for examination by the Insurer and its investigators, (2) failed to undertake reasonable efforts to fully respond to requests for information issued by the Insurer, (3) failed to permit access to the unit of origin, and (4) otherwise failed to comply with the duties set forth in the Policy. In particular, the Insurer claimed that the Association failed to maintain hardwired smoke detectors in the individual condominium units. *See* ECF No. 1 at 10. Based on these failures allegedly in violation of the insurance policy, the Insurer sought a declaration that it had no duty to indemnify the Association for the damage caused by either fire.

The Association filed counterclaims seeking damages for breach of contract, bad faith breach of contract, and statutory claims pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 arising from the Insurer's unreasonable delay and/or denial of a proper claim for covered benefits.

[1] Unless otherwise stated, all factual allegations are taken from the Complaint, ECF No. 1. Any citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

On March 10, 2026, Judge Philip A. Brimmer ruled against the Insurer on summary judgment, finding that its basis for denying coverage was not consistent with the plain language of the policy. Summary judgment on the question of contractual liability was therefore granted in favor of the Association. *See* ECF No. 230. The Insurer has moved for reconsideration of this decision. *See* ECF No. 252. Assuming the summary judgment order is not revised, still to be decided are questions of the amount of insurance benefits to which the Association is entitled and whether the insurer acted in bad faith or unreasonably in denying coverage from the outset.

After the first fire, the Association retained Ethos Environmental ("Ethos") to determine whether asbestos was released in the fire. Ethos conducted a limited asbestos inspection and submitted its findings in a report dated November 14, 2022. *See* ECF No. 194-2. Ethos deemed part of the building a major spill area and recommended that building management immediately contract with an abatement contractor to contain and stabilize the affected quadrant. After the second fire, the Association retained Foothills Environmental ("Foothills") to conduct another asbestos test. According to its report, Foothills performed spill delineation tests on March 3, 2025 and May 11, 2025. *See* ECF No. 194-3. Foothills likewise found evidence of asbestos contamination on several floors and designated certain areas of the building as major spill areas and recommended decontamination procedures. *Id.* at 2.

In September 2023, the Association retained William McLoughlin as its public adjuster. Mr. McLoughlin retained a third company, Elevation Environmental Services ("Elevation"), to conduct asbestos testing. This testing was carried out by Elevation's Jonathan Milazzo in October of 2023. ECF No. 194 at 3. The Insurer alleges that Mr.

Milazzo's test results came back dramatically higher than the test results of Ethos and Foothills. *Id.* Per the Insurer, there was no apparent explanation for the varying test results at the time.

Based on the results from Elevation, Mr. McLoughlin prepared a "Building Damage Estimates" report for both fires on behalf of the Association. Mr. McLoughlin estimated the cost of building repairs for damage caused by the first fire to be $18,493,910.81, and $18,071,744.25 for the second fire. *See* ECF Nos. 194-6 & 194-7. These estimates were significantly higher than the prior estimates, which were based on the previous lower asbestos contamination results.

The unexplained discrepancy in the asbestos test results led the Insurer, in June 2025, to seek to amend the complaint to add three new bases for a declaratory judgment that it had no duty to indemnify the Association for the fire damage. The asserted factual bases for the new grounds for relief were that certain asbestos containment barriers were *intentionally* removed from the containment zones prior to the testing conducted by Elevation in October 2023 to further spread asbestos, supposedly so that the Association could fraudulently increase the amount of the insurance claimed. Specifically, the Insurer alleged that the evening prior to Mr. Milazzo's testing, Mr. McLoughlin and Association board member Alan Kyte entered the containment zone and removed containment barriers intended to stop further spread of asbestos within the buildings. The Insurer alleged that the containment barriers were intentionally removed "for the purposes of facilitating further spread of asbestos throughout the building" in order to increase their claimed damages. ECF No. 194-1 ¶¶ 81–82. The support for the Insurer's new factual allegations was exclusively the testimony of

Association resident and former facilities manager Zach Scott from a deposition given on May 22, 2025. The Insurer says that prior to this deposition, there was no explanation for "the dramatic increase in test result levels from Foothills' and Ethos's initial testing to Elevation's subsequent testing," and there was "nothing in the record remotely suggesting that Mr. McLoughlin or Mr. Kyte tore down containment barriers the night before Elevation's testing." ECF No. 194 at 6–8.

Thus, as a result of the supposed new information learned from the May 22, 2025 deposition of Mr. Scott, on June 23, 2025, the Insurer moved to amend its complaint to include the claims asserting new bases for the declaration that the Insurer has no duty to indemnify. *See id.* In a 14-page recommendation issued on October 14, 2025, this Court recommended that the proposed amendment be denied. *See* ECF No. 221. Judge Brimmer adopted the recommendation and the motion to amend was denied on October 31, 2025. *See* ECF No. 222.

In its recommendation, the Court concluded first that the Insurer had not acted with sufficient or appropriate diligence in discovering the underlying conduct involving alleged removal of asbestos-containing barriers. "Nothing prevented [the Insurer] from discovering the facts upon which the proposed amendments are based within the timeframe set by the scheduling order, or some reasonable time thereafter. Accordingly, the Court finds that [the Insurer] has failed to make a showing of good cause under Rule 16." ECF No. 221 at 10.

Second, the Court concluded that allowing an amendment based on the Association's alleged fraudulent intentional conduct "would constitute a drastic alteration of the case." *Id.* at 11. The case originally was about whether the Association was

required to maintain hard-wired smoke alarms and whether it adequately cooperated with the investigation. The Insurer's new allegations—that Association personnel actively and intentionally sabotaged the fire scene to spread asbestos throughout the facility and increase the claimed damages—would open multiple evidentiary cans of worms in this lawsuit, including, among other things, the supposed intent of the individuals involved in allegedly removing the barriers and the science behind the spread of asbestos at a fire scene. *Id.* at 11–12.

Third, the Court found that the late amendment would result in significant prejudice to the Association. The Court reasoned that discovery would have to be reopened and significantly expanded, resulting in more delays. These would be additional delays to a matter that is already two years old and has resulted in over 160 tenants being denied insurance proceeds that could have allowed them to remediate the damage and return to living in their condominium units. The Court concluded,

> If [the Insurer] had additional bases for denying coverage, the company should have discovered and asserted those bases well before June of 2025—before discovery in this lawsuit was closed, before expert reports were issued, and before the summary judgment deadline, especially in a case where the initial deadlines were already extended seven times.

*Id.* at 13.

In terms of the various deadlines in this case, by order dated May 21, 2025, the discovery cut-off was extended a final time to June 13, 2025, for the limited purposes of conducting depositions of five witnesses and issuing twelve subpoenas and receiving responses to those subpoenas. *See* ECF No. 187. The deadline for dispositive motions was extended to June 27, 2025, ECF No. 161, and the deadline to amend pleadings previously had been extended to April 12, 2024, ECF No. 71. The Association moved

for partial summary judgment on May 28, 2025. The Insurer moved for summary judgment on July 1, 2025.

As previously noted, on March 10, 2026, Judge Brimmer granted partial summary judgment in favor of the Association on liability. *See* ECF No. 230. Judge Brimmer found it undisputed that the common areas of the condominium complex had hardwired smoke detectors, while the individual common units had non-hardwired battery-operated units. Judge Brimmer further found that the insurance policy's protective safeguard endorsement, which required hardwired smoke detectors in areas over which the Association had control, did not require hardwired smoke detectors in the individual units. Judge Brimmer thus granted partial summary judgment to the Association on the issue of whether the Insurer was free from an indemnity obligation because there were no hardwired smoke detectors in individual units. ECF No. 230 at 13.

This Court held a Final Pretrial Conference on May 12, 2026 and issued its Final Pretrial Order. *See* ECF No. 242. The same day, Judge Brimmer set a seven-day trial to begin on April 26, 2027, with a Trial Preparation Conference set for April 9, 2027. ECF No. 243.

On May 29, 2026, two and half months after Judge Brimmer granted summary judgment to the Association on liability, and more than two weeks after the issuance of a final pretrial order and the setting of the trial date, the Insurer filed the instant motion asking that a supplemental expert report be deemed timely disclosed.

**b. The Instant Motion to Allow Late Disclosed Expert Report**

The Insurer asks that the Court approve the disclosure of a supplemental rebuttal expert report of asbestos expert Nick Daviscourt. Indeed, the Insurer purports to ask for "confirmation" that the supplemental report of Mr. Daviscourt was "timely disclosed." *See* ECF No. 244 at 1. If the supplemental report were to be allowed, the Insurer concedes that the Association should be permitted to re-depose Mr. Daviscourt regarding the supplemental report. *Id.*

The Insurer timely served the original rebuttal report of Mr. Daviscourt on the March 31, 2025 deadline set in the Scheduling Order. In his original expert report, Mr. Daviscourt noted that, as of February 2025, "there does not appear to have been containment enacted for the second fire event," and that, "[b]ased on the change in condition in several units, the presence of temporary ducting typically associated with spill response/abatement activities, etc., these quadrants [of the building] appear to have been accessed and disturbed after the fires." ECF No. 244-2 at 2–3 (Original Daviscourt Report). The original report further noted that "[w]hy the containment, if one did in fact exist, was removed is not known," and that "[a]ny, and all, actions in the structure after the fires occurred have the potential to have influenced the conditions and contamination dynamics within the structure, especially mechanical agitation, materials removal, [and] attempted cleanup activities." *Id.* at 3. The original rebuttal report concluded, in part, that the observed conditions—including a lack of debris, an absence of flooring in stairways and common hallways that had been present in 2022, the removal of significant drywall and popcorn texture, and temporary negative-pressure ducting—"suggests that partial response to the spill may have taken place," that it was

"doubtful (based on the evidence available)" that those removal actions complied with Colorado Regulation 8, Part B, and that such activities "may have contributed to asbestos contamination in the structure." *Id.* at 18.

Then, on May 22, 2025, Mr. Zach Scott testified about the alleged removal of containment barriers. The Insurer says that Mr. Daviscourt reviewed the Scott deposition transcript while summary judgment motions were pending, and prepared a supplemental report *dated March 11, 2026*, almost ten months after the testimony was given. ECF No. 244-3. The supplemental report was disclosed to the Association on April 2, 2026. ECF No. 244-4. The bottom line "opinion" found in the supplemental report is that the Association and its agents were responsible for the spread of asbestos and contamination:

> What limited contamination does exist (based on QUEST's sampling of the subject areas) in relation to largely the second fire, as well as whatever units were not resolved for the first fire, was likely significantly influenced by the actions of Club Valencia, their representatives, and the persons they retained to render them services.

ECF No. 244-3 at 10. Included among those influences are:

> by Zach Scott in performing incomplete and non-conforming containment and remediation actions on two occasions that he is not licensed or equipped to perform. Zach is not known to have owned, nor been in the direct employment of, a certified asbestos abatement contractor. This is in direct conflict with the Colorado Department of Public Health and Environment's directives for the containment of known, regulated "Major Asbestos Spills"; [and]
>
> by the actions of Alan Kyte and Bill McLoughlin in allegedly removing Zach's engineering controls/barriers; an action, with no reasonable explanation or legitimate purpose, that, more likely than not, distributed asbestos fibers throughout the two quadrants prior to Elevation's sampling.

*Id.*

Thus, while Mr. Daviscourt's original rebuttal report noted the unexplained increase in the asbestos test numbers and hypothesized how it may have occurred, the supplemental report, relying almost exclusively on the testimony of Zach Scott (which itself relied in part on hearsay), opines to a degree of certainty that the increase in asbestos numbers could be attributed to the purposeful or negligent conduct of the Association and its agents.

## II. ANALYSIS

### a. The supplemental report was not timely disclosed.

The Insurer makes several arguments about why the supplemental report should be deemed timely and accepted.

First, the Insurer argues that because fact discovery remained open after the disclosure of rebuttal expert opinions, "[b]y design, then, the Scheduling Order contemplated that fact witnesses could be deposed after expert reports were served, and that those depositions might bear on the expert's disclosed opinions." ECF No. 244 at 5. This is simply incorrect. Discovery remains open for some time after expert reports are due so that the parties can take the expert depositions. Also, there might be some additional written fact discovery prompted by the receipt and review of the expert reports. The notion that, *by design*, the Scheduling Order allows for additional fact discovery that will likely result in supplemental expert reports is not accurate.

Next, the Insurer argues that per the Federal Rules of Civil Procedure, it has disclosed the supplemental expert report at least a year before any deadline. It is correct that, per Rule 26(e), a party is under a continuing duty to supplement its expert reports. But Rule 26(e) specifically states that such supplemental disclosure, "if the additional or corrective information has not otherwise been made known to the other

parties," should be made in a "timely manner." Fed. R. Civ. P. 26(e)(1)(A). Under Rule 26(e)(2), a party's duty to supplement extends to information included in a report and given during the expert's deposition. "Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). The Insurer argues that because, by court order, witness and exhibit lists are to be filed seven days before the Trial Preparation Conference, the deadline fixed by Rule 26(a)(3) and Rule 26(e)(2) is necessarily April 2, 2027. *See* ECF No. 244 at 10. Per the Insurer, when it disclosed Mr. Daviscourt's supplemental report on April 2, 2026, the case had no trial date and no Rule 26(a)(3) deadline at all. Therefore, the supplemental report was disclosed at least "a full year before the governing deadline." *Id.*

The Court rejects this argument. Supplemental disclosures should be made in a "timely manner." With the rebuttal expert deadline having come and gone, and with allegedly important witness testimony coming to light toward the end of the discovery period, the Insurer should have procured and disclosed any supplemental report based on this new information in *a timely manner*, and not waited many months while the summary judgment deadline came and went and cross motions for summary judgment had been filed.

**b. Good cause to modify the Scheduling Order does not exist.**

The Insurer argues, in the alternative, that if the Court finds that the supplemental report was not timely disclosed under Rule 26(e), it has demonstrated good cause to amend the Scheduling Order under Rule 16(b)(4) because the Insurer and its expert learned new information through discovery. *See id.* at 12. Per the Insurer, the "inquiry

focuses on the diligence of the party seeking modification." *Id*. (citing *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014)).

The Rule 16(b)(4) standard requires the movant to show that, despite the movant's diligent efforts, it could not meet the scheduling deadline. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015); *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). To prove diligence, a plaintiff must provide an adequate explanation for any delay. *Minter*, 451 F.3d at 1205 n.4. If a plaintiff learns new information through discovery, good cause to amend may be established under Rule 16(b)(4). *Birch*, 812 F.3d at 1247.

Here, the Insurer has not acted diligently. First, as previously explained in this Court's recommendation denying amendment of the complaint, *see* ECF No. 221, the Insurer could have acted more diligently in taking Mr. Scott's deposition earlier in the process. Second, the Insurer's explanation for waiting nearly ten months after the information was discovered to make the belated supplemental disclosure was that the "case then sat in a summary-judgment posture, with no trial date and no Rule 26(a)(3) deadline, from June 2025 until the Court's March 10, 2026 [summary judgment] order." *Id.* The Court rejects the notion that having learned new information that would justify a supplement to a rebuttal report, the Insurer was entitled to sit on its hands and do nothing for ten months. Yes, the case may have been in a summary judgment posture. But the point of summary judgment is that all discovery has been completed, the evidence has been mustered, and the parties have submitted their arguments that, based on the law and undisputed facts, they should prevail. The Insurer here apparently

thought it was appropriate to do nothing while summary judgment was pending, deciding only *after* having lost the summary judgment fight that they would procure and disclose the supplemental expert report. By then the Insurer also had lost the fight to amend the pleadings to add claims based on this supposed new information. Thus, the Court concludes the Insurer did not exercise diligence in connection with the procurement and disclosure of this supplemental expert report.

**c. Rule 37 Sanctions are warranted.**

Rule 37(c)(1) provides:

> [a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) [which govern initial disclosures and required supplements thereof] shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1); s*ee also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002) (explaining that when a party fails to provide the information required under Rule 26(a)(2), the party is not allowed to use that witness to supply evidence unless the failure was substantially justified or is harmless).

The determination of whether a disclosure violation "is justified or harmless is entrusted to the broad discretion of the district court." *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996). A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998). Nevertheless, the following factors should guide a trial court in its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which

introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 992 (10th Cir. 1999). The burden to demonstrate substantial justification or lack of harm is on the party who failed to make a proper disclosure. *Jacobsen*, 287 F.3d at 952; *see also* *Parker v. Delta Airlines, Inc.*, 343 F.R.D. 224, 229 (D. N.M. 2022) (excluding late disclosed expert report of treating physician, where report was submitted after the physician's deposition had already occurred and opposing party was unable to retain any responsive expert witness, and was unable to prepare an adequate *Daubert* challenge).

Ultimately, the Court finds that there is no substantial justification for the late disclosure. It was almost a year late, and the Insurer's excuse that it delayed the creation and disclosure of the supplemental report while the case was in a "summary judgment posture" is unpersuasive.

There is harm and prejudice here, perhaps indirectly to the Association, but directly to the legal system as a whole. Scheduling orders are contemplated and designed to offer a degree of certainty in pretrial proceedings, ensuring that, at some point, the claims and evidence are fixed so that parties may proceed to trial. *See Home Design Servs., Inc. v. Trumble*, No. 09-cv-00964-WYD-CBS, 2010 WL 1435382, at *6 (D. Colo. Apr. 9, 2010). They are not "optional deadlines that can simply be ignored or amended on a whim." *Dedmon v. Cont'l Airlines, Inc.*, 13-cv-0005-WJM-NYW, 2015 WL 4639737, at *4 (D. Colo. Aug. 8, 2015). Deadlines exist for a reason. The adverse party should be entitled to rely on the limits and deadlines imposed in the scheduling order, which are to be modified only for good cause. Disclosing a new affirmative expert report

after the deadline creates uncertainty, anxiety, and imposes unnecessary costs on the adverse party, prompting either more briefing (as in this case) or, if such late disclosures are allowed, more expense and time wasted because the adverse party must then take more depositions and perhaps re-engage its own experts for new rebuttal reports.

Additionally, the Court finds that the proposed new expert opinion is merely a parroting, via an expert, of hearsay information recited by Mr. Scott at his deposition. Experts are allowed to rely on hearsay in formulating their opinions. But reading the proposed supplemental report, it appears that this is just a round-about way of introducing otherwise inadmissible hearsay from Mr. Scott's deposition. It brings to mind the infamous definition of an expert witness: "Someone who was not there, did not see anything, but who for a substantial fee will tell you exactly what must have happened." If the Insurer can successfully admit into evidence at trial any facts supporting the notion that the Association was responsible for intentionally spreading asbestos through the buildings, then counsel will be able to argue its relevance to the jury. But absent some independent evidentiary basis for such allegations, it would be inappropriate to allow it into evidence via this late disclosed expert report and opinion. Allowing this supplemental report at this late date would substantially and unduly prejudice the Association, notwithstanding the fact that the trial is set for April of next year.

## III. CONCLUSION

For the foregoing reasons, Plaintiff Illinois Union Insurance Company's Motion to Amend the Scheduling Order and Confirm the Timeliness of Mr. Daviscourt's Supplemental Rebuttal Expert Report, ECF No. 244, is **DENIED**.

Dated at Denver, Colorado this 17th Day of September 2026

N. Reid Neureiter

N. Reid Neureiter
United States Magistrate Judge