**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| ILLINOIS UNION INSURANCE COMPANY,<br><br>Plaintiff/Counter Defendant,<br><br>v.<br><br>CLUB VALENCIA CONDOMINIUM OWNERS ASSOCIATION, INC.,<br><br>Defendant/Counterclaimant | ) | Civil Action No. 1:23-cv-1054-PAB-NRN<br><br>Judge Philip A. Brimmer<br><br>Magistrate Judge N. Reid Neureiter |

**<u>IUIC's RULE 72(a) OBJECTION TO ORDER DATED SEPTEMBER 17, 2026 (DKT. 256)</u>**

Plaintiff, Illinois Union Insurance Company ("IUIC"), pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, hereby respectfully submits these Objections to Magistrate Judge Neureiter's Order dated September 17, 2026, and served on IUIC on September 18, 2026 (Dkt. 256) (the "Order"), which denied IUIC's Motion to Amend the Scheduling Order and Confirm the Timeliness of Mr. Daviscourt's Supplemental Rebuttal Expert Report (Dkt. 244) (the "Motion").

## INTRODUCTION

Club Valencia alleges that two fires at its building spread asbestos. The parties dispute the cause and extent of that contamination and the remediation required. IUIC retained Nick Daviscourt to rebut Club Valencia's expert opinions on those issues. There is no dispute that IUIC timely disclosed Daviscourt's original rebuttal report on March 31, 2025. While fact discovery remained open, Club Valencia's former employee, Zach Scott, testified about asbestos mitigation and containment work that Club Valencia had not disclosed in its discovery responses. Daviscourt supplemented his opinion to explain how that work affected the spread of asbestos. IUIC disclosed

his supplemental report (the "Supplement" or "Supplemental Report") a full year before pretrial disclosures were due and more than a year before trial. It also offered to produce Daviscourt for a supplemental deposition at IUIC's expense.

The Order, however, ruled that the Supplement was untimely and unduly prejudicial and imposed Rule 37(c)(1) sanctions to prevent Daviscourt from giving his supplemental opinions at trial. But Rule 26(e) arguably required IUIC to supplement Daviscourt's existing opinion with those newly learned facts. Even if IUIC should have disclosed the Supplement sooner, Club Valencia had ample time to question Daviscourt, consult its experts, and prepare for trial. Any delay was, and remains, harmless.

In determining whether an untimely disclosure was substantially justified or harmless, the Court must consider four factors: prejudice or surprise to Club Valencia, the ability to cure any prejudice, disruption of trial, and IUIC's bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999). The Order, however, identifies no disruption of trial, relies on a mistaken chronology to suggest that IUIC procured the Supplement only after losing summary judgment, finds prejudice "perhaps indirectly to the Association, but directly to the legal system as a whole," and treats the work needed to respond as prejudice rather than a cure. Dkt. 256 at 12–15. It also invokes unidentified hearsay as a reason to exclude the Supplement. *Id.* at 15. The Order applied incorrect legal standards, misapplied the correct legal standards, and relied on clearly erroneous findings about IUIC's diligence and preparation of the Supplement. The Court should set aside the Order and grant IUIC's Motion.

## STANDARD OF REVIEW

Rule 72(a) of the Federal Rules of Civil Procedure provides:

> (a) Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a). Rule 72(a) governs here because IUIC's Motion (Dkt. 244) concerned a nondispositive pretrial matter.

Under Rule 72(a), a district court reviews a magistrate judge's order on a non-dispositive motion under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Under this standard of review, a magistrate judge's finding should not be rejected merely because the district court would have decided the matter differently. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). The clearly erroneous standard requires a district court to affirm a magistrate judge's decision unless, "on the entire evidence[, the district court] is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006). "Under the 'contrary to law' standard, the reviewing court sets aside the magistrate order only if it applied an incorrect standard or applied the appropriate legal standard incorrectly." *Murphy v. City of Aurora*, No. 24-cv-02726-PAB-NRN, 2025 WL 3142101, at *1 (D. Colo. Nov. 10, 2025) (citation omitted).

## ARGUMENT

### I. The Order incorrectly applied Rule 26(e) in rejecting the Supplement.

#### A. The Order incorrectly applied Rule 26(e) by treating the Supplement as a new affirmative expert report.

The Order incorrectly treated Daviscourt's Supplement as a "new affirmative expert report." Dkt. 256 at 14–15. Rule 26(e) requires an expert to supplement his report when newly learned facts fill a material gap in his analysis. Fed. R. Civ. P. 26(e)(1)(A), (2); *Cook v. Rockwell International Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (recognizing that proper supplementation includes filling gaps in an expert's report with information unavailable at the time of the original disclosure).

Daviscourt's original report identified missing containment barriers and explained that post-fire activities may have spread asbestos. But he did not know why the barriers had been removed. Dkt. 244-2 at 5, 20. Scott later testified that he installed the barriers and that they were removed before Club Valencia's asbestos testing. Dkt. 247 at 4 (quoting Scott Dep. 140:24–142:7). Daviscourt then explained how those newly learned facts affected the causation opinion he had already disclosed. Dkt. 244-3 at 6–7, 9–10. That is proper supplementation under Rule 26(e), not a new affirmative report. *Cook*, 580 F. Supp. 2d at 1169. The Order therefore incorrectly applied Rule 26(e) and is contrary to law.

#### B The Order incorrectly applied Rule 26(e) by treating the summary-judgment proceedings as a cutoff for expert supplementation on unrelated issues.

The Order invoked Rule 26(e)(1)'s "timely manner" requirement and emphasized that "the summary judgment deadline came and went and cross motions for summary judgment had been filed." Dkt. 256 at 11. But Rule 26(e)(2) sets the deadline for expert supplements at the time Rule

26(a)(3) pretrial disclosures are due. *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1332 (10th Cir. 2004). The Order identified no scheduling-order provision setting an earlier supplementation deadline. IUIC disclosed the Supplement on April 2, 2026, a year before the April 2, 2027 pretrial-disclosure deadline. Dkt. 244-4 at 2; Dkt. 243 at 1–2. The Supplement was therefore timely under Rule 26(e)(2).

Courts have applied Rule 26(e)(2) to hold expert supplements timely even after expert discovery closed. *Allstate Interiors & Exteriors, Inc. v. Stonestreet Construction, LLC*, 730 F.3d 67, 75–76 (1st Cir. 2013) (corrected expert disclosures were "timely and contemplated by Rule 26(e)(2)" when they were disclosed before Rule 26(a)(3) pretrial disclosures were due); *Buben v. City of Lone Tree*, 2010 WL 4810632, at *2–3 (D. Colo. Nov. 19, 2010) (holding supplemental reports timely when disclosed after expert discovery but before pretrial disclosures were due).

The summary-judgment motions did not even concern the opinions addressed in the Supplement. They concerned the protective-safeguards endorsement and bad-faith issues—not how asbestos spread or what remediation was necessary. Dkt. 230 at 8–9, 13–16. The Supplement required no reopening of those proceedings. The Order's invocation of Rule 26(e)(1)'s "timely manner" requirement does not make that unrelated motion deadline a cutoff for expert supplementation. By treating it that way, the Order incorrectly applied Rule 26(e). Even if the Court concludes that IUIC should have supplemented sooner, exclusion still cannot stand because any delay was harmless, as Section II explains. The Court should set aside the Order and grant IUIC's Motion.

**C. The finding that IUIC waited until it lost summary judgment to procure the Supplement was clearly erroneous.**

The Order found that IUIC did "nothing while summary judgment was pending," deciding "only after having lost the summary judgment fight" to procure and disclose the Supplement. Dkt. 256 at 12–13. The Supplement itself contradicts that finding. It records a January 2026 inquiry to CDPHE and incorporates the agency's response—further work performed before the March 10 summary-judgment ruling. Dkt. 244-3 at 10; Dkt. 230 at 17. Daviscourt expressly recorded that his report had been "updated as Revision 2 on 2/2/2026" to address Scott's deposition testimony. Dkt. 244-3 at 6. The summary-judgment ruling came more than a month later, on March 10, 2026. Dkt. 230 at 17. Magistrate Judge Neureiter recognized that sequence at the hearing: "But he wrote his report in February, right?" Counsel confirmed that part had been written then, with the final version of the Supplement received in March. **Exhibit 1**, July 22, 2026 Tr. 26:3–6. The Order's finding that IUIC waited until it lost summary judgment to procure the Supplement is therefore clearly erroneous. Daviscourt was already updating his opinion before that ruling. That clearly erroneous finding cannot support denying IUIC's motion.

## II. Even if the Supplement was untimely, the Order incorrectly applied Rule 37(c)(1) and the Woodworker's Supply factors in excluding it.

Even if IUIC disclosed the Supplement too late, the Court cannot exclude it under Rule 37(c)(1) if the delay was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Exclusion is a "drastic sanction." *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 604 (10th Cir. 1997). The Court must assess justification and harmlessness under the four factors addressed below: prejudice or surprise, ability to cure, trial disruption, and bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

**A. The Order applied an incorrect legal standard by treating harm to the legal system as prejudice under Rule 37(c)(1).**

The Order wrongly treated supposed harm to the legal system as prejudice justifying exclusion under Fed.R.Civ.P 37(c)(1). It found prejudice "perhaps indirectly to the Association, but directly to the legal system as a whole." Dkt. 256 at 14–15. But the first *Woodworker's Supply* factor concerns "the prejudice or surprise to the party against whom the testimony is offered." 170 F.3d at 993. The purpose of expert disclosures is, broadly, to "'set forth the substance of the direct examination' .... to allow the opposing party 'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.' Thus, to avoid prejudice, [the opposing party] needed to know the substance of the experts' testimony. " *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting Fed.R.Civ.P. 26(a)(2) advisory committee note (1993)). That's what Daviscourt's supplemental report does. Treating a missed scheduling order deadline—which the Order does not even specifically identify—as harm to the legal system does not answer the applicable legal standard. Otherwise, every missed deadline would establish prejudice, eliminating the harmlessness inquiry Rule 37 requires.

Regarding the "perhaps indirect" harm to Club Valencia, the Order notes that supplemental reports might necessitate additional depositions and perhaps new expert reports, calling the expense of such litigation work "unnecessary" and the time "wasted." Dkt. 256 at 15. But it never identifies which additional depositions or expert opinions this supplement requires, or why Club Valencia could not prepare its response before trial. *Id.* When IUIC moved for relief, Club Valencia had the Supplement, an offer to re-depose Daviscourt, and eleven months before trial. Dkt. 244 at 14. The possibility of additional work does not establish that the timing of Daviscourt's supplemental report was prejudicial to Club Valencia in any way.

The Order's reliance on *Parker v. Delta Air Lines, Inc.*, 343 F.R.D. 224, 229 (D.N.M. 2022), also confuses a first expert report with a supplement to an existing rebuttal. Dkt. 256 at 14. In *Parker*, a physician had not been timely disclosed as a retained expert, and his first retained-expert report arrived after his deposition and the close of discovery. 343 F.R.D. at 227, 229. The defendant could not adequately question him, retain a responsive expert, or prepare an adequate *Daubert* challenge. *Id.* at 229. Here, Daviscourt had already been disclosed with his rebuttal report, and Club Valencia refused the offered supplemental deposition. Dkt. 244 at 2–3, 14. The Order identifies no reason Club Valencia could not question Daviscourt and prepare for cross-examination. Dkt. 256 at 14–15. The opportunity missing in *Parker* was expressly offered here. 343 F.R.D. at 229; Dkt. 244 at 14.

Nor was the Supplement a surprise. Club Valencia's counsel acknowledged, "I don't think anybody was surprised to see this come out." Ex. 1, July 22, 2026 Tr. 22:20–23. By treating supposed harm to the legal system as prejudice supporting exclusion, the Order applied an incorrect legal standard and is contrary to law.

### B. Even if the timing caused prejudice, the Order incorrectly applied the second Woodworker's Supply factor by treating the offered deposition as prejudice rather than a cure.

The second *Woodworker's Supply* factor requires consideration of "the ability of the party to cure the prejudice." 170 F.3d at 993. The Order instead treated further deposition work as "wasted" time and "unnecessary" expense supporting exclusion. Dkt. 256 at 15. IUIC offered to produce Daviscourt for questioning limited to the Supplement and agreed to bear the expense. Dkt. 244 at 14; Ex. 1, July 22, 2026 Tr. 31:8–11. Club Valencia is free to question him about the facts he (and IUIC) learned after his original report was disclosed, their effect on his opinions, and the

bases for his conclusions. The Order never explains why that deposition would not cure any prejudice.

The Tenth Circuit treats the opportunity to question an expert as a reason to allow the testimony. In *Summers*, it held that a deposition and review of the expert's reports could cure any prejudice, so the first two factors favored allowing the additional expert. 132 F.3d at 605. *Woodworker's Supply* likewise upheld admission based in part on the fact that the opposing party could question the witness outside the jury's presence. 170 F.3d at 993; see also *HCG Platinum, LLC v. Preferred Product Placement Corp.*, 873 F.3d 1191, 1201–03 (10th Cir. 2017) (recognizing that limited, readily curable prejudice weighs against exclusion). IUIC offered to make Daviscourt available for deposition to cure any prejudice and even pay the expense. Dkt. 244 at 14; Ex. 1, July 22, 2026 Tr. 31:8–11. The Order instead treats the time and expense of his deposition as proof of prejudice justifying exclusion. Dkt. 256 at 15. That incorrectly applies the second *Woodworker's Supply* factor and is contrary to law; indeed, it is the antithesis of what that factor requires.

**C. The Order incorrectly applied the third Woodworker's Supply factor because the supplemental deposition could be completed without disrupting trial.**

The Order excluded the Supplement "notwithstanding" that trial remained set for April 2027, without identifying how the Supplement would disrupt that trial. Dkt. 256 at 15. The third *Woodworker's Supply* factor requires consideration of precisely that question. 170 F.3d at 993. IUIC disclosed the Supplement more than a year before the April 26, 2027 trial, Dkt. 243 at 1, and more than seven months remained after the Order issued on September 18, 2016.

In *Summers*, the Tenth Circuit rejected trial disruption as a reason to deny an additional expert witness requested eighty days before trial. 132 F.3d at 605. IUIC sought far more limited relief with far more time available: further questioning of an expert already disclosed and deposed

about information from Club Valencia's own former employee concerning work at its property. Dkt. 244 at 7–8, 14. The Court could have set a supplemental deposition deadline without moving trial. Dkt. 244 at 14–15. It still can. Because the supplemental deposition would not disrupt trial, the third factor weighed against exclusion. The trial schedule supplied no basis for excluding the Supplement and favors allowing the Supplement.

**D. The Order incorrectly applied the fourth *Woodworker's Supply* factor by relying on a clearly erroneous account of when IUIC procured the Supplement.**

The Order identifies no bad faith or willfulness under the fourth *Woodworker's Supply* factor. 170 F.3d at 993. Instead, it suggests that IUIC procured the Supplement "only after having lost the summary judgment fight." Dkt. 256 at 12–13. But Daviscourt began updating his report before that ruling, as Section I.C explains. Nor did the Supplement concern an issue IUIC lost on summary judgment: those motions addressed the Protective Safeguards Endorsement and bad faith, not the cause or extent of asbestos contamination. Dkt. 230 at 8–9, 13–16. The supplement was not an effort to redo a lost summary-judgment issue.

The Order's criticism that IUIC should have discovered Scott's mitigation work sooner likewise establishes no bad faith. Dkt. 256 at 12. As Section III explains, IUIC requested that information, Club Valencia omitted it, and IUIC uncovered and pursued it before discovery closed. IUIC then disclosed the Supplement more than a year before trial and offered further questioning of Daviscourt at its own expense. Dkt. 244-4 at 2; Dkt. 244 at 14; Ex. 1, July 22, 2026 Tr. 31:8–11. Those actions gave Club Valencia ample time and an opportunity to test the opinions. The fourth factor weighed against exclusion, and the Court should reject bad faith or willfulness as a basis for excluding the Supplement. Under these factors, any delay was harmless. The Order

incorrectly applied Rule 37(c)(1) by excluding the Supplement despite that harmlessness. The Court should set aside the Order as contrary to law and grant IUIC's motion even if it finds the disclosure untimely.

### III. Even if a scheduling amendment was necessary, IUIC established good cause, and the Order's contrary diligence finding was clearly erroneous.

If any scheduling-order amendment was necessary, Rule 16(b)(4) permits it for good cause. Good cause requires diligence and an adequate explanation for delay. *Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 988 (10th Cir. 2019). Information learned through discovery can establish good cause. *Gorsuch, Ltd., B.C. v. Wells Fargo National Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). And when considering a request to present additional expert testimony, courts must recognize that "total inflexibility is undesirable." *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 604–05 (10th Cir. 1997) (citation omitted) (reversing denial of a request for a new scheduling order made eighty days before trial because any prejudice could be cured through a deposition and review of the expert's reports, trial would not be disrupted, and the record revealed no bad faith or willful omissions).

The Order blames IUIC for not "taking Mr. Scott's deposition earlier in the process." Dkt. 256 at 12. But IUIC specifically asked Club Valencia what it had done to mitigate the damage and who performed that work. Club Valencia's answer did not identify Scott or disclose that he had installed asbestos containment barriers. Dkt. 247-2 at 7–8 (Interrogatory No. 11 and response). IUIC expressly argued that Club Valencia omitted Scott's mitigation work from its interrogatory answers, explaining why IUIC had not discovered that information sooner. Dkt. 247 at 5–6. The Order never addresses that argument or those answers. It instead faults IUIC for not discovering sooner the very information Club Valencia omitted when directly asked. Dkt. 256 at 12.

IUIC nevertheless uncovered that information before fact discovery closed. It obtained Scott's testimony on May 22, 2025, and one week later questioned Club Valencia's asbestos expert, Milazzo, about whether the barriers had been removed before his testing and whether their removal would have been proper. Dkt. 247 at 6–7 (citing Milazzo Dep. 82:14–86:10). IUIC asked for the information in written discovery, uncovered what Club Valencia omitted through depositions, and promptly pursued its significance. That is diligence. Nor did Daviscourt wait for the summary-judgment ruling to begin supplementing his report, as Section I.C explains.

The Order effectively rewards Club Valencia's materially deficient discovery responses and punishes IUIC for not uncovering the omitted information "earlier in the process." Dkt. 256 at 12. IUIC diligently sought that information and obtained it after Daviscourt's original report, providing good cause for any scheduling amendment necessary to address it. The Order's contrary diligence finding is clearly erroneous. The Court should set aside the Order and grant the requested amendment under Rule 16(b)(4).

## IV. The Order applied an incorrect standard by using supposed hearsay to assess timeliness and prejudice. Even if evidence rules were relevant, they were misapplied.

### A. The Order incorrectly applied Fed.R.Evid. 801 to unidentified hearsay.

The Order calls the Supplement a "round-about way of introducing otherwise inadmissible hearsay" from Scott's deposition, but never identifies a supposedly inadmissible hearsay statement. Dkt. 256 at 15. Scott's testimony addressed both his own observations and what Kyte told him. Neither supports the Order's hearsay conclusion. Scott testified that he personally installed asbestos containment barriers and later saw they were gone. Dkt. 244 at 7–8. He can testify at trial about what he did and saw. That is not hearsay. Fed.R.Evid. 801(c). Scott did not have to witness their removal to testify that the barriers he installed were later gone.

Kyte's statement is not hearsay either. Scott testified that Kyte told him the barriers were removed before Club Valencia's asbestos testing. Dkt. 244 at 7–8. Club Valencia identified Kyte as its governing-board member and authorized representative. Dkt. 247-2 at 3, 17. His statement concerned work performed with the Association's public adjuster at its property during his board service. Dkt. 244 at 7–8; Dkt. 247 at 10. It concerned a matter within his agency, was made during that relationship, and is offered against Club Valencia—making it nonhearsay under Rule 801(d)(2)(D). *See Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158, 1171–72 (10th Cir. 2003) (holding that a corporate vice president's statements about the company's unethical treatment of his subordinate were nonhearsay under Rule 801(d)(2)(D), although he did not participate in the challenged employment decision). Scott can testify about what he did and observed, and Kyte's statement is admissible against Club Valencia under Rule 801(d)(2)(D). The Order incorrectly applied Rule 801 by treating that testimony as a reason to exclude the Supplement.

**B. Even if the Supplement relies on hearsay, the Order incorrectly applied Fed.R.Evid. 703 to exclude it.**

The Order acknowledges that experts may rely on hearsay but dismisses Daviscourt's supplement as "merely a parroting" of Scott's testimony. Dkt. 256 at 15. Rule 703 permits reliance on otherwise inadmissible information if experts in the field would reasonably rely on that kind of information. Fed. R. Evid. 703. The Order identifies no reason an asbestos expert could not reasonably consider testimony about asbestos containment work when determining how contamination spread.

Daviscourt is not parroting Scott's testimony. He explained that containment barriers prevent asbestos from spreading and concluded that their removal more likely than not distributed

asbestos before Elevation's testing. Dkt. 244-3 at 9–10. He explained why Elevation's reported concentrations exceeded what the second fire's limited location and material impact would produce. *Id.* He also criticized Scott's containment and remediation as incomplete and nonconforming. *Id.* at 7–10. Those are expert judgments about the work Scott described and its effect on contamination. Rule 703 permits that analysis. *United States v. Affleck*, 776 F.2d 1451, 1457–58 (10th Cir. 1985) (upholding an expert's reliance on employee interviews to corroborate or supplement conclusions developed through his examination of financial records).

Even if the statements discussed above were inadmissible for their truth—they are not—the Court could restrict their disclosure under Rule 703 or, if disclosed to explain Daviscourt's opinion, instruct the jury on their limited use under Rule 105. Neither requires excluding Daviscourt's opinion. Fed. R. Evid. 703, 105. Nor would those statements' inadmissibility establish that IUIC disclosed the Supplement too late or deprived Club Valencia of a reasonable opportunity to respond. The finding that Daviscourt merely repeated Scott's testimony is clearly erroneous. Hearsay is not the standard for determining timeliness under Rule 26(e) or prejudice under Rule 37(c)(1), and the Order also incorrectly applied the evidence rules discussed above. The Order applied an incorrect legal standard and also misapplied the standard it chose. Either way, the Order is contrary to law, and the Court should set it aside and grant IUIC's motion.

## V. The Order applied an incorrect legal standard by treating denial of new affirmative defenses as a bar to rebutting damages.

The Order also relies on IUIC having "lost the fight to amend the pleadings" and treats the Supplement as evidence of Club Valencia "intentionally spreading asbestos." Dkt. 256 at 13, 15. But IUIC need not prove that anyone intended to spread asbestos to show that removing containment barriers--not the fires--spread it. IUIC previously sought to amend the pleadings to

deny coverage for all damage because Club Valencia intentionally spread asbestos to increase its insurance claim. Dkt. 221 at 5; Dkt. 247 at 7. Daviscourt's supplemental report, however, addresses how much of the alleged asbestos contamination was caused by the fires. Dkt. 244-3 at 9–10. Denying IUIC permission to add new affirmative defenses to any contractual liability did not prevent IUIC from contesting the damages owed if liability exists. Liability and damages are different issues. Club Valencia acknowledges that its asbestos damages "remain for trial." Dkt. 246 at 4. IUIC needs no new claim or affirmative defense to contest proof of Club Valencia's damages. *A1 Garage Door Serv., L.L.C. v. West*, No. 21-cv-01821-PAB-NRN, 2022 WL 952874, at *3 (D. Colo. Mar. 30, 2022). The Order wrongly uses a prior denial of additional affirmative defenses to preclude IUIC from simply rebutting Club Valencia's damages evidence. By treating the denial of new affirmative defenses as a bar to IUIC's damages rebuttal, the Order applied an incorrect legal standard. The Court should set aside the Order as contrary to law and grant IUIC's motion.

WHEREFORE, IUIC requests that the Court set aside the Order and grant its Motion, Dkt. 244 and confirm that the Supplement was timely disclosed or, alternatively, permit it because any delay was harmless or justified and otherwise amend the Scheduling Order to allow the Supplement and set a reasonable deadline for Club Valencia to take the offered supplemental deposition of Daviscourt.

Dated: October 2, 2026October 3, 2026

Respectfully submitted,
*/s:/ Christopher M. Snow*

Matthew S. Ponzi (mponzi@fgppr.com)
Christopher M. Snow (csnow@fgppr.com)
Foran Glennon Palandech Ponzi & Rudloff PC
222 North LaSalle Street, Suite 1400
Chicago, Illinois 60601
(312) 863-5000
*Attorneys for Illinois Union Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record to their CM/ECF-registered email addresses:

M. Stuart Anderson
Thomas H. Wagner
ANDERSON LAW GROUP
Stuart@anderson-lg.com
Tom@anderson-lg.com

*Attorneys for Defendant, Counter Defendant, Third-Party Plaintiff, Club Valencia Condominium Owners Association, Inc.*

/s:/ *Christopher M. Snow*
Christopher M. Snow