**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLORADO**

Civil Action No.: 1:23-cv-1054-PAB-NRN

ILLINOIS UNION INSURANCE COMPANY,

Plaintiff and Counterclaim Defendant,

v.

CLUB VALENCIA CONDOMINIUM
OWNERS ASSOCIATION, INC.

Defendant and Counterclaimant.

---

**RESPONSE IN OPPOSITION TO RULE 72(a) OBJECTION TO ORDER**

---

Defendant/Counterclaimant Club Valencia Condominium Owners Association, Inc. ("Club Valencia COA"), through counsel, submits the following brief in opposition to the Objection to Order Dated September 17, 2026 (Doc. 261) (the "Objection") filed by Plaintiff/Counterclaim Defendant Illinois Union Insurance Company ("IUIC"):

## INTRODUCTION

IUIC again seeks to relitigate a ruling in this case without cause to do so. IUIC now asks to reconsider the Order on Motion to Amend (Doc. 256) (the "Order"), which denied IUIC's Motion to Amend the Scheduling Order and Confirm the Timeliness of Mr. Daviscourt's Supplemental Rebuttal Expert Report (the "Second Motion to Amend"). In the Order, Magistrate Judge Neureiter held that an untimely expert report from IUIC was not a proper supplement under Fed. R. Civ. P. 26(e)(1)(A), that IUIC showed no good cause pursuant to Fed. R. Civ. P. 16(b)(4) to amend the case deadlines, and that exclusion was warranted under Fed. R. Civ. P. 37(c)(1)

because IUIC lacked substantial justification for the late disclosure. IUIC's Objection should be overruled because Magistrate Judge Neureiter applied the correct legal standards to the facts and because his factual findings are well supported by the record.

Most notably, when the Court denied IUIC's Motion for Leave to File First Amended Complaint for Declaratory Judgment (Doc. 194) (the "First Motion to Amend"), it found that IUIC lacked diligence vis-à-vis the very same nexus of facts that gave rise to its latest attempt to skirt case deadlines and rules of procedure in the Second Motion to Amend. Since IUIC chose not to object to that prior ruling, the finding on IUIC's lack of diligence is now binding and, even if the Court were to overlook that prior conclusion, IUIC cannot overcome the highly deferential standard under Fed. R. Civ. P. 72(a) because the Order is well-supported by the evidence.

## BACKGROUND

### I. Two Fires Cause Millions in Damages to the Club Valencia Condo Complex

This case arises from IUIC's violations of contractual, statutory, and tort duties owed to Club Valencia COA. Two fires caused millions of dollars of damage to the Club Valencia Condominium Complex on November 3, 2022, and February 1, 2023. The fires, coupled with IUIC's denial of insurance coverage, have left over 184 residents homeless for over three years.

After denying Club Valencia COA's insurance claims for both fires, IUIC filed this lawsuit. Club Valencia COA then filed counterclaims against IUIC. A large portion of Club Valencia COA's damages concern the need to remediate asbestos contamination caused by the fires and fire suppression activities. Club Valencia COA retained Ethos Environmental LLC ("Ethos") to conduct an asbestos inspection. Nick Daviscourt, Ethos's founder and owner, identified extensive asbestos contamination at Club Valencia resulting from the November 3, 2022 fire. (*See* Doc. 194-

2.) After the second fire, Club Valenica COA retained Foothills Environmental, Inc. ("Foothills"). Foothills also found asbestos contamination on multiple floors of the complex. (Doc. 194-3.)

IUIC and Club Valencia COA retained litigation experts to opine on the scope of asbestos contamination. Club Valencia COA disclosed the initial report of its asbestos expert, Jonathon Milazzo, on January 31, 2025. (*See* Doc. 246-1, Expert Disclosures; Doc. 246-2, Milazzo Major Spill Contamination Report; Doc. 246-3.) Oddly enough, IUIC retained the exact same asbestos expert that Club Valencia COA had retained after the first fire, Mr. Daviscourt.

IUIC disclosed a report from Mr. Daviscourt on March 31, 2025. (Doc. 244-2.) Mr. Daviscourt's report discusses an alleged lack of containment barriers after the second fire and disturbance of asbestos materials. (Doc. 244-2, pp.2-3.) Mr. Daviscourt also questions if containment barriers had been removed and opines that such actions might alter the scope of contamination. (Doc. 244-2, p.3.) Despite speculating on the possibility that removal of barriers might increase contamination, neither IUIC nor Mr. Daviscourt sought additional discovery to flesh out this speculation. Instead, IUIC let the discovery and expert disclosure deadlines expire.

## II. IUIC Discloses the Untimely Daviscourt Report 10 Months After Discovery

While IUIC did no discovery to investigate removal of the containment barriers in this case, IUIC's counsel did attend the deposition of a former maintenance worker, Zach Scott on May 22, 2025. The Scott deposition was noticed in a state-court lawsuit relating to the fires. Roughly one year after the first Daviscourt report and roughly ten months after the Scott deposition, IUIC provided Club Valencia COA with a new report from Mr. Daviscourt on April 2, 2026 (the "Untimely Daviscourt Report"). (*See* Doc. 246-6.) In the Untimely Daviscourt Report, Mr. Daviscourt bolsters his opinions on the scope of contamination due to alleged removal of

containment barriers. (Doc. 244-3, p.4-5 & 8.) Mr. Daviscourt says he reached his new opinions after reviewing Mr. Scott's deposition testimony. (*Id.*)

## III. The Court Denies the First Motion to Amend and IUIC Waives Its Right to Appeal

During the gap between the Scott deposition and disclosure of the Untimely Daviscourt Report, IUIC filed the First Motion to Amend. In that motion, IUIC sought leave to allow it to file an amended complaint based on the same allegations that IUIC raises in the Second Motion to Amend, *i.e.*, false hearsay allegations from Mr. Scott about removal of the containment barriers.

Magistrate Judge Neureiter recommended that the First Motion to Amend be denied because he found that IUIC did not act diligently in discovering facts relating to asbestos contamination. (Doc. 221.) Magistrate Judge Neureiter stated that IUIC "failed to conduct timely depositions" of pertinent witnesses, including Mr. Scott, and that "[n]othing prevented IUIC from discovering the facts" earlier. He also found that IUIC's amendments would prejudice Club Valencia COA by, *inter alia*, requiring additional discovery and new expert testimony on "the science behind the spread of asbestos at a fire scene." (Doc. 221 at 9-12.) IUIC never objected to the recommendation to deny the First Motion to Amend, and the Court adopted it. (Doc. 222.) Thus, under the firm waiver rule, *see Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991), IUIC is bound by the Court's findings that 1) IUIC was not diligent and 2) Club Valencia COA would be prejudiced by inserting new theories into this case, the same theories that IUIC seeks to insert again via the Untimely Daviscourt Report.

## IV. Magistrate Judge Neureiter Denies IUIC's Second Motion to Amend

Lack of diligence by IUIC and prejudice to Club Valencia COA also form the basis for denial of the Second Motion to Amend. Magistrate Judge Neureiter walked through the legal

standards required by Fed. R. Civ. P. 26(e), 16(b)(4), and 37(c)(1) and made discretionary findings where necessary. Most notably, Magistrate Judge Neureiter reasoned that since the First Motion to Amend and the Untimely Daviscourt Report were both based on the same factual allegations, and since IUIC failed to act diligently in filing the First Motion to Amend in June 2025, IUIC also failed to act diligently in disclosing the Untimely Daviscourt Report nearly one year later. (Doc. 256 at 12.) He explained that IUIC was not entitled to "sit on its hands and do nothing for ten months" merely because the parties had filed summary judgment motions. (Doc. 256 at 12.) Magistrate Judge Neureiter also described the prejudice that Club Valencia COA would incur if the Untimely Daviscourt Report were allowed. He found, in essence, that IUIC's late disclosure was not substantially justified and IUIC should not be rewarded for its lackadaisical approach to the deadlines in this case. As shown below, his Order should be upheld.

## ARGUMENT

### I. IUIC Must Show the Order is Clearly Erroneous or Contrary to the Law

Magistrate Judge Neureiter's ruling concerns a non-dispositive issue, so the Objection is governed by Fed. R. Civ. P. 72(a). *See SEC v. Nacchio*, 614 F. Supp. 2d 1164, 1176 (D. Colo. 2009) ("Rulings on non-dispositive issues by a Magistrate Judge are reviewed by this Court pursuant to Fed. R. Civ. P. 72(a). . . ."). Rule 72(a) states that a magistrate judge's order will be reversed if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

The clearly erroneous standard is deferential to the magistrate judge's ruling. *Swan Global Invs., LLC v. Young*, 2019 WL 2171457, *3 (D. Colo. May 17, 2019). "The clearly erroneous standard requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Collardey v. Alliance for*

*Sustainable Energy, LLC*, 406 F. Supp. 3d 977, 979-980 (D. Colo. 2019) (internal quotes omitted); *see also Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988).

A magistrate judge's order is contrary to law only if the magistrate applies the wrong legal standard or applies the standard incorrectly. *See Murphy v. City of Aurora*, 2025 WL 3142101, at *1 (D. Colo. Nov. 10, 2025) (cited in Objection). A magistrate judge's findings should not be reversed simply because the district judge would decide the matter differently. *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).

## II. The Order is Not Clearly Erroneous or Contrary to the Law

### A. Magistrate Judge Neureiter Correctly Applied Fed. R. Civ. P. 26(e) In Finding the Daviscourt Report Was Untimely

IUIC asserted that it could issue a new expert report any time up to the deadline for Fed. R. Civ. P. 26(a)(3) disclosures, i.e., 30 days before trial, regardless of when it learned the facts disclosed in the new report. Magistrate Judge Neureiter rejected IUIC's position and observed that under Fed. R. Civ. P. 26(e), a proper supplemental disclosure "should be made in a '***timely manner***.'" (Doc. 256 at 10-11 (emphasis added).) Magistrate Judge Neureiter construed the phrase "in a timely manner" to require IUIC to disclose the Untimely Daviscourt Report reasonably soon after it learned (or should have learned) the allegations that formed the basis for the Report.

Magistrate Judge Neureiter's interpretation of Fed. R. Civ. P. 26(e) makes textual sense and comports with the case law. Rule 26(e) is not "intended to provide an extension of the expert designation and report production deadlines." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006) (citing *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir.1998)). "Rule 26(e) does not permit parties to file supplemental reports whenever they believe such reports would be 'desirable' or 'necessary' to their case." *Minebea Co., Ltd. v. Papst*,

231 F.R.D. 3, 6 (D.D.C. 2005). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." *Beller v. United States,* 221 F.R.D. 689, 95 (D.N.M. 2003) (brackets in original); *S.E.C. v. Nacchio*, 2008 WL 4587240, at *3 n.3 (D. Colo. Oct. 15, 2008) ("To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert opinion preparation."); *see also, e.g., Rodgers v. Beechcraft Corp.*, 759 Fed. App'x 646, 663 (10th Cir. Dec. 14, 2018); *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. App'x 496, 500 (9th Cir. 2009) (Rule 26(e) "creates a 'duty to supplement,' not a right.").

Here, Magistrate Judge Neureiter applied Fed. R. Civ. P. 26(e) to give effect to the scheduling order deadlines and the plain language of the rules of procedure. *See United States v. Ceballos-Martinez*, 371 F.3d 713, 716 (10th Cir. 2004) (courts interpret rules of procedure in light of plain language and context in which words are used). IUIC cannot show that Magistrate Judge Neureiter misapplied Fed. R. Civ. P. 26(e) in finding a "supplement" disclosed almost a full year after the Scott deposition, was not made in a "timely manner."

### B. Magistrate Judge Neureiter Correctly Applied the Good Cause Standard Under Fed. R. Civ. P. 16(b)(4)

Since IUIC's disclosure was not a "supplement" under Fed. R. Civ. P. 26(e), IUIC asserted that good cause existed to amend the scheduling order under Fed. R. Civ. P. 16(b)(4). Magistrate Judge Neureiter rejected this argument and correctly applied Fed. R. Civ. P. 16(b)(4) in doing so.

Discovery of new information can support good cause to amend the scheduling order. But if a party is not diligent in obtaining new information, or if a party learns new information and

delays in seeking to amend based on the new information, there is no good cause and amendment should be denied. *See Gorsuch, Ltd., B.C. v. Wells Fargo Bank, N.A.*, 771 F.3d 1230, 1240 (10th Cir. 2014); *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (Fed. R. Civ. P. 16(b)(4) (affirming denial when movant waited nine months and stating that Fed. R. Civ. P. 16(b)(4) "obligates the moving party to provide an adequate explanation for any delay").

In this case, Magistrate Judge Neureiter quoted IUIC's own brief, which notes that Fed. R. Civ. P. 16(b)(4) "focuses on the diligence of the party seeking modification." (Doc. 256 at 12 (citing *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006)).) IUIC may quibble with the outcome, but the record proves that Magistrate Judge Neureiter applied the correct legal principles under Fed. R. Civ. P. 16(b)(4). And since IUIC is bound by the prior finding that it lacked diligence in obtaining information about alleged containment barrier issues, IUIC could not show good cause under Fed. R. Civ. P. 16(b)(4). Thus, the Order should be upheld.

### C. Magistrate Judge Neureiter Correctly Applied Fed. R. Civ. P. 37(c)(1) in Finding that Exclusion of the Untimely Daviscourt Report Was Proper

Since IUIC did not carry its burden under Fed. R. Civ. P. 26(e) and Fed. R. Civ. P. 16(b)(4), Magistrate Judge Neureiter had the discretion to determine the appropriate course under Fed. R. Civ. P. 37(c)(1). Once again, the record proves that Magistrate Judge Neureiter correctly applied the law in ruling that IUIC's untimely disclosure was not "substantially justified" or "harmless."

Magistrate Judge Neureiter noted that under Fed. R. Civ. P. 37(c)(1), IUIC had the burden to show its untimely disclosure was substantially justified or harmless. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002). He cited the factors in *Woodworker's Supply* as a "guide" to his decision. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). He also noted that district courts need not make explicit findings on all four

*Woodworker's Supply* factors. (Doc. 256 at 13.) The Order then describes the prejudice to Club Valencia COA caused by the late disclosure, i.e., the need to reopen fact discovery and obtain new expert opinions, some of which was incurable. (Doc. 256 at 14.) Thus, IUIC may disagree with Magistrate Judge Neureiter's discretionary finding that IUIC's nondisclosure was not substantially justified, but IUIC cannot show that Magistrate Judge Neureiter applied the wrong legal standard.

### D. Each of IUIC's Objections Lack Merit

#### 1. The Untimely Daviscourt Was Not a Timely "Supplement"

IUIC asserts that Magistrate Judge Neureiter incorrectly applied Fed. R. Civ. P. 26(e) by describing the Untimely Daviscourt Report as a "new affirmative expert report." This objection must be overruled because IUIC cannot show that Magistrate Judge Neureiter applied the wrong legal standard. IUIC simply disagrees with Magistrate Judge Neureiter's discretionary conclusion on IUIC's lack of diligence, but the record shows that the Untimely Daviscourt Report is not a "supplement" under Fed. R. Civ. P. 26(e).

Indeed, Magistrate Judge Neureiter found the Untimely Daviscourt Report was based on information that IUIC knew or should have known years before disclosure of the Report. This is a factual finding, and it is not clearly erroneous. Even IUIC admitted that the Scott deposition, i.e., the basis for the Report, occurred nearly a year before the Report was disclosed. Thus, the Untimely Daviscourt Report was not, as IUIC asserts, filling the gaps in his prior opinions based on information that was not previously available. *Cf. Cook,* 580 F. Supp. 2d at 1169. Rather, IUIC knew or should have known of the information used to create the Untimely Daviscourt Report years before it disclosed that report and IUIC never justified the lengthy delay between the date of the Scott Deposition and the disclosure of the Untimely Daviscourt Report. Therefore, Magistrate

Judge Neureiter rightly referred to the report as a new report, not a supplement.

### 2. Magistrate Judge Neureiter Did Not Treat the Summary Judgment Deadline as a Disclosure Deadline

IUIC next asserts that Magistrate Judge Neureiter treated the summary judgment proceedings as a "cutoff" for expert supplementation, but he did no such thing and IUIC has created a strawman by deliberately misconstruing the Order.

Magistrate Judge Neureiter noted that the filing of dispositive motions does not, as IUIC asserted in the hearing, excuse IUIC's late disclosure. (*See* Doc. 256 at 12 (discussing why pending summary judgment motions did not allow IUIC "to sit on its hands and do nothing for ten months.").) In later referring to the summary judgment proceedings in the Order, Magistrate Judge Neureiter was simply responding to the statement that IUIC made about why IUIC waited nearly a year after the Scott deposition to make its disclosure. (Doc. 261-1 at 7:23-8:5 (IUIC counsel stating that the case was in "summary judgment posture" when asked why IUIC sat on the information).) Nothing in the record suggests that Magistrate Judge Neureiter used the summary judgment deadline as deadline for the Second Motion to Amend, so IUIC's strawman objection should be overruled.

### 3. Magistrate Judge Neureiter's Findings on the Timing of IUIC's Disclosure Are Not Clearly Erroneous

IUIC next asserts that Magistrate Judge Neureiter erred by finding that IUIC waited until after it lost the summary judgment fight to "procure and disclose" the Untimely Daviscourt Report. IUIC is playing silly semantic games and its Objection should be overruled.

In describing why IUIC lacked diligence, the Order states "[IUIC] here apparently thought it was appropriate to do nothing while summary judgment was pending, deciding only *after* having

lost the summary judgment fight that they would procure ***and disclose*** the supplemental expert report." (Doc. 256 at 12-13 (italics in original) (emphasis added).). There is nothing erroneous in this statement because "disclose" is used as a conjunctive, and the Court *did* issue its summary judgment order on March 10, 2026, nearly a month before IUIC disclosed the Untimely Daviscourt Report. IUIC had lost the "summary judgment fight" when it "procured ***and disclosed***" the Report to Club Valencia COA on April 2, 2026. (*See* Doc. 246-6 (April 2, 2026 Email).)

### 4. Magistrate Judge Neureiter Correctly Applied Fed. R. Civ. P. 37(c)(1)

IUIC asserts the Magistrate Judge applied an incorrect standard under Fed. R. Civ. P. 37(c), but IUIC is incorrect. IUIC's interpretation of Fed. R. Civ. P. 37(c)(1) would put the burden on Club Valencia COA to show that exclusion was proper but that is not what the law requires.

First, IUIC asserts that Magistrate Judge Neureiter erred by stating that allowing IUIC to use its untimely disclosure at trial would be prejudicial to Club Valencia COA and to the "legal system as a whole." Magistrate Judge Neureiter's use of this phrase does not show he misapplied the law. This phrase in the Order was an introduction and not a limiting statement. Shortly after the phrase in question, Magistrate Judge Neureiter's Order describes how IUIC's late disclosure

> creates uncertainty, anxiety, and imposes unnecessary costs ***on the adverse party***, prompting either more briefing (as in this case) or, if such late disclosures are allowed, more expense and time wasted because the adverse party must then take more depositions and perhaps re-engage its own experts for new rebuttal reports.

(Doc. 256 at 15 (emphasis added)). These harms affect Club Valencia COA directly, which is what law requires courts to consider under Fed. R. Civ. P. 37(c)(1). *See* 170 F.3d at 993. During the hearing, Club Valencia COA's counsel also explained that a key witness needed to respond to the containment barrier allegations, William "Bill" McLoughlin, had passed away before IUIC's late disclosure. Mr. McLoughlin's death means that Club Valencia COA cannot simply depose Mr.

Daviscourt to cure the prejudice caused by IUIC's late disclosure. (Doc. 261-1 at 16:6-16.) Counsel also noted how the deadline for motions under C.R.E. 702 passed before the disclosure, so Club Valencia COA had no way to challenge a faulty methodology employed by Mr. Daviscourt in his new report. (Doc. 261-1 at 21:1-22:8.) Magistrate Judge Neureiter also described the prejudice Club Valencia COA would suffer if IUIC were permitted to introduce "otherwise inadmissible hearsay from Mr. Scott's deposition" under the guise of a supplemental expert report. (*See* Doc. 256 at 15.) Magistrate Judge Neureiter was clear that he found harm to Club Valencia COA: "Allowing this supplemental report at this late date would substantially and unduly prejudice ***the Association*** . . . ." (Doc. 256 at 15 (emphasis added).)

IUIC next contends that Magistrate Judge Neureiter treated IUIC's offer of a second deposition of Mr. Daviscourt as prejudicial, but IUIC again misreads Magistrate Judge Neureiter's Order to create a strawman in the record. The record reflects multiple examples of prejudice to Club Valencia COA, including "expense and time wasted because [Club Valencia COA] must then take more depositions and perhaps re-engage its own experts for new rebuttal reports." (Doc. 256 at 15.) The depositions being referred to here were depositions of fact witnesses involved in the alleged removal of containment barriers, not Mr. Daviscourt. Having to reopen discovery to address the false accusations in the Untimely Daviscourt Report is prejudicial to Club Valencia COA, regardless of offer of a "free" Daviscourt deposition by IUIC.

Moreover, some of the prejudice to Club Valencia COA is uncurable. As Club Valencia COA noted during the hearing, one of the key witnesses, Mr. McLoughlin, is deceased and another key witness, Alan Kyte, is no longer affiliated with Club Valencia COA. Thus, Club Valencia COA's inability to respond to the false factual allegations in the Untimely Daviscourt Report was

not solved simply by taking another deposition of Mr. Daviscourt. The Magistrate Judge was, therefore, correct in finding uncurable harm if Mr. Daviscourt was allowed to testify about the allegations in his Untimely Report.

IUIC next asserts that because Magistrate Judge Neureiter never explicitly found that IUIC acted in bad faith, his findings on the timing of disclosure are clearly erroneous. This assertion strains credulity. *Woodworker's Supply* states that courts need not make explicit findings on whether a failure to disclose is harmless or substantially justified. 170 F.3d at 993. And as noted in the Order, courts have "broad discretion" to decide if a failure to disclose is substantially justified. Thus, a finding of bad faith is not required, and this Objection should be overruled.

Additionally, under Fed. R. Civ. P. 37(c)(1), it was IUIC's burden to show it did not act willfully or in bad faith. *Woodworker's Supply*, 170 F.3d at 993. IUIC waited until after the First Motion to Amend was denied and it had lost on summary judgment to make the disclosure of the Untimely Daviscourt Report. IUIC's only explanation for its own long delay was that the case was in "summary judgment posture." It was IUIC's decision to sit on the Untimely Daviscourt Report for nearly a year so IUIC's behavior was, by any reasonable interpretation, "willful." IUIC was obviously trying to dance around denial of IUIC's First Motion to Amend and repackage the factual allegations that IUIC was precluded from introducing into this case when the Court denied IUIC's First Motion to Amend. IUIC's willful efforts to skirt the Court's binding prior decision is not a substantial justification for its delay. Thus, even if IUIC did not act in bad faith, the willful delay by IUIC supports the Magistrate Judge's decision under Fed. R. Civ. P. 37(c)(1).

**5. Magistrate Judge Neureiter's Findings on Good Cause Are Not Clearly Erroneous and IUIC Waived Its Right to Contest the Ruling on the First Motion to Amend**

IUIC next contends that Magistrate Judge Neureiter misapplied the good cause standard under Fed. R. Civ. P. 16(b)(4), but IUIC is incorrect. IUIC tries to assert that, despite Mr. Scott having been disclosed in witness and document disclosures, because Club Valencia did not identify Mr. Scott in an interrogatory response, there is good cause for IUIC's nearly one-year delay. But the issue of whether IUIC acted with diligence, a requirement under Fed. R. Civ. P. 16(b)(4), was settled when the Court denied IUIC's First Motion to Amend because of IUIC's lack of diligence. IUIC never objected to the recommendation on that motion and the court adopted the recommendation. Under the firm waiver rule, IUIC cannot relitigate the issue of diligence now. *Moore*, 950 F.2d at 659 ("failure to make timely objection to the magistrate's findings or recommendations waives appellate review of both factual and legal questions"). Even if IUIC was not barred from relitigating the findings on lack of diligence and prejudice to Club Valencia COA, there is ample record evidence to support Magistrate Judge Neureiter's conclusions.

**6. IUIC Misconstrues Magistrate Judge Neureiter's Findings on Hearsay**

IUIC asserts Magistrate Judge Neureiter erred in discussing Mr. Daviscourt's use of hearsay, but IUIC again misconstrues the Order. Magistrate Judge Neureiter never said Messrs. Scott or Kyle could not testify about what they did or saw. (*Cf.* Doc. 261 at 12-13.) Rather, Magistrate Judge Neureiter found that Mr. Daviscourt's report was prejudicial because Mr. Daviscourt was parroting what Mr. Scott said about what Mr. Scott heard from others. Magistrate Judge Neureiter thus noted how IUIC's use of an expert's "opinion" to get hearsay evidence in front of a jury would prejudice Club Valencia COA by requiring it to conduct new fact discovery. This prejudice was incurable, in part, due to Mr. McLoughlin's death and Mr. Kyte's separation from Club Valencia COA. Accordingly, there is no misapplication of C.R.E. 801 or 703.

### 7. Magistrate Judge Neureiter Made No Evidentiary Rulings on Damages

IUIC's last contention is that Magistrate Judge Neureiter used the now-binding denial of the First Motion to Amend to preclude IUIC from "rebutting" Club Valencia COA's damages evidence, but this is another strawman argument that IUIC has concocted. The Order on the Second Motion to Amend does not contain any evidentiary ruling aside from exclusion of the Untimely Daviscourt Report under Fed. R. Civ. P. 37(c). Moreover, since the First Motion to Amend and the Second Moton Amend required similar legal and factual analyses, and since IUIC failed to object to the Court's ruling on the First Motion to Amend, Magistrate Judge Neureiter did not abuse his discretion in referring back to the First Motion to Amend when considering the Second Motion to Amend. IUIC's objection on this point should, therefore, be overruled.

## CONCLUSION

IUIC cannot identify any clearly erroneous findings or misapplication of the law by Magistrate Judge Neureiter. IUIC should not be rewarded for its lack of diligence and litigation gamesmanship. IUIC's Objection should, therefore, be denied.

Dated: October 16, 2026.

ANDERSON LAW GROUP

*/s/Thomas H. Wagner*
M. Stuart Anderson
Thomas H. Wagner
Anderson Law Group
7385 W. Highway 50
Salida, CO 81201
Telephone: (719) 539-7003
Stuart@anderson-lg.com
Tom@anderson-lg.com
*Counsel for Defendant/Counterclaimant*

**CERTIFICATE OF SERVICE**

I certify that on October 16, 2026, I filed a copy of the foregoing via CM/ECF, which will deliver electronic notice of the filing to the following:

All counsel of record.

/s/Thomas H. Wagner